

UNITED STATES FEDERAL COURT NORTHERN CALIFORNIA DISTRICT

San Francisco District Office Philip Burton Federal Building,
450 Golden Gate Avenue, 5 West, P.O. Box 36025, San Francisco, CA 94102

| | |
|---|---|
| Hang Zhang,<br>*Plaintiff,*<br><br>VERSUS<br><br>DANIEL DRISCOLL,<br>Secretary, Department of the Army,<br>*Agency.* | Case No.:<br><br>**CV 25-03381 LJC**<br><br>COMPLAINT FOR EMPLOYMENT DISCRIMINATION, RETALIATION, AND VIOLATION OF DUE PROCESS |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION, RETALIATION, AND VIOLATION OF DUE PROCESS

When a federal agency could not defend its discrimination, it retaliated instead. After Plaintiff, a hardworking minority female professor, reported bias and unfair treatment, Defendant reassigned, isolated, and retaliated against her using the full weight of its institutional power.

### INTRODUCTION

1. Plaintiff Hang Zhang brings this action under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.), and under the Fifth Amendment to the United States Constitution, for employment discrimination based on race (Chinese), sex (female), national origin (P. R. China), retaliation for engaging in protected EEO activity, and for violations of due process in the handling of her administrative complaint.

2. Plaintiff also alleges that she was subjected to a hostile work environment created and sustained by high-level agency officials, including Agency Counsel, and that institutional actors coordinated to undermine her protected activity and obstruct her access to a fair resolution process.

3. Plaintiff seeks declaratory and injunctive relief, compensatory damages, attorneys' fees, and any other relief deemed appropriate by this Court.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

5. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred within this District.

## PARTIES

6. Plaintiff Hang Zhang is a civilian federal employee formerly or currently assigned to the Defense Language Institute Foreign Language Center (DLIFLC).

7. Defendant James Driscoll is the Secretary of the Army and is sued in his official capacity. The Department of the Army is Plaintiff's employer within the meaning of Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely initiated EEO counseling and filed a formal complaint of discrimination on February 23, 2024. The 180-day investigative period has passed without a final decision, allowing Plaintiff to file this action.

9. Plaintiff has also filed a timely amendment to the formal complaint to incorporate related claims of post-filing retaliation and procedural misconduct, which are like or related to the initial claims.

## FACTUAL ALLEGATIONS

10. precede the same institutional patterns challenged in *In re OPM Mass Termination Litigation*, Case No. 3:24-mc-80022-WHA, currently pending before Judge Alsup (Exhibit A: Summary of Structural Retaliation and Procedural Misconduct).

11. Plaintiff was discriminated against on the basis of her race, sex, and national origin when she was non-selected for multiple positions between 2023 and 2025, including but not limited to the positions of ODA Specialist, Assessment Specialist, Academic Specialist, and Assistant Director of Immersion.

12. Plaintiff engaged in protected EEO activity beginning in May 2023.

13. In retaliation, Plaintiff was subjected to adverse actions including exclusion from communications, award rescissions, public discrediting, and hostile treatment by management.

14. On February 7, 2025, Agency Counsel Dr. Laura Heller transmitted privileged and sensitive material in a manner intended to undermine Plaintiff's legal standing.

15. On December 31, 2024, Dr. Heller instructed leadership to disseminate documents related to Plaintiff's EEO complaint, violating confidentiality and escalating hostility.

16. Plaintiff has reason to believe these actions were part of a broader effort to retaliate against her and interfere with the EEO process.

17. The agency's Inspector General has failed to act meaningfully on these allegations, despite being notified of potential ethics violations.

18. The EEO Office refused to interview Agency Counsel for investigation even though admitting to her Dec 31, 2024 retaliatory email.

**CLAIMS FOR RELIEF**

### Count I: Discrimination Based on Race, Sex, and National Origin

18. Defendant engaged in unlawful employment practices by denying Plaintiff employment opportunities based on her protected characteristics.

### Count II: Equal Pay Act

19. Defendant engaged in discriminatory practices by denying Plaintiff a salary increase associated with academic rank advancement and by subjecting her to unequal pay based on sex.

