**UNITED STATES FEDERAL COURT NORTHERN CALIFORNIA DISTRICT**

San Francisco District Office Philip Burton Federal Building

450 Golden Gate Avenue, San Francisco, CA 94102

| | |
|---|---|
| **Hang Zhang,** *Plaintiff,* <br><br> VERSUS <br><br> **DANIEL DRISCOLL,** **Secretary, Department of the Army,** *Agency.* | Case No. cv25-03381-LJC <br><br> **SUPPLEMENT TO MOTION TO RELATE CASE (In Re OPM Mass Termination, No. 3:25-cv-01780-WHA)** |

**SUPPLEMENT TO NOTICE OF RETALIATED CASE**

Plaintiff respectfully supplements her pending Notice to Relate Case (filed April 16 & 18), *American Federation of Government Employees v. United States Office of Personnel Management*, Case No. 3:25-cv-01780-WHA, currently presided over by the Honorable Judge William Alsup, to provide additional factual and public policy grounds under Local Rule 3-12. The overlap of operative facts, parties, and institutional structures. These are significant institutional issues currently under review in Judge Alsup's courtroom, including the use of internal federal agency mechanisms to suppress protected conduct, evade accountability, and chill statutory rights among vulnerable classes of federal employees.

This case is about how a federal institution —facing a discrimination complaint it could not defend — mobilized its own discretionary procedures to isolate, discredit, retaliate against a model employee. A salient pattern of discriminatory practices and coordinated retaliation - documented with written proof of intent by key decision makers in a close timeline - emerges from defendant's numerous logical errors, flawed defenses, and data inconsistencies.  It reveals how Army leadership under the pretext of operational necessity and reorganizational needs, pushed non-probationary employees into artificial probationary status, laying the groundwork for

1

future retaliation and mass removals. Allowing Plaintiff's case to proceed alongside AFGE v. OPM advances judicial economy and factual coherence by:

- Establishing broader systemic patterns through factual continuity (over 100 DLI cases).
- Demonstrating individual-to-systemic progression of adverse actions.
- Revealing early internal breakdowns in federal employment protections,
- Supporting AFGE's claims by evidencing pre-existing administrative abuses.

**I. First Ground for Relation: Shared Administrative Structure and Mechanism**

Plaintiff's case arises from the same overarching administrative structure challenged in *OPM litigation*, namely, federally-directed restructuring policies designed to reduce, realign, and reclassify career federal employees without individualized due process.

At Defense Language Institute, an Army training school, Plaintiff's experienced the same administrative mechanism illustrated below:

| Point | Detail |
| --- | --- |
| **Structural Retaliation** | Plaintiff documents a pattern of reassignment manipulation, blacklisting, and workload targeting following her protected EEO activity. These personnel actions, while individually couched as "business needs," systematically undermined her career trajectory without formal discipline or process — a precursor to the "administrative amputations" later challenged in AFGE v. OPM. |
| **Systemic Failure & Due Process Violations** | Agency leadership repeatedly departed from established promotion, assignment, and workload norms without transparent criteria — mirroring the disregard for individualized due process that characterized the later mass terminations. |
| **Pretextual Justifications** | Plaintiff's management shifted explanations for adverse actions over time, aligning with the OPM pattern where "operational needs" were cited post hoc to justify mass terminations absent individualized assessments. |
| **Timing and Institutional Mechanisms** | Plaintiff's retaliation unfolded during the same institutional climate (2021–present) where groundwork were laid for broader workforce reductions — supporting the inference that systemic employment manipulation predated public exposure of the mass terminations. |
| **Proven Harms** | Career harm caused by administrative reassignment without due process. |

Thus, Plaintiff's claims arise from the same administrative restructuring pressures, mechanisms, and harms at issue in the related mass action.

**II. Second Ground for Relation**: Shared Timeline & Facts

Plaintiff's adverse administrative treatment coincided with the broader federal restructuring directed by the OPM, culminating in the mass personnel actions challenged in *OPM Litigation*.

