UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Hang Zhang,**<br>*Plaintiff,*<br><br>VERSUS<br><br>**DANIEL DRISCOLL,**<br>**Secretary, Department of the Army,**<br>*Agency.* | Case No.: 25-cv-03381-AMO<br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION TO ENJOIN RETALIATION AND RESTORE ACCESS TO COURT**<br><br>Hon. Araceli Martínez-Oguín |

**PLAINTIFF'S MOTION TO PRELIMINARY INJUNCTION TO ENJOIN RETALIATION AND RESTORE ACCESS TO COURT**

(Filed concurrently with Plaintiff's Motion to Reconsider Stay Order)

**I. INTRODUCTION**

Plaintiff, Dr. Hang Zhang, respectfully moves this Court for a preliminary injunction to enjoin escalating retaliation and breaches of confidentiality in violation of Title VII and federal regulations protecting EEO activity. Over the past twenty-eight months, Defendant has escalated from reassignment and denial of opportunities, to coordinated disclosures of confidential filings, and finally to a September 2025 counseling letter threatening removal after 23 years of spotless service.

The critical record evidence—the December 31, 2024 coordination email (Ex. A), the April 1, 2025 Associate Provost testimony of no performance concerns (Ex. B), and the September 2025 removal-threatening letter (Ex. C)—establishes a clear pattern of retaliation and imminent harm. This motion is filed under extraordinary circumstances: on October 2, 2025, the Court granted a blanket stay of all proceedings based on the government shutdown, before Plaintiff could file her opposition. The stay order incorrectly states that Defendant's counsel has been furloughed, when

in fact two of three counsel remain available. This premature stay denies Plaintiff access to emergency relief while retaliation continues unchecked.

Immediate relief is necessary to preserve Dr. Zhang's career, protect statutory and constitutional rights, and maintain the integrity of the judicial process pending final adjudication. While this motion focuses on the most immediately urgent retaliation and due process claims requiring emergency relief, Plaintiff's underlying First Amended Complaint includes additional claims for hostile work environment, Equal Pay Act violations, Privacy Act violations, and disparate treatment discrimination that will be fully litigated on the merits and support Plaintiff's overall likelihood of success. To prevent irreversible harm, preliminary injunction is imperative.

A key agency witness, Associate Provost Dr. Jonathan Gajdos (AP), confirmed three facts: senior leadership learned of Dr. Zhang's protected EEO activity via agency counsel; there were no concerns about her work at URU; and the matter was discussed at the Provost/Chiefs level. (Ex. B Q4–Q10, filed under seal; redacted & decontrolled per DoDI 5200.48 §3.4.)

## II. STATEMENT OF FACTS

Defendant's retaliation has been continuous rather than isolated to discrete events. Following Plaintiff's June 2023 EEO filing, Defendant engaged in systematic adverse actions:

Prior to May 2023: Dr. Zhang served as a Student Learning Specialist for 5 years successfully. Senior DLI leadership, including Dr. Rama Munajat, Dean of UKP, repeatedly told her "go back to Chinese school," targeting her protected class. She rejected.

May 5, 2023: Defendant reassigned Dr. Zhang to a fulltime Chinese teacher's load on top of her SLS role. Similarly qualified white male colleagues were exempted.

June 13, 2023: Dr. Zhang filed an EEO complaint. Within 24 hours, Defendant denied her the Assessment Specialist position, selecting a less qualified white male candidate from her cohort.

From June 2023 onward: Dr. Zhang applied for seven positions and was repeatedly passed over within days. White male and non-EEO-involved candidates were consistently chosen over Dr. Zhang.

March 4, 2024: At an ROI interview, the Associate Provost admitted evidence of discrimination, stating "it doesn't necessarily mean it's not discrimination". Together with "go back to Chinese school," these sworn admissions establish discriminatory animus.

April 2024: Defendant issued a marginal performance appraisal despite Dr. Zhang's exemplary record.

April 24, 2024: Defendant submitted Dr. Zhang's confidential EEO mediation materials as evidence in the ROI, violating Privacy Act protections and EEO regulations.

August 13, 2024: In an EEOC initial conference, the Administrative Judge ruled that reorganization is not a defense to discrimination claims and permitted Dr. Zhang's Equal Pay Act claim to proceed.

December 10, 2024: During Dr. Zhang's interview for Academic Specialist at UML, the Dean of Students, a Lt. Col., publicly dismissed Dr. Zhang's credentials and undermined her credibility in front of the interview panel.

December 31, 2024: The Associate Provost forwarded Plaintiff's confidential EEO inquiry to agency counsel (Ex. A). Within twenty minutes, agency counsel directed senior leadership to disseminate Plaintiff's protected EEO activity more broadly, violating 29 C.F.R. § 1614.108(b).

January 16, 2025: Agency counsel attempted to retroactively justify the December 31 disclosure in an email to senior officials. This "explanation" acknowledged the breach but sought to minimize it.

January 30, 2025: Dr. Zhang was listed for a Quarterly Award. Her award was rescinded and her name omitted from the program.

February 7, 2025: Defendant counsel sent a second unauthorized disclosure of unsolicited, privileged material to Plaintiff. No corrective action followed Dr. Zhang's protest.

April 1, 2025: The Associate Provost testified under oath (Ex. B) that he:

(a) learned of Plaintiff's EEO activity through counsel's disclosures;

(b) coordinated with senior leadership regarding Plaintiff; and

(c) had no concerns about Plaintiff's work performance.

April 1, 2025: Agency counsel Dr. Laura Heller was excluded from the EEO inquiry on grounds of her counsel status in related litigation, shielding her from accountability.

April 1, 2025: In his EEO witness statement, Associate Provost (AP) stated that he became aware of Dr. Zhang's application and EEO activity only through agency counsel's disclosure to leadership (Q4); that he had heard no concerns about Dr. Zhang's work contributions at URU (Q8); and that he spoke with the Provost, Deputy Chief of Staff (Ben Brown), and Chief of Staff (Mark McLeod) regarding Dr. Zhang's situation (Q10). (Ex. B Q4–Q10, filed under seal; redacted & decontrolled per DoDI 5200.48 §3.4.)

April 1, 2025: The Inspector General refused to investigate counsel's misconduct, parroting counsel's own excuses.

April 21, 2025: After reporting her supervisor's appraisal misconduct to the Dean and Associate Provost, Dr. Zhang was assigned collateral duties without credit and denied recognition for pedagogical innovations.

June-July 2025: Dr. Zhang reported academic fraud through proper whistleblower channels. The Dean publicly labeled her "unethical" via email to the Associate Provost.

August 2025: The Chief of Staff disclosed Dr. Zhang's whistleblower status to her Dean and Associate Provost and refused to investigate or address the reported fraud and student harm.

September 9, 2025: Plaintiff received her first disciplinary counseling letter in 23 years of federal service (Ex. C), which stated: 'Your conduct does not promote the efficiency of the service and can lead to more severe disciplinary or adverse action, including penalties ranging from formal reprimand and suspension to removal from Federal service.' The defendant treats any alleged inefficiency as a basis for removal—an obvious distortion of 5 U.S.C. § 7513(a), which confines removal authority to specific causes and requires progressive discipline. Its sweeping threat exposes the retaliatory, pretextual nature of Defendants' actions.

The counseling letter cited three pretextual charges: (1) allegedly missing meetings without documentation of proper notice; (2) failure to upload reports to a Teams site—a minor administrative task never before enforced; and (3) vague allegations about teammate

coordination. This disciplinary action followed immediately after Plaintiff reported fraudulent copy-pasted reports and was publicly labeled "unethical" by the Dean.

Concurrent with the counseling letter, DoD investigators forced Plaintiff into a 148-page interrogatory with 72-hour response deadlines while canceling her opportunity for live testimony.

This 28-month pattern of escalating retaliation demonstrates continuous animus, not stale claims. The April 2025 sworn testimony of "no performance concerns" followed immediately by June-September adverse actions proves the September counseling letter was pretextual retaliation.

## III. JURISDICTION AND STANDING

This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 2000e-16(c) (Title VII federal employee claims). Plaintiff has exhausted administrative remedies by filing timely EEO complaints in June 2023, with more than 180 days elapsed without final agency action. Defendant's retaliation constitutes a continuing violation under *Morgan v. National Railroad Passenger Corp.*, 536 U.S. 101, 117 (2002), making all timeline incidents actionable.

Plaintiff's constitutional claims are justiciable under *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), as wholly collateral to Title VII's statutory scheme. The First Amendment retaliation and Fifth Amendment due process claims challenge the constitutional validity of the administrative process itself, not merely agency action reviewable through Title VII procedures. These structural constitutional defects fall outside the MSPB/EEOC administrative framework and are properly before this Court under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).

Sovereign immunity does not bar prospective injunctive relief against ongoing constitutional violations. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949). This Court has authority to grant preliminary injunctive relief under Federal Rule of Civil Procedure 65 to preserve the status quo and prevent irreparable harm pending final adjudication.

## IV. LEGAL STANDARD

A party seeking preliminary injunction must demonstrate: (1) likelihood of success on the merits; (2) irreparable harm absent injunction; (3) balance of equities tips in plaintiff's favor; and (4) injunction serves public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Under Ninth Circuit precedent, plaintiff may obtain preliminary injunction by showing "serious questions going to the merits" and that balance of hardships "tips sharply" in plaintiff's favor, provided the other two *Winter* factors are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Federal courts have recognized that federal employees subject to retaliation are entitled to injunctive relief, particularly when administrative processes chill constitutionally protected activities. *Sanjour v. EPA*, 56 F.3d 85 (D.C. Cir. 1995); *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009).

Plaintiff satisfies both the strict *Winter* standard and the alternative *Alliance for the Wild Rockies* framework. Federal district courts have repeatedly granted emergency injunctive relief in recent class actions involving federal employees, including *AFGE v. OPM* (N.D. Cal. 2025), *AFGE v. Trump* (D.D.C. 2025), and *Federal Education Association v. Trump* (D.D.C. 2025).

## V. ARGUMENT

**A. Likelihood of Success on the Merits**

Plaintiff's evidence establishes strong likelihood of success on multiple independent legal grounds. The December 31, 2024 coordination email (Ex. A) provides direct evidence of institutional coordination explicitly directing dissemination of Plaintiff's protected EEO status. The Associate Provost's April 1, 2025 sworn testimony (Ex. B) confirms he had no concerns about Plaintiff's work performance. The September 2025 disciplinary letter (Ex. C), the first in Plaintiff's 23-year tenure, manifests unprecedented escalation directly linked to protected activity.

*1. Title VII Retaliation*

Title VII retaliation encompasses any employer action likely to deter a reasonable employee from protected activity. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Plaintiff demonstrates:

**Protected Activity:** Filing EEO complaints, participating in investigations, and whistleblowing on fraud and waste.

**Adverse Action:** Denials of promotion, negative appraisals, rescinded awards, public stigmatization as "unethical," unauthorized disclosure of confidential EEO information, prohibition from student contact, and disciplinary threats of removal.

**Causal Connection:** Plaintiff establishes a strong causal link between protected activity and adverse actions through close temporal proximity and direct evidence of retaliatory intent. The denial of assignments, counseling letter threatening removal, and escalating disciplinary actions closely follow Plaintiff's protected disclosures. The December 31 disclosure (Ex. A) reveals explicit institutional coordination in retaliation.

Temporal proximity alone suffices to raise an inference of retaliation. *Passantino v. Johnson & Johnson*, 212 F.3d 493, 506 (9th Cir. 2000); *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000). Moreover, Plaintiff undermines Defendant's proffered reasons by showing inconsistency and fabrication. Defendant's shifting explanations evince pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

The September 2025 counseling letter (Ex. C) threatening removal constitutes pretextual adverse action. On April 1, 2025—five months prior—the Associate Provost testified under oath (Ex. B) that he had no concerns regarding Plaintiff's job performance. Plaintiff's performance appraisals have remained satisfactory with no disciplinary history throughout 23 years of federal service. No documentation exists reflecting any performance deterioration or warnings between April and September 2025, despite federal labor law's requirement for progressive, contemporaneous discipline. *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002).

AP Testimony (Key Witness Statement, Ex. B). Associate Provost (AP) testified under oath that: (i) leadership first learned of Dr. Zhang's protected EEO activity only via agency counsel (Q4); (ii) he had heard no concerns about her performance at URU (Q8); and (iii) he personally discussed her case with the Provost, Deputy Chief of Staff, and Chief of Staff (Q10). This direct evidence of knowledge at the highest levels and absence of any performance justification

reinforces the inference of retaliatory motive and supplies serious questions on causation. (Key Witness Statement, supra §I.B.)

The sudden issuance of a removal-level counseling letter immediately following institutional coordination regarding Plaintiff's pending EEOC litigation demonstrates the disciplinary action was fabricated in retaliation. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

*2. First Amendment Retaliation*

Plaintiff's whistleblowing constitutes protected speech on matters of public concern. Plaintiff's Student Learning Specialist job description contains no responsibility for fraud investigation or oversight. Plaintiff's reports to the Inspector General and Dean were made as a concerned citizen, not in official capacity. *Lane v. Franks*, 573 U.S. 228 (2014).

The Dean's public labeling of Plaintiff as "unethical" confirms that reporting was outside job duties. Retaliation in lieu of investigation confirms Plaintiff spoke as a citizen on matters warranting First Amendment protection under *Pickering v. Board of Education*, 391 U.S. 563 (1968). Federal fraud, waste, and student harm are prototypical public concerns.

*3. Fifth Amendment Due Process*

The September 2025 disciplinary action (Ex. C) violated Plaintiff's property interest under *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), by depriving her of federal employment without due process. The disciplinary process unlawfully combined prosecutorial and adjudicative functions, denied discovery, and excluded critical witnesses, violating *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Axon Enterprise*, 598 U.S. 175 (2023).

The agency's exclusion of legal counsel Dr. Heller from the EEO investigation, despite her involvement in the alleged misconduct, compromised impartiality and integrity of the administrative process. This selective recognition of status amounts to institutionalized conflict of interest. The agency protects counsel from accountability by invoking privilege only when convenient, thereby undermining both confidentiality rules and fair process. This defect means Plaintiff's administrative remedies could not be fully or fairly exhausted, warranting judicial intervention.

Plaintiff was deprived of her right to a meaningful pre-deprivation hearing as required by *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). The structural procedural defects independently violate due process and demand judicial intervention.

The August 2025 disclosure of Plaintiff's whistleblower status by the Chief of Staff to the same senior leaders further confirms pervasive institutional coordination. The September counseling letter (Ex. C) threatening removal is the direct product of this coordinated campaign, satisfying *Tumey v. Ohio*, 273 U.S. 510 (1927), that structural bias infects proceedings even if different officials undertake formal actions. Cat's paw liability applies when a biased supervisor influences an adverse employment decision implemented by others. *Staub v. Proctor Hospital*, 562 U.S. 411 (2011).

4. Privacy Act and Confidentiality Violations

The December 31 disclosure (Ex. A) violated federal confidentiality protections by revealing Plaintiff's protected EEO activity to unauthorized personnel in violation of 29 C.F.R. § 1614.108(b). This constitutes direct evidence of retaliation and justifies injunctive relief to prevent further unlawful disclosures.

**B. Irreparable Harm**

Plaintiff faces multiple, interacting, and compounding harms that are irreparable and cannot be remedied by money damages.

*1. Career Destruction and Economic Loss*

Plaintiff faces imminent, permanent loss of her 23-year federal career due to Defendant's September 2025 counseling letter (Ex. C), which explicitly threatens removal. Concurrently, she has been stripped of core academic duties, including student advising—the essence of her educator role. This comprehensive career destruction eliminates not only formal employment but also substantive professional function, including accrued pension benefits, accumulated expertise, and the intrinsic value of a lifelong federal vocation. Such losses go far beyond ordinary employment harms and cannot be remedied by backpay or monetary damages. *Passantino v. Johnson & Johnson Consumer, Inc.*, 212 F.3d 493, 510 (9th Cir. 2000).

*2. Reputational and Physical Harms*

Unauthorized disclosure of Plaintiff's confidential EEO files through the December 31 disclosure (Ex. A) and the Dean's public branding of her as "unethical" have inflicted lasting harm to her reputation among colleagues and within the military linguistics community. This reputational injury is irreparable because money damages cannot restore professional standing or undo the stigma among peers. *Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000).

Retaliation has caused Plaintiff documented, severe health consequences including insomnia, anxiety, weight gain, worsening fibroid, vision and dental issues. Courts recognize that such health impacts, when directly caused by adverse employment actions, constitute irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

*3. Constitutional and Cumulative Harms*

The September 2025 counseling letter (Ex. C) chills Plaintiff's protected activity, forcing her to choose between vindicating her EEO rights and risking further retaliation. The loss of First Amendment freedoms—even temporarily—constitutes irreparable injury per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Defendant's disciplinary process unlawfully combines prosecutorial and adjudicative functions, suppresses exculpatory evidence, and denies reasonable witness participation. These structural due process defects inflict immediate constitutional harm that cannot be cured by post-deprivation remedies. *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). The harm lies in the loss of constitutionally required process, which cannot be compensated with money damages. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

Each protected disclosure by Plaintiff has been met with escalating retaliation—from reassignment to removal threats—compounding the injury and demonstrating that the harms are ongoing, interrelated, and accelerating. *EEOC v. Boeing Co.*, 577 F.3d 1044 (9th Cir. 2009). The cumulative nature of these injuries—career, reputational, physical, and constitutional—establishes that the harm is not only non-compensable but also dynamic, growing more severe over time.

**C. Balance of Equities and Public Interest**

The balance of equities overwhelmingly favors Plaintiff, who faces imminent career termination accompanied by serious constitutional violations. Defendant's sole burden is compliance with established legal obligations applicable to all federal employees.

Preliminary injunctive relief is necessary to:

(1) safeguard federal whistleblowers who expose misuse of taxpayer funds;

(2) preserve the integrity of military education critical to national security;

(3) deter institutional retaliation aimed at suppressing protected disclosures;

(4) uphold the constitutional protections guaranteed to federal employees; and

(5) prevent abuse of administrative procedures designed to silence dissent.

Courts increasingly recognize the compelling public interest in protecting whistleblowers from targeted retaliation. *Jensen v. Brown*, No. 23-2545 (9th Cir. Mar. 10, 2025).

Plaintiff, as a Defense Language Institute instructor, performs an indispensable function training military linguists essential for defense readiness. Retaliation against such experienced specialists compromises national defense by discouraging qualified educators from reporting misconduct that undermines training quality, destabilizing specialized defense programs, signaling tacit acceptance of discrimination and fraud within military institutions, and chilling whistleblowers, thereby endangering taxpayer resources and operational integrity.

The damage extends well beyond Plaintiff's personal career harm to impair the overall quality and effectiveness of military linguistic training. Defendant's retaliatory removal of a highly qualified educator from core instructional duties undermines the Department of Defense's educational mission and sets a dangerous precedent condoning retaliatory management over mission-critical effectiveness.

Plaintiff's consistent record of exceptional student advising in critical languages (Ex. B) directly advances the Army's mission of producing linguistically proficient, combat-ready soldiers. Retaliation against such an experienced educator violates statutory and constitutional safeguards while impairing military readiness and public security interests.

Issuing the requested injunction preserves the equitable and institutional balance by allowing Plaintiff to continue her vital work without disruption, ensuring uninterrupted instruction for

students during a period of heightened international demand for linguistic expertise, and preventing needless harm to Plaintiff's distinguished career, which cannot be remedied after the fact. The administrative burden on Defendant is minimal and self-inflicted, stemming solely from adherence to lawful judicial oversight and compliance with existing confidentiality regulations.

**VI. REQUESTED RELIEF**

Plaintiff respectfully requests this Court to grant preliminary injunctive relief necessary to avert imminent, irreparable harm to Plaintiff's career, professional standing, and statutory rights throughout litigation. Specifically, Plaintiff seeks:

**A. Immediate Injunctive Relief:**

1. Immediately enjoin removal proceedings or adverse employment actions taken in retaliation for Plaintiff's protected EEO and whistleblower activity pending final adjudication.
2. Segregate the September 2025 counseling letter (Ex. C) from Plaintiff's official personnel file; prohibit consideration of this letter in any employment decisions (RIF selection, performance evaluations, position assignments, promotion eligibility) pending final adjudication.
3. Restore Plaintiff to full duties including student facing activity participation, curriculum development meetings, and academic innovation initiatives, reversing prohibitions imposed in September 2025.
4. Enjoin Defendants, their agents, employees, and successors from taking any adverse employment action against Plaintiff based on her protected EEO activity, fraud whistleblowing, or participation in this litigation, including but not limited to: termination, RIF selection, reassignment to Chinese-language-only positions based on national origin, further discipline, negative performance evaluations, or denial of professional opportunities.

**B. Confidentiality and Process Protections:**

5. Cease unauthorized dissemination of Plaintiff's confidential EEO status and impose court-supervised confidentiality protections pursuant to 29 C.F.R. § 1614.108(b). Implement procedures ensuring that Plaintiff's EEO complaint status, fraud whistleblowing activity, and federal litigation participation are not disclosed to decision-makers or colleagues except as required by law and with Plaintiff's written consent.

6. Require that any future investigations of Plaintiff be conducted by a neutral investigator not subordinate to the Chief of Staff, Dean, or Associate Provost, with advance written notice of allegations, opportunity to respond, and right to present witnesses and evidence.

**C. Evidence Preservation and Notice:**

7. Preserve all records, communications, and documents relating to Plaintiff's employment, EEO complaints, the December 31 disclosure (Ex. A), and all adverse actions; provide written notice to supervisors and decision-makers (Chief of Staff, Dean, Associate Provost, Deputy Dean, Commandant) that retaliation against Plaintiff is unlawful and that violation of this injunction will result in contempt sanctions.

**D. Bond Waiver and Monitoring:**

8. Waive bond requirement under Rule 65(c) based on Plaintiff's limited financial resources as individual federal employee challenging institutional retaliation. No monetary damages to Defendant will result from enjoining unlawful conduct.

9. Require Defendants to file periodic compliance reports if directed by the Court, documenting any employment decisions affecting Plaintiff and certification that no retaliation has occurred.

**E. Such other and further relief as the Court deems just and proper.**

**VII. CONCLUSION**

The evidence establishes a coordinated institutional retaliation campaign culminating in imminent removal threats after twenty-three years of distinguished service. The December 31 disclosure (Ex. A) provides direct evidence of institutional retaliation. The April 1 testimony (Ex. B) confirms no performance concerns existed five months before the September 2025

counseling letter. The September 2025 counseling letter (Ex. C) escalates irreparable harm and necessitates immediate judicial relief.

The documented institutional coordination and escalating retaliation create compelling grounds for immediate intervention. Preliminary injunctive relief is imperative to prevent irreparable injury to Plaintiff's constitutional rights and career while preserving this Court's authority to provide meaningful final relief.

Respectfully submitted,

/s/ *Hang Zhang*
Hang Zhang, Ph.D.
    Professor
Defense Language Institute
Department of the Army
rosezi@yahoo.com

Dated: October 7, 2025

**INDEX OF EXHIBITS**

**Exhibit A** – Plaintiff's Declaration, including December 31, 2024 disclosure of protected EEO activity.

**Exhibit B** – April 1, 2025 sworn interview of Associate Provost with EEO investigator, confirming no performance concerns.

**Exhibit C** – September 9, 2025 disciplinary counseling letter threatening removal, with copy of original.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2025, I electronically filed the foregoing Preliminary Injunction to Enjoin Retaliation and Restore Access to Court with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

 /s/ *Hang Zhang*
Hang Zhang, Ph.D.