CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
MOLLY A. FRIEND (CABN CABN 289677)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7177
   FAX: (415) 436-7234
   molly.friend@usdoj.gov

Attorneys for the Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HANG ZHANG, <br><br> Plaintiff, <br><br> v. <br><br> DANIEL DRISCOLL, Secretary, Department of the Army <br><br> Defendant. | No. 3:25-cv-03381-AMO <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hon. Araceli Martínez-Oguín |

## I. INTRODUCTION

The Court should deny Plaintiff's motion for preliminary injunctive relief because Plaintiff cannot meet the demanding standard for such relief. Plaintiff brings this motion in conjunction with her first amended complaint ("FAC") to enjoin Defendant from alleged retaliation under Title VII and the Frist Amendment, and violations of due process, the Privacy Act and confidentiality in the handling of her underlying Equal Employment Opportunity ("EEO") Proceedings. However, Plaintiff has not shown that she is likely to succeed on the merits of any of these claims as Plaintiff fails to allege facts in either the FAC or motion to state such causes of action. Plaintiff does not allege a causal nexus between her protected EEO activity and any alleged adverse action. Therefore, her claims of retaliation fail. Additionally, Plaintiff's claims regarding violations of due process and confidentiality fail because Title VII does not provide a cause of action for complaints against the administrative investigation and claim process. Finally, Plaintiff does not allege facts sufficient to state a claim under the Privacy Act.

As such, Defendant respectfully requests that the Court deny Plaintiff's motion for injunctive relief.

## II. FACTUAL BACKGROUND

Plaintiff is female, Chinese American, of Chinese national origin, and is employed by DLI as a Student Learning Specialist. *See* Dkt. 23 (FAC) at ¶¶ 1, 13. Plaintiff alleges that during a structural reorganization on May 5, 2023, she was assigned to the DLI Chinese school. *Id.* at ¶ 16.

**Alleged Retaliation:** Following her reassignment, Plaintiff alleges that she was denied seven separate positions to which she applied within DLI: (1) Test Specialist on June 4, 2023; (2) "ODA" position at "ETD" on June 14, 2023; (3) Operations Research Analyst on June 16, 2023; (4) Assistant Director of Immersion on May 13, 2024; (5) Academic Specialist at "UML" on December 10, 2024; (6) Assessment Specialist on March 14, 2025; and (7) Institutional Evaluator on an unspecified date. *Id.* at ¶¶ 29-31, 38, 45, 66, 79. With the exception of the Academic Specialist position, the FAC does not identify who any of the decisionmakers were for the positions for which Plaintiff was not selected. *Id.* Plaintiff alleges that Lt. Col. Jorge and the Associate Provost oversaw the selection process for the Academic Specialist position. *Id.* at ¶ 45. Plaintiff does not allege that either individual knew about her protected activity at the time of this selection. Plaintiff only alleges that on December 31, 2024, after the

date of the selection, agency counsel allegedly circulated Plaintiff's EEO status to "senior leaders." *Id.* at ¶ 96. Plaintiff further does not allege what input either Lt. Col. Jorge or the Associate Provost had in the selection process, how many others were involved, or if any of the others involved were aware of Plaintiff's protected activity.

Plaintiff alleges that on January 30, 2025, Defendant rescinded a quarterly award after it was publicly listed. *Id.* at ¶ 56. Plaintiff does not allege who made the decision to rescind the award. In her motion for injunctive relief, Plaintiff further alleges retaliation through "public stigmatization as unethical," and unauthorized disclosure of confidential EEO information. Dkt. No. 24 at 7. However, Plaintiff only alleges that the "Dean publicly labeled her 'unethical' via email to the Associate Provost." *Id.* at 4. There is no information regarding what the correspondence related to or whether the Dean was aware of Plaintiff's protected status. With regard to the alleged unauthorized disclosure of EEO information, Plaintiff does not allege what these materials contained, to whom specifically they were sent, or any facts that would suggest that dissemination of the materials was improper. Finally, Plaintiff alleges that the counseling letter she received on September 9, 2025, was retaliation for her protected activity. *Id.* at 7. The letter was issued to Plaintiff by her supervisor, Yai Chen. *Id.* at Ex. C. Again, Plaintiff does not allege that Dr. Chen was ever made aware of Plaintiff's protected activity.

**<u>Alleged EEO Misconduct:</u>**  On May 11, 2023, Plaintiff formally requested an EEO appointment. Dkt. No. 23 at ¶ 26. Plaintiff filed a formal EEO complaint on June 13, 2023, which she alleges she timely amended to include claims of retaliation and procedural misconduct on February 23, 2024. *Id.* at ¶¶ 10-11.

Plaintiff alleges that agency counsel was improperly excluded from the EEO investigation. Dkt. No. 24 at 8. Plaintiff further alleges that she was deprived of her right to a meaningful pre-deprivation hearing, although it is unclear what type of hearing she feels she is entitled to or of what exactly she was deprived. *Id.* at 9. Plaintiff alleges improper disclosure of her "whistleblower status" by the Chief of Staff to senior leaders. *Id.* Finally, Plaintiff alleges that her protected EEO activity was improperly disclosed in a December 31, 2024 e-mail to senior leaders as evidence of retaliation. *Id.*

### III.  PROCEDUREAL BACKGROUND

On April 17, 2025, Plaintiff filed a complaint, alleging causes of action for discrimination,

retaliation, hostile work environment, violation of the Equal Pay Act, and violation of due process based on interference with the EEO process. Dkt. No. 1. On August 27, 2025, Defendant filed a motion to dismiss based on lack of jurisdiction and failure to state a claim. Dkt. No. 16. On October 3, 2025, Plaintiff filed the First Amended Complaint. Dkt. No. 23. In addition to the claims brought in her original complaint, Plaintiff adds causes of action for violation of the First Amendment and violation of the Privacy Act. Dkt. No. 23 at Counts VI and VII.

On October 7, 2025, Plaintiff filed the instant motion for preliminary injunction. Dkt. No. 24. The motion only addresses Plaintiff's retaliation, First Amendment, due process, and Privacy Act claims. Specifically, Plaintiff seeks immediate injunctive relief including but not limited to (1) enjoining removal proceedings or other adverse employment actions taken in retaliation for Plaintiff's EEO and whistleblowing activity; (2) removing the September 2025 counseling letter from her personnel file; (3) restoring Plaintiff to full duties; (4) ceasing unauthorized dissemination of Plaintiff's EEO status; (5) requiring future investigations be conducted by a neutral investigator; (6) preserving records; and (7) bond waiver. *Id.* at 12-13.

## IV.     LEGAL STANDARD

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997 (per curiam) (citation omitted) (stating that a preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless movant, *by clear showing*, carries the burden of persuasion.") "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in her favor; and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20)). Alternatively, a plaintiff can show that there are "'serious questions going to the merits' and the 'balance of hardships tips sharply towards' [plaintiff], as long as the second and third *Winter* factors are [also] satisfied." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). In general, "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy." *Earth Island Inst. v.*

*Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). Plaintiff's burden is aptly described as a "heavy" one. *Id.* Preliminary injunctions are "never awarded as a right." *Id.* at 24.

The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). A preliminary injunction may not be used to obtain "a preliminary adjudication on the merits," but only to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Accordingly, where, as here, a plaintiff seeks mandatory injunctive relief—seeking to alter the status quo—"courts should be extremely cautious." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored." *Id.* at 1320 (internal quotations and alteration omitted). A mandatory injunction "should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1980). Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases[.]" *Id.* at 1115. A party seeking a mandatory injunction "must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia,* 786 F.3d at 740 (9th Cir. 2015) (emphasis in original).

## V. ARGUMENT

### A. Plaintiff Does Not Show a Likelihood of Success on the Merits.

Plaintiff does not show a likelihood of success on the merits for any of her claims for multiple reasons. First, Plaintiff's retaliation claims are unlikely to succeed because she does not allege facts plausibly establishing a causal nexus to her protected activity, especially where the Complaint fails to identify the decisionmaker for the majority of those events (or that any of the decisionmakers were aware of her protected activity). Second, her claims for violation of due process and confidentiality during the EEO investigation fail because Title VII does not provide a cause of action for complaints against the administrative investigation and claim process. Finally, Plaintiff does not allege facts sufficient to state a claim under the Privacy Act.

///

///

1. **Plaintiff Fails to State a Claim for Retaliation Because She Does Not Identify an Adverse Employment Action or Plead A Causal Connection to Any Protected Activity**

Plaintiff alleges that Defendant is retaliating against her for engaging in protected EEO and whistleblowing activity. However, Plaintiff's claims of retaliation fail because she has not alleged that any adverse actions were causally linked to her protected activity. To establish a prima facie case of retaliation, a plaintiff must prove that (1) she engaged in protected activity; (2) her employer subsequently took an adverse employment action against her; and (3) the events are causally linked. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003); *Pardi v. Kaiser Found. Hosp., Inc.*, 389 F.3d 840, 849 (9th Cir. 2004).

Plaintiff alleges that Defendant has retaliated in the form of failing to select her for seven different positions to which she has applied, recension of her name on an awards list, being publicly stigmatized as "unethical" following her alleged whistleblowing activity, disclosure of EEO information, and the September counseling letter. Dkt. No. 24 at 7. As an initial matter, Plaintiff has not identified how the e-mail allegedly labeling her as "unethical" or the disclosure of EEO information are adverse actions. "An adverse employment action is 'any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007) (quoting *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000)); *Jaroslawsky v. City & County of San Francisco*, No. 12-cv-04949-JSW, 2013 WL 1287431, at *2 (N.D. Cal. Mar. 28, 2013).Such adverse employment actions include, for example, "transfers of job duties, negative performance reviews, actions that affect an employee's compensation, and warning letters." *Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1103 (D. Haw. 2015), *aff'd sub nom. Yonemoto v. Shulkin*, 725 F. App'x 482 (9th Cir. 2018) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). But actions that do not affect an employee's compensation, such as "declining to hold a job open for an employee and badmouthing an employee outside the job reference context do not constitute adverse employment actions." *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000). Plaintiff's allegation that she was labeled "unethical" in an e-mail to one other person does not rise to the level of a cognizable retaliatory adverse employment action. Indeed, mere ostracism is not enough to constitute an adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1241

(9th Cir. 2000); *see also Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work, and that all employees experience," which include "personality conflicts," "snubbing by supervisors and co-workers," and "simple lack of good manners."). Similarly, Plaintiff's conclusory assertions about the purported dissemination of EEOC documents do not establish a plausible adverse employment action. Plaintiff does not state to whom the information was allegedly disseminated, the contents of the information, any consequences flowing therefrom, or any facts plausibly establishing that the dissemination of that information was wrongful in any way.

With regard to the other alleged actions, Plaintiff does not allege facts giving rise to an inference of causation (*i.e.*, that "but for" her EEO activity, she would not have been subject to the alleged treatment). *See Univ. of Texas Southwestern Med. Ctr. v. Nasser*, 133 S. Ct. 2517 (2013); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (plaintiff alleging retaliation must show "that engaging in the protected activity was one of the reasons for his firing and that but for such activity he would not have been fired"). To meet her burden of pleading facts sufficient to establish a retaliatory causal nexus, Plaintiff must allege facts plausibly establishing that the decisionmakers were aware that she had engaged in protected activity. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("[e]ssential to the causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); *Perez v. McDonough*, No. 23-cv-06713-JST, 2024 WL 4844383, *7 (N.D. Cal. Nov. 20, 2024); *Washington v. Certainteed Gypsum, Inc.*, No. 10-cv-00204-GMN-LRL, 2011 WL 3705000, at *9 (D. Nev. Aug. 24, 2011); *Foroughi v. Wal-Mart Stores, Inc.*, No. 10-cv-506-PHX-GMS, 2010 WL 2231931, at *3 (D. Ariz. June 2, 2010).

Here, with the exception of one position, Plaintiff does not allege who the decisionmakers were for any of the non-selections she alleges were retaliatory. And with respect to that one position, that non-selection occurred prior to her filing her formal EEO complaint and there is no allegation that the decisionmaker was aware of any of her prior activity when they made the decision not to select Plaintiff. Nor is there any allegation of who allegedly rescinded her award. Finally, there is no allegation that the individual who sent Plaintiff the counseling letter was aware of her protected activity. This missing

information renders the causation allegation deficient. *Heyer*, 521 F. App'x at 601 (affirming dismissal of a complaint that "fail[ed] to allege sufficiently the causal link between protected activity and adverse employment action").

Plaintiff's assertion that temporal proximity between a protected activity and the alleged retaliatory action alone is sufficient to satisfy her prima facie burden relies on inapplicable and outdated case law, and Plaintiff has not pointed to any other evidence sufficient to support her burden.  Following the Supreme Court's decision in *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013), multiple courts in the Ninth Circuit have found that temporal proximity alone is not sufficient to establish a prima facie retaliation claim. *See, e.g.*, *Shaninga v. St. Luke's Med. Ctr. LP*, No. 14-cv-02475-PHX, 2016 WL 1408289, at *11 (D. Ariz. Apr. 11, 2016) ("Post-*Nassar*, however, while knowledge and proximity in time certainly remain relevant when inferring but-for causation, they cannot form the sole basis on which an employee may satisfy his or her prima facie burden."); *Green v. City of Phoenix*, No. 15-cv-02570-PHX, 2019 WL 4016484, at *12, 31 n.26 (D. Ariz. Aug. 26, 2019), *aff'd*, 823 F. App'x 549 (9th Cir. 2020) ("Plaintiff's timing argument also fails to appreciate the but-for causation standard created in *Nassar*"); *Strickland v. State of Wash. Seattle Cent. Coll.*, No. 18-cv-1073-JLR, 2019 WL 7370338, at *10 n.12 (W.D. Wash. Dec. 31, 2019) ("it takes more than allegations of temporal proximity to demonstrate butfor [sic] causation in a Title VII retaliation claim post-*Nassar*.").  Here, temporal proximity is the only basis proffered for Plaintiff's prima facie element of causation in her retaliation claim; that is not sufficient post-*Nassar*. A such, Plaintiff is unlikely to succeed on the merits of any retaliation claim.

### 2. Plaintiff Fails to State a Claim Challenging the EEO Process Because Such Claims Are Not Cognizable

To the extent Plaintiff's allegations relate to the handling of her EEO investigation, such claims fail because Title VII does not provide a cause of action for complaints against the administrative investigation and claim process. *See Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000) (holding that, like a private sector employee, a federal employee may not bring a claim regarding a process complaint against an agency EEO division); *Chandler v. DeJoy*, No. CV-20-00924-PHX-DWL, 2021 WL 673289, at *11 (D. Ariz. Feb. 22, 2021) (same); *Sager v. McHugh*, 942 F. Supp. 2d 1137, 1148

1  (W.D. Wash. 2013) (same); *see also* 29 C.F.R. § 1614.107(a)(8); *cf. Ward v. E.E.O.C.*, 719 F.2d 311,
2  313 (9th Cir. 1983) (holding that a private sector employee does not have a cause of action against the
3  EEOC for alleged mishandling of an EEOC investigation). Instead, any complaints are remedied by
4  being able to challenge the actual alleged discrimination in federal court under de novo review, as
5  Plaintiff is doing in her case before this Court. *See Jordan*, 205 F.3d at 342; *see also Yee v. Garland*,
6  No. CV 21-1185 (ABJ), 2022 WL 2046112 (D.D.C. June 7, 2022). As such, any such claim by Plaintiff
7  would not succeed on the merits.

### 3. Plaintiff Has Not Stated a Claim Under the Privacy Act

Plaintiff's claim under the Privacy Act cannot succeed because she has not plead facts sufficient to state such a cause of action. Plaintiff alleges that Defendant violated the Privacy Act and her right to confidentiality through the December 31, 2024 e-mail containing her EEO information. To state a claim under the Privacy Act, a plaintiff must show that the violation resulted in a "determination… which is adverse to the individual" or "an adverse effect" on the individual. "In order to state a claim under [provisions 552a(g)(1)(C)–(D)] of the Privacy Act, an individual must show '1) that the government failed to fulfill its record keeping obligation, 2) which failure proximately caused the adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages.'" *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 417 (9th Cir. 2009) (quoting *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990)). Plaintiff must thus identify how a particular failure to fulfill a record keeping obligation proximately resulted in some adverse effect. As stated above, Plaintiff has not alleged to whom this e-mail was sent, what it contained, or why it was improper to have sent such information in the first place. Nor does she allege that any specific adverse events resulted in its dissemination. Without such information, Plaintiff fails to provide enough facts to allege the necessary elements of a Privacy Act claim; thus, Plaintiff's claim is unlikely to succeed on the merits.

### B. Plaintiff Has Not Shown Irreparable Harm

Plaintiff also cannot demonstrate irreparable harm. "Irreparable harm" is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages. *Ariz. Dream Act Coal*

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
3:25-CV-03381-AMO                                8

*v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017), *cert. denied*, 138 S. Ct 1279 (2018); *see also Weinberger v. RomeroBarcelo*, 456 U.S. 305, 312 (1982) (the basis for injunctive relief is irreparable injury and the standard is demanding: "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to qualify as irreparable, and "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. at 90. Indeed, where, as here, the federal government is the employer, the standard is even more demanding, requiring an extraordinary showing of irreparable injury. *Id.* at 91-92 n. 68 (stating that circumstances must be "genuinely extraordinary"; that is, they must be a "far depart[ure] from the normal situation" of employment discharge.) "[A]n insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson*, 415 U.S. at 93 n. 68; *see Hartikka v. U.S.*, 754 F. 2d 1516, 1518 (9th Cir. 1985) (internal citation omitted) (finding loss of income and other job benefits to a discharged U.S. Air Force captain insufficient to meet the *Sampson* standard for injunctive relief); *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 595 (1952) ("[a] plaintiff is not entitled to an injunction if money damages would fairly compensate him for any wrong he may have suffered."); *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (holding that plaintiff had adequate remedy at law for claims seeking money damages and back pay for her job loss).

   Here, Plaintiff has requested injunctive relief to prevent further alleged retaliation and alleged misconduct within the EEO process. In her motion, she alleges potential harm to her career and economic harm. Dkt. No. 24 at 10-11. But such harms are not irreparable injuries even under the more lax standard applied in non-federal government personnel actions. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."). This is because there is an adequate remedy at law, such as backpay or frontpay, for any potential loss of job and benefits. *Sampson*, 415 U.S. at 93 n. 68. Therefore, Plaintiff cannot make a showing of irreparable harm, let alone meet the higher standard for irreparable harm in a federal government personnel action. *Id.* at 84, 91-92.

      **C.**      **Plaintiff Has Not Shown That the Equities and Public Interest Favor Her**

"The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 420 (2009). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

Here, where Plaintiff is an employee of a federal agency, the public consequences of injunctive relief are significant. Preliminary injunctive relief for handling of employee counseling and internal investigation would undermine administrative procedures and would disturb the balance achieved between the rights of federal employees and the interests of the government maintaining an efficient civil service. *See Sampson*, 415 U.S. at 949-50 (noting the "historical denial of all equitable relief in court cases [affecting the administrative process]" because of the "well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'") (internal case citations omitted). Accordingly, there is a significant public interest in not granting preliminary injunctive relief here.

## VI.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court deny Plaintiff's motion for preliminary injunction.

DATED:      October 22, 2025

                                      Respectfully submitted,

                                      CRAIG H. MISSAKIAN
                                    United States Attorney

                                    */s/ Molly A. Friend*
                                    MOLLY A. FRIEND
                                    Assistant United States Attorney

                                    *Attorneys for Defendant*