### Count III: Retaliation for Protected Activity

20. Defendant retaliated against Plaintiff for engaging in EEO activity, in violation of Title VII.

### Count IV: Hostile Work Environment

Plaintiff was subjected to a severe and pervasive hostile work environment perpetuated by leadership members, including Agency Counsel and others.

21. Exclusion from key meetings

3

22. Award nomination rescission

23. Transmission of privileged material

24. Dissemination of EEOC litigation info

25. Reassignment based on national origin

26. Suppression of performance-based pay

27. TDA file tampering

28. Procedural obstruction after MSJ filing

29. Simultaneous rejections from IG and EEO to investigate

### Count VI: Procedural Due Process Violations

30. Defendant deprived Plaintiff of her protected rights by allowing legal staff to interfere with the integrity of the EEO process, undermining confidentiality and fairness.

**PROCEDURAL DUE PROCESS VIOLATIONS**

Plaintiff re-alleges and incorporates all preceding paragraphs. Defendant, acting under color of federal authority, violated Plaintiff's rights under the Fifth Amendment by systematically denying her fair process in employment matters materially affecting her career, compensation, and reputation. These violations include:

- Failure to provide timely, impartial adjudication of formal EEO complaints;
- Coordination between the EEO Office, Inspector General, and Agency Legal Counsel to suppress outcomes and shift blame onto the complainant;
- Arbitrary exclusion from agency decisions concerning reassignment, awards, work assignments, and meetings without notice or recourse;
- Manipulation of performance appraisal procedures, including delayed signatures and unauthorized alterations;
- Use of tampered or inaccessible TDA records to justify unequal treatment while denying Plaintiff an opportunity to review or contest them.

These actions deprived Plaintiff of property and liberty interests—specifically, the right to fair employment practices and professional reputation—without the procedural safeguards guaranteed by the Constitution.

4

## INSTITUTIONAL RETALIATION AND CONSTRUCTIVE KNOWLEDGE

Plaintiff re-alleges and incorporates all preceding paragraphs.

Agency leadership at DLIFLC and within the Army had actual or constructive knowledge of retaliatory actions taken against Plaintiff and failed to take reasonable steps to stop them. Evidence of such knowledge includes:

- Repeated, documented communications with senior administrators referencing Plaintiff's protected activity or other privileged materials;
- Legal Counsel's dissemination of litigation status to command staff with no disciplinary actions;
- The Leadership were copied on or involved in decision-making tied directly to Plaintiff's reassignment, non-selections, and data irregularities;
- No corrective measures were implemented following repeated offenses despite Plaintiff's documented complaints.

This sustained inaction and knowledge amount to institutional retaliation under Title VII and support a broader claim of systemic failure. Leadership's acquiescence to discriminatory practices and obstruction undermines the agency's affirmative obligations to prevent and correct EEO violations.

## LEGAL COUNSEL MISCONDUCT AND DISCOVERY OBSTRUCTION

Plaintiff re-alleges and incorporates all preceding paragraphs.

Agency Legal Office, including Dr. Laura Heller, refused to produce relevant discovery materials, failed to meet discovery deadlines, and contributed to over four months of unjustified delay following Plaintiff's Motion for Summary Judgment filed on October 15, 2024.

## CONCLUSION

As described in detail above, Defendant has engaged in a continuing and coordinated pattern of unlawful conduct, including discrimination, retaliation, unequal pay, procedural due process violations, and misuse of its legal and administrative processes to suppress protected EEO activity. These actions have caused Plaintiff measurable professional, financial, and emotional harm.

Plaintiff respectfully requests that the Court:

- Declare that Defendant violated Plaintiff's rights under Title VII, the Equal Pay Act, and the Constitution;
- Award compensatory and equitable damages including lost wages, step increases, corrected performance evaluations, and full restoration of award eligibility;
- Order injunctive relief to prevent ongoing retaliation and require corrective oversight by a neutral third party;
- Grant attorneys' fees and litigation costs under applicable statutes;
- Award any other relief this Court deems just and proper.

Respectfully submitted,



Hang Zhang, Ph.D.

Professor

Defense Language Institute

Department of the Army

hang.zhang@dliflc.ed

Dated: April 16, 2025

## EXHIBIT A

(*In re OPM Mass Termination*, No. 3:24-mc-80022-WHA, filed separately)

**Chronological Summary of Structural Retaliation and Procedural Misconduct**

Plaintiff, a Chinese-American federal employee with advanced academic qualifications, alleges a pattern of adverse actions and procedural misconduct carried out during and under the same institutional restructuring mechanisms challenged in *In re OPM Mass Termination*. Key events include:

6

**May 5, 2023**

Plaintiff was reassigned under a structural reorganization allegedly based on ethnicity. Plaintiff, a Chinese-American female with a Ph.D. and academic leadership background, was told to "go back to Chinese school" by senior officials (ROI admission). A fulltime Chinese teacher's workload was added onto her Student Learning job standard without increasing in pay. No male Caucasian comparators were forced or approached for this type of double workload.

**June 4, 2023**

Plaintiff was rejected for the Assessment Specialist position. The selectee was a less-qualified Caucasian male from the same cohort (no Ph.D., no language experience), and had been previously selected for Academic Specialist role for which Plaintiff had also been denied.

**May 11–June 13, 2023**

Plaintiff initiated EEO contact and filed a formal complaint.

**June 14, 2023**

Plaintiff was rejected for the ODA Specialist position one day after filing. The selectee lacked technical experience or a Ph.D., far below Plaintiff's direct qualifications.

**May 13, 2024**

Plaintiff was again denied for Assistant Immersion Coordinator position, despite years of success with immersion programs.

**October 15, 2024**

Plaintiff filed a Motion for Summary Judgment (MSJ) before the EEOC. Agency response included coordinated delay tactics and public disparagement from Legal Counsel, who cited "losing patience" with Plaintiff's filings.

**December 10, 2024**

Plaintiff was again denied for Academic Specialist position of UML, given to a selectee with half of the qualification and experience after being publicly humiliated during the job interview.

**December 31, 2024**

The Associate Provost forwarded Plaintiff's work communication to Agency Legal Counsel within 1 minute of receiving despite on leave. Within 20 minutes, Legal Counsel circulated an

internal memo urging dissemination of Plaintiff's litigation status to "mitigate against her mechanism." This violates confidentiality and created a retaliatory chilling effect.

**January 30, 2025**

Plaintiff's name was removed from the quarterly award list despite prior nomination and inclusion, with no explanation provided.

**February 7, 2025**

Agency Legal Counsel transmitted unsolicited privileged material to Plaintiff, copied to senior leadership. The email was not requested, not protected, and used in a retaliatory context.

**February 21, 2025**

Discovery files (TDA records) were produced with signs of tampering and omissions, consistent with patterns challenged in the OPM case.

**April 1, 2025**

The EEO Director declined to investigate the February 7 disclosure and refused to interview Counsel. The Inspector General issued an unsolicited legal disclaimer aligned with Counsel's own prior defenses -- before Plaintiff could file a formal IG complaint.

**April 11, 2025**

Chief-of-staff publicly acknowledged the agency's retaliatory culture through a mass email without corrective measures.

These actions are part of a broader pattern in which internal legal and administrative units collaborate to suppress protected activity and insulate unlawful employment decisions from scrutiny. Plaintiff's experience mirrors and amplifies the institutional failures described in *In re OPM Mass Termination* and reveals the same structural abuse under a different but directly connected factual sequence.

UNITED STATES FEDERAL COURT NORTHERN CALIFORNIA DISTRICT
San Francisco District Office Philip Burton Federal Building,
450 Golden Gate Avenue, 5 West, P.O. Box 36025, San Francisco, CA 94102

| | |
|---|---|
| Hang Zhang, *Plaintiff,* | Case No.: |
| VERSUS | IN RE OPM MASS TERMINATION, NO. 3:24-MC-80022-WHA |
| JAMES DISCROLL, Secretary, Department of the Army, *Agency.* | |

IN RE OPM MASS TERMINATION, NO. 3:24-MC-80022-WHA

FACTUAL BACKGROUND

This action arises from adverse personnel measures taken against a Department of Defense (DoD) employee leading to and during the same time period and under the same administrative structures challenged in *In re OPM Mass Termination Litigation*, currently pending before Judge William H. Alsup. Plaintiff's case presents a granular precursor, embodiment, and aftermath to that mass action—specifically, a reassignment and subsequent retaliation implemented within the DoD through the same institutional mechanisms, concurrent with the ongoing large-scale terminations across federal agencies directed by Office of Personnel Management (OPM). Plaintiff alleges that their reassignment and workload manipulation were not isolated decisions but part of a larger, pretextual restructuring pattern designed to suppress protected activity and to marginalize high-performing, union-affiliated employees without lawful basis. These events mirror and illuminate the "amputation" of the federal workforce described by Judge Alsup—unprecedented actions that restructured entire departments with little to no due process. Plaintiff's case offers critical factual continuity to the OPM litigation by revealing how these adverse personnel actions were prepared for and justified administratively before the publicized

1

terminations occurred, and how they continued afterward under the same logic of structural pretext.

INTRODUCTION

Plaintiff respectfully moves to relate this case to *In re OPM Mass Termination Litigation*, No. 3:25-cv-01780-WHA, currently pending before Judge William H. Alsup. The instant action concerns adverse personnel actions by the Department of Defense, including reassignment, duty reclassification, and retaliatory evaluation downgrades—all executed using restructuring instruments and interagency coordination similar to those challenged in the OPM matter. Both cases share a nucleus of operative facts and constitutional concerns surrounding the legality of sweeping, coordinated personnel changes imposed without individualized due process. Plaintiff's claims complement and reinforce the record already developing before Judge Alsup by contributing detailed facts of how these structural changes harmed individual federal employees, under the recurring pretexts of "operational necessity" and "security concerns". Judicial economy, consistency of constitutional interpretation, and the need for coherent resolution of interrelated agency practices all favor relating the two actions under Civil Local Rule 3-12.

LEGAL STANDARD

Under Civil Local Rule 3-12(a), cases are considered related when:

1. The actions concern substantially the same parties, property, transactions, or events; and
2. It appears likely that there will be an unduly burdensome duplication of labor and expense, or the possibility of conflicting results if the cases are conducted before different Judges.

Here, both this action and the OPM litigation:

- Arise from the same administrative framework governing federal personnel actions,
- Involve overlapping defendant agencies (including the DoD and its subcomponents),
- Concern structurally similar personnel practices including reassignment, threatened demotion, and the use of mass restructuring to circumvent statutory protections, and

2

- Raise materially similar constitutional questions under the First and Fifth Amendments, as well as statutory claims under Title VII and the Rehabilitation Act.

In addition, Judge Alsup has already authorized wide-ranging discovery in the OPM litigation through a Protective Order—underscoring the need for consistency in judicial review of these shared agency practices. Coordination between the two matters would avoid inconsistent rulings and enhance the factual record on systemic personnel manipulation within the federal government.

## ARGUMENT

### I. Substantial Similarity of Events, Administrative Mechanisms, and Legal Claims

Both this case and *In re OPM Mass Termination Litigation* arise from the use of centralized restructuring mechanism—such as manipulated TDA realignments and organizational charts—to facilitate adverse personnel actions in circumvention of statutory protections. In both cases, the Department of Defense figures prominently, operating within a shared federal restructuring apparatus where nominally neutral realignments served as pretext for demotions, displacements, and retaliatory targeting – ultimately paving the way for unlawful terminations.

Plaintiff's claims are not isolated grievances but part of a larger constitutional challenge to how restructuring is weaponized within agencies to suppress protected EEO activity and marginalize longstanding federal employees without legal justification. The reassignment, removal of program roles, and dual workload assignments alleged here mirror the patterns raised in the OPM case and share the same administrative roots.

### II. Overlapping Constitutional and Statutory Questions

The present action and the OPM litigation both require resolution of interrelated legal questions:

- Whether federal agencies may use restructuring frameworks to sidestep Title VII protections, constitutional due process, and civil service statutes;
- Whether administrative pretext—when paired with retaliatory motive or disparate impact—renders such actions unlawful under the First and Fifth Amendments;
- Whether coordinated actions between OPM and agencies such as the DoD constitute unlawful centralization of personnel authority not authorized by statute.

These questions, already under review by Judge Alsup, are squarely presented here and would benefit from unified adjudication.

*III. This Case Complements and Extends the Evidentiary Record in OPM*

Plaintiff's allegations precede, coincide, and follow the OPM-directed terminations, providing vital insight into how similar personnel manipulations were used against union-represented, non-probationary employees—not just probationary staff often viewed as more vulnerable to summary action. These facts establish that the same restructuring machinery operated on multiple employment tiers and help confirm that the challenged actions were not merely political appointments or new policy decisions, but part of a structural scheme targeting protected categories of workers.

By offering both a precursor event and a subsequent retaliation after the publicized firings, this case completes the timeline of what Judge Alsup has already described as "aberrational" conduct.

*IV. Judicial Economy and Consistency Favor Relation*

Relating this matter would minimize conflicting factual determinations and conserve judicial resources, particularly with regard to:

- Determining whether OPM exceeded its statutory authority;
- Analyzing how DoD implemented these orders across its components;
- Resolving disputes over due process violations and retaliatory misuse of restructuring frameworks.

Maintaining separate adjudications of these intertwined practices would invite contradictory outcomes and impose unnecessary burdens on the courts and parties alike.

*V. Procedural Manipulation and Relevance to Mass Termination Oversight*

This case reveals how procedural manipulation served as a precursor to the mass adverse actions now under scrutiny. First, the Army under DoD (one of the named defendants of OPM) delayed and obstructed discovery for over four months during the EEOC stage, frustrating timely resolution and concealing key decisionmakers' involvement. Second, evidences show deliberate tempering, deleting and manipulation of TDA records—tactics that align with the structural

4

methods now being litigated in the OPM case. Third, the same actors and mechanisms used to reassign or marginalize the Plaintiff without justification are implicated in the broader pattern of government-structured personnel targeting. These tactics not only harmed the Plaintiff but preview the systemic breakdown that Judge Alsup has described as "aberrational." Judicial coordination is necessary to surface how individual abuses scaled into national misconduct—and to prevent repetition of procedural gamesmanship that subverts oversight and chills protected activity.

VI. Restoring Trust Through Juror Education and Trial Integrity

Finally, Plaintiff submits that this case to serve a civic function beyond individual redress. It presents an opportunity for the judiciary to demonstrate that even highly technical, policy-driven adverse actions are subject to constitutional scrutiny when used to obscure retaliation and discrimination.

By surfacing internal agency practices shielded from public scrutiny and revealing how restructuring and reorganization have been weaponized to inflict targeted harm, this case helps restore trust in a legal system where government MSJs too often foreclose due process and technicalities overrule arguments. It invites jurors and the public to understand the human consequences of abstract policy shifts. As in *Offield v. Holder*, where reassignment was used as constructive discharge, and in historical civil rights litigation such as *Jackson sanitation workers*, where policies were deployed to persistently marginalize protected workers, Plaintiff's case urges this Court to reaffirm that the law protects not just titles or positions, but the respect for American legal system.

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this matter be related to *In re OPM Mass Termination Litigation*, currently before Judge William H. Alsup.

            Respectfully submitted,

*[signature]*

Hang Zhang, Ph.D.
Professor
Defense Language Institute
Department of the Army
hang.zhang@dliflc.ed

Dated: April 17, 2025

**EXHIBIT A: Chronological Summary of Structural Retaliation and Procedural Misconduct**

(Attached to Complaint in *In re OPM Mass Termination*, No. 3:24-mc-80022-WHA)

## CERTIFICATE OF SERVICE

I am a citizen of the United States, employed in the County of San Francisco, over the age of 18 years, and not a party to this action. My business address is the office of the Equal Employment Opportunity Commission, San Francisco District Office, The Phillip Burton Federal Building, 450 Golden Gate Avenue, 5 West, San Francisco, CA 94102.

On the date of execution of this certificate, I e-mailed and uploaded to the electronic docket accessible to Complainant through the EEOC Public Portal and to the Agency through FedSEP a
copy of the following document(s):

**Order Granting Complainant's Request to Withdraw Complaint**

to: Dr. Hang Zhang
   3170 Stelling Drive
   Palo Alto, CA 94303

   Laura Heller, Esq.
   1336 Plummer Street, Bldg 275
   Monterey, CA 93944

I certify under penalty of perjury that the above is true and correct.

DATED: February 24, 2025   *David T. Kelley*
            David T. Kelley
            Administrative Judge