The following timeline demonstrates the factual resemblance:

| Period | OPM-Directed Actions | Plaintiff's Administrative Events |
|---|---|---|
| **2021** | OPM circulates early restructuring memos emphasizing realignment, attrition management, and functional reviews. | Discussions initiated to realign or dissolve SLS Center. |
| **Early 2022** | Agencies begin preliminary actions: reallocating duties, adjusting positions, and preparing for formal RIF pathways. | Staff with "99" codes encouraged to find positions. |
| **Mid–Late 2022** | Agencies finalize TDA adjustments and personnel realignments. | Push Plaintiff and others back into classroom, "go back to Chinese school." |
| **Early–Mid 2023** | Mass adverse personnel actions emerge across multiple agencies implementing OPM restructuring. | Formal adverse action materializes (reassignment or forced change in duties). Plaintiff files EEO complaints. |
| **Late 2023–2024** | *OPM Mass Termination* litigation filed; broader systemic impacts challenged. | Adverse actions continue: double workload, denial of jobs, retaliatory dissemination of EEO status. |
| **2025** | *OPM Mass Termination* litigation ongoing. | Forced withdrawal from EEOC following 11 months of non-ruling (no agency MSJ). Local filing of retaliation. Federal Complaint initiated. |

The above table shows Plaintiff's claims factually and temporally intertwined with the broader administrative restructuring challenged in the OPM litigation. Relation will promote judicial economy and consistent adjudication.

**III. Third Ground for Relation** (e.g., Fifth Amendment violation)

Plaintiff's case provides factual continuity and critical insight into the administrative culture and retaliation mechanisms that ultimately fueled the mass firing litigation, especially in terms of constitutional right violations (Count V) in addition to her Title VII counts (see Complaint):

COUNT V: Violation of the Fifth Amendment — Deprivation of Property and Liberty Interests Without Due Process of Law (Against Defendant Agency in its Official Capacity)

1. Plaintiff re-alleges and incorporates by reference all prior paragraphs in Complaint (filed on April 16 & 18) and Notice of Related Case (filed on April 18) as if fully set forth therein.
2. The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of property or liberty interests without adequate notice and opportunity to be heard, and without fair, non-pretextual procedures. It also encompasses an Equal Protection guarantee, binding the federal government and its agencies to treat individuals fairly and without discriminatory purpose or effect.
3. Plaintiff, as a federal employee with an established record of "Outstanding" performance evaluations, awards, and merit-based achievements, possessed constitutionally protected property interests in continued career advancement opportunities, eligibility for promotion, and reputation within the federal employment system.
4. Plaintiff also possessed liberty interests in maintaining her professional reputation, avoiding stigmatization through baseless or pretextual adverse employment actions, and pursuing her chosen career path without unconstitutional retaliation.
5. Plaintiff reasonably relied on the federal government's statutory and constitutional guarantees, including protections under Title VII and the Administrative Procedure Act, as well as official agency policies promising fair treatment, non-retaliatory reassignments, and merit-based evaluations.
6. In retaliation for Plaintiff's protected EEO activities and disclosures of discrimination, Defendant agency deliberately engineered adverse personnel actions without fair process, including:
   a. Downgrading Plaintiff's performance ratings below historical levels without individual justification;
   b. Denying Plaintiff access to promotional opportunities for which she was objectively qualified;

c. Disseminating misleading internal evaluations harming Plaintiff's professional standing;

d. Tampering with or withholding relevant employment records during internal and administrative proceedings;

e. Refusing to include critical witnesses in agency investigations to conceal retaliatory motives.

7. These adverse actions were procedurally irregular and pretextually engineered through administrative abuse, depriving Plaintiff of property and liberty interests without the notice, impartial evaluation, or opportunity to contest required by the Fifth Amendment.

8. Defendant agency's manipulation of internal selection processes, TDA reassignment records, performance metrics, and award eligibility criteria constitutes a deprivation of career-related rights under color of federal authority, actionable under the Fifth Amendment.

9. As a direct and proximate result of Defendant's constitutional violations, Plaintiff has suffered substantial damages, including but not limited to:
    - Loss of professional advancement,
    - Impairment of future earning capacity,
    - Emotional distress,
    - Reputational injury,
    - Career degradation through official ratings and internal records, impairing Plaintiff's future federal employment.
    - Persistent risk of termination through marginal appraisals.

10. Continued administrative delay threatens imminent and irreparable harm and injuries above that compound daily and cannot be remedied by monetary damages alone. Plaintiff seeks declaratory relief, injunctive relief reinstating her eligibility for advancement without retaliatory impairment, restoration of all property and liberty rights unlawfully denied, expungement of retaliatory performance ratings from her personnel file, compensatory damages, and such further relief as the Court deems just and proper.

**IV. Additional Grounds For Case Relation**

In addition to Plaintiff's constitutional claims, further factual linkages and systemic concerns support case relation as detailed below.

**1. Threat to Public Trust (Systemic Retaliation and Structural Misconduct)**

Plaintiff, a hardworking, well-respected career educator with no history of disciplinary issues, alleges these procedurally irregular acts:

**Pretextual Reassignments**: Internal TDA system was manipulated to justify Plaintiff's reassignment in 2023 based on vague "operational needs," while Plaintiff's superior qualifications were disregarded during 2024–25 promotion selections.

**Suppression of Key Witnesses**: Members of Senior Leadership were removed without explanation from the agency's witness list during the 2024 internal investigation.

**Public Admission of Retaliatory Culture**: Current Senior Leadership admitted to an entrenched retaliatory culture but refused corrective actions.

**Compromised Administrative Neutrality**: EEOC Senior Administrative Judge coordinated behind the scenes with Agency Counsel, raising serious concerns regarding the independence and neutrality of administrative adjudication.

**Evidence Tampering**: DLI refused to produce required EEO-1 data during EEOC discovery and withheld TDA records even after investigative interviews — suggesting ad hoc manipulation of records.

**2. Threat to Publicly Funded Education & Troop Readiness**

Plaintiff's case involves not merely employment retaliation, but a broader institutional breakdown that jeopardizes the delivery of taxpayer-funded education critical to the national interest.

The Defense Language Institute serves a student population that rely on DLI to gain the academic credentials and personal confidence necessary for public service careers.

Agency retaliation against qualified educators — including reassignment, promotion denial, and exclusion from instructional leadership — directly harms students' access to quality education, in violation of the public's investment and expectations.

In undermining the training environment, Defendant's actions erode the very purpose for which DLI receives public funds, harming the career prospects and livelihood of many service members.

### 3. Threat to National Defense Readiness

The Defense Language Institute's main mission is to support U.S. national security by training linguists and analysts critical to defense, intelligence, and foreign policy missions.

Retaliatory displacement of qualified academic leadership jeopardize the effectiveness of mission-critical training pipelines.

Without skilled academic leaders, mission-critical linguists and specialists may be inadequately prepared, resulting in tangible degradation of national readiness.

The threat is not theoretical: weakened training environments heighten operational risks.

Judicial oversight into the unchecked retaliation is necessary to prevent physical harm to national defense capacity.

### 4. Threat to Moral Legitimacy

How the government treats its women, minorities, and foreign-born civil servants undermines its broader moral legitimacy and international standing. Plaintiff trusts that this Court will take this into consideration in the deliberation of this case.

### V. Conclusion

This case presents a form of retaliation rooted not only in overt hostility but in the discretionary mechanics of institutional process. Internal reassignment systems, discretionary selections, appraisal manipulation, and rigged agency investigation were used to incrementally isolate, discredit and disqualify a protected employee following EEO activity. It raises the broader concern of how designated authority - left unchecked - can be used to circumvent the very protections federal law was designed to uphold.

Relating Plaintiff's case would promote judicial economy and factual coherence, as it raises systemic personnel issues and administrative practices overlapping with those already under review in AFGE v. OPM. This Court's familiarity with evaluating administrative mechanisms used to suppress protected conduct — through selectively applied discretion and opaque

procedural practices — positions it to efficiently adjudicate the claims raised herein without duplication of effort or inconsistent findings.

Relating this matter would also provide clear precedent for future cases in which retaliation is embedded, disguised, and denied through procedural manipulation, and reaffirm that constitutional and statutory limits must bind even well-defended institutions. Without timely judicial intervention, Defendant's unlawful practices risk entrenching into regressive norms, further corroding public trust in federal service.

Plaintiff has demonstrated procedural discipline and good faith throughout the EEOC proceedings and will continue to adhere diligently to all timelines set by this Court to support coherent judicial review of broader administrative abuses.

Respectfully submitted,

_____

Hang Zhang
Defense Language Institute
Department of the Army
hangzhang777@yahoo.com
Dated: April 22, 2025