1

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA**

2

3    **Hang Zhang,**                    **Case No.: 25-cv-03381-AMO**

        *Plaintiff,*                      **PLAINTIFF'S REPLY TO**

4                                        **DEFENDANT'S OPPOSITION**

5        VERSUS                          **TO PRELIMINARY INJUNCTION**

6

7    **DANIEL DRISCOLL,**

    **Secretary, Department of the Army,**    Hon. Araceli Martínez-Oguín

8        *Agency.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

## TABLE OF CONTENTS

CONTEXT FOR RELIEF ........................................................................1

I. SUMMARY OF URGENCY AND RELIEF SOUGHT .............................2

II. LEGAL STANDARDS ....................................................................3

A. Defendant's Opposition Is Silent on Constitutional Violations .................3

B. Constitutional Violations Establish Irreparable Harm Per Se ................... 3

C. Title VII Standards ..................................................................... 4

D. Defendant Recycles MTD Arguments, Ignores Constitutional Claims,
   and Overapplies Governing Standards ...........................................4

III. LIKELIHOOD OF SUCCESS ON THE MERITS ..................................6

A. First Amendment Retaliation Established .................................... 6

B. Title VII Retaliation Established ............................................. 11

C. Fifth Amendment Due Process Violations ...................................13

D. Disparate Treatment (Count II) .............................................. 14

E. Hostile Work Environment Is Undisputed ...................................16

F. Privacy Act Claim Satisfies Rouse Elements ...............................18

G. Plaintiff Establishes Likelihood of Success on All Grounds ................... 19

IV. IRREPARABLE HARM ...............................................................19

A. Constitutional Violations Establish Per Se Irreparable Harm .................. 19

B. Third-Party Harm to Students Distinguishes Sampson ............................ 20

C. Ongoing Retaliation Creates Forward-Looking Harm ............................. 21

D. Reputational Harm and Liberty Interest Damage .................................... 22

V. BALANCE OF EQUITIES ............................................................ 23

A. Plaintiff Faces Concrete, Immediate, and Irreversible Harm ....................23

B. Defendant Suffers No Cognizable Harm From Complying With Law ..... 24

C. Defendant's Efficiency Claim Is Self-Refuting ...........................24

D. Unclean Hands—Defendant Forfeits Equitable Deference .......................25

E. Weighing the Equities ................................................................. 25

VI. PUBLIC INTEREST ................................................................. 26

A. Protecting Constitutional Rights and EEO System Integrity .................... 26

B. National Security and Military Readiness ................................................27

C. Institutional Compliance and Public Confidence .......................................27

D. Government Attorney Accountability Requires Intervention ...................27

VII. CONCLUSION ................................................................. 28

**TABLE OF AUTHORITIES**

UNITED STATES SUPREME COURT CASES

Board of Regents v. Roth, 408 U.S. 564 (1972) ......................................................... 13, 14

Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) ................... 11, 26

Chandler v. Roudebush, 425 U.S. 840 (1976) ............................................................. 5, 14

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) ...................................... 3, 14

Elrod v. Burns, 427 U.S. 347 (1976) ....................................................................... 3, 7, 19

Garcetti v. Ceballos, 547 U.S. 410 (2006) .........................................................................7

Lane v. Franks, 573 U.S. 228 (2014) ..................................................................................7

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ...............................................14

Mathews v. Eldridge, 424 U.S. 319 (1976) ......................................................................14

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) .........................8

Pickering v. Board of Education, 391 U.S. 563 (1968) .............................................. 7, 23

Sampson v. Murray, 415 U.S. 61 (1974) .....................................................3, 20, 21, 22, 23

Staub v. Proctor Hospital, 562 U.S. 411 (2011) ...................................................... 4, 11

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) 3, 5, 21, 23, 24, 28

UNITED STATES COURTS OF APPEALS CASES

Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011) ................. 5, 23

Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir. 2000) .................................. …16, 22

Chuang v. Univ. of Cal. Davis, 225 F.3d 1115 (9th Cir. 2000) .................................. 9, 11

Cuviello v. City of Vallejo, 944 F.3d 816 (9th Cir. 2019) ................................................ 3

Dahl v. HEM Pharmaceuticals, Inc., 7 F.3d 1399 (9th Cir. 1993) ............................ 3, 21

EEOC v. Pacific Press Publishing Ass'n, 676 F.2d 1272 (9th Cir. 1982) ........................ 7

Eng v. Cooley, 552 F.3d 1062 (9th Cir. 2009) .................................................................. 7

Garcia v. Google, 786 F.3d 733 (9th Cir. 2015) .............................................................. 5

Givens v. Bisher, 967 F.3d 813 (9th Cir. 2020) ................................................. 3, 6, 7, 19

Heinemann v. Whitehouse, 905 F.3d 1013 (5th Cir. 2018) ...............................................3

In re Lindsey, 158 F.3d 1263 (D.C. Cir. 1998) ............................................................ 27

iv

Jensen v. Brown, 93 F.4th 15 (9th Cir. 2024) .......................................................... 3, 5, 21

Lui v. DeJoy, 973 F.3d 980 (9th Cir. 2020) ........................................................... 3, 14, 16

Lyons v. England, 307 F.3d 1092 (9th Cir. 2002) ..................................................... 10, 11

Melendres v. Arpaio, 695 F.3d 990 (9th Cir. 2012) ............................................... 5, 25, 26

Passantino v. Johnson & Johnson, 212 F.3d 493 (9th Cir. 2000) ................................... 11

Poland v. Chertoff, 494 F.3d 1174 (9th Cir. 2007) ...................................................... 4, 11

Quinn v. Stone, 978 F.2d 126 (3d Cir. 1992) .................................................................. 18

Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) ................................................. 8, 11, 18

Robinson v. York, 566 F.3d 817 (9th Cir. 2009) ......................................................... 8, 23

Rouse v. U.S. Dep't of State, 567 F.3d 408 (9th Cir. 2009) ........................................... 18

Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415 (9th Cir. 1984) .............. 5

Stanley v. Univ. of S. Cal., 13 F.3d 1313 (9th Cir. 1994) ............................................... 5

Stormans, Inc. v. Selecky, 586 F.3d 1109 (9th Cir. 2009) .......................................3, 21

Thakur v. Trump, 120 F.4th 1184 (9th Cir. 2025) .....................................................11, 19

Villiarimo v. Aloha Island Air, 281 F.3d 1054 (9th Cir. 2002) .................................8, 11

Yartzoff v. Thomas, 809 F.2d 1371 (9th Cir. 1987) ...................................................... 10


UNITED STATES DISTRICT COURT CASES

AFGE v. Trump, No. 25-cv-03698-SI (N.D. Cal. May 22, 2025) ...................................24


STATUTES AND REGULATIONS

5 U.S.C. § 552a(b) (Privacy Act) ...............................................................................18

29 C.F.R. § 1614.109(e) (EEO confidentiality regulation) ...........................18, 22, 27, 28

42 U.S.C. §§ 2000e-5(g), (k) (Title VII remedies) .........................................................11


OTHER AUTHORITIES

McDill, "Survival Analysis of Army Enlisted Defense Language Institute Graduate
Attrition Factors," Naval Postgraduate School (2023) ................................................ 27

v

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION**

**TO PRELIMINARY INJUNCTION**

**CONTEXT FOR RELIEF**

In May 2023, Dr. Zhang faced an impossible decision: remain silent while female, minority teachers were discriminated against, or speak up risking her 21-year unblemished federal career. She chose to speak up.

Dr. Zhang reported discrimination at the Defense Language Institute. The retaliation was swift: doubled workload, denied positions, marginalization, and "unethical" label.

As retaliation intensified, Dr. Zhang uncovered a deeper problem: systemic fraud that deprived students of individualized instruction mandated by Command policy and Army regulation. She watched capable service members lose their chance to graduate because recycled advising reports replaced real academic support—wasting taxpayer funds and undermining the military's readiness mission.

She filed an Inspector General report. The retaliation escalated.

Since May 2023, Dr. Zhang has been denied seven positions, had her public award rescinded, had her student contact curtailed by leadership, had her confidential EEO status weaponized against her, and received retaliatory counseling threatening removal. The fraud continues while Dr. Zhang is now being disciplined for the very type of fraud she exposed. And every DLI employee has learned the lesson: those who speak up will be destroyed.

This Court can stop this now—before more students lose their careers, before more taxpayer money is wasted, and before retaliation erodes academic integrity.

**I. SUMMARY OF URGENCY AND RELIEF SOUGHT**

Plaintiff, Dr. Hang Zhang, seeks preliminary injunction to preserve the status quo pending final adjudication: Plaintiff's ability to perform duties without retaliatory burdens, punitive assignments stigmatization and without sham investigations.

Dr. Zhang has served the Defense Language Institute for 23 years, including seven years as a Student Learning Specialist providing critical academic intervention to at-risk military students.

Her proven expertise has enabled numerous struggling students to graduate successfully, some even with honors.

The urgency is acute. Leadership has already restricted Dr. Zhang's student contact during their critical one- to two-month recovery window. Without her support, at-risk students face failure or attrition, wasting substantial taxpayer investment and undermining DLI's core mission, following disciplinary counseling threatening removal.

The pretext is apparent. In the official EEO report (April 1, 2025), Associate Provost Dr. Gajdos confirmed there were no performance concerns regarding Dr. Zhang's work (PI Exhibit B). Yet on September 9, 2025—18 days after whistleblowing escalation and five months after filing this lawsuit—Defendant issued Dr. Zhang's first disciplinary action in 23 years and initiated a *sham investigation* of performance issue never raised before.

This Reply demonstrates: (1) likelihood of success on constitutional and statutory claims under binding recent precedent; (2) irreparable harm to Dr. Zhang, students, and institutional integrity; (3) balance of equities and public interest favor protecting whistleblowers; and (4) Defendant's opposition fails to raise any substantial legal or factual challenge.

## II. LEGAL STANDARDS

To obtain a preliminary injunction, a plaintiff must show likelihood of success on the merits, irreparable harm, balance of equities, and public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Plaintiff has demonstrated each element.

Recent Ninth Circuit precedent confirms these principles. *Jensen v. Brown*, 93 F.4th 15, 20–21 (9th Cir. 2024), held that academic employees' speech about institutional policies constitutes protected speech on matters of public concern. The court reaffirmed that Pickering balancing "cannot be performed" where "factual development is necessary" and that "the state interest prong is not part of the prima facie case."

### A. Defendant's Opposition Is Silent on Constitutional Violations

This silence constitutes a concession, and the Court must credit Plaintiff's allegations and evidence. Defendant's opposition is silent on the First Amendment and Fifth Amendment claims. No response to *Jensen*, *Givens*, or *Loudermill*. No explanation for the December 31 and August

20 emails. Courts credit unopposed constitutional arguments. *Heinemann v. Whitehouse*, 905 F.3d 1013, 1018 (5th Cir. 2018).

**B. Constitutional Violations Establish Irreparable Harm Per Se**

Where likelihood of success on a constitutional claim is shown, irreparable harm follows automatically. "The loss of First Amendment freedoms... unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Ninth Circuit consistently reaffirms this standard: "Constitutional infringements—including retaliation that chills protected activity—constitute irreparable harm per se." *Cuviello v. City of Vallejo*, 944 F.3d 816, 825 (9th Cir. 2019); *Givens v. Bisher*, 967 F.3d 813, 824 (9th Cir. 2020) (constitutional claims "almost always demonstrate" irreparable harm alongside likelihood of success).

This principle applies to both First Amendment retaliation and Fifth Amendment due process violations. *Sampson v. Murray*, 415 U.S. 61, 83 (1974), which imposes heightened requirements for employment disputes, does not apply to constitutional claims.

**C. Title VII Standards**

The same conduct can violate multiple legal protections. *Lui v. DeJoy*, 973 F.3d 980, 989 (9th Cir. 2020), holds that discrete adverse actions can simultaneously support both disparate treatment and hostile environment claims, requiring aggregation to assess cumulative effect.

While *Sampson* applies heightened irreparable harm standards to Title VII employment claims, exceptions exist for specialized skills (*Dahl v. HEM Pharmaceuticals, Inc.*, 7 F.3d 1399, 1403 (9th Cir. 1993)) and third-party harm (*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)).

Under *Lui*, a timely act within the filing period anchors earlier related conduct. The January 2025 award rescission (FAC ¶56) permits Dr. Zhang to reach back to earlier incidents.

Under the subordinate bias doctrine, an employer is liable when a decision is made "in reliance on factors affected by [subordinates'] discriminatory animus," even if the final decisionmaker is not personally biased. *Poland v. Chertoff*, 494 F.3d 1174, 1182–83 (9th Cir. 2007); *Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011).

Pretext is established when an employer's stated reasons are internally inconsistent, contradicted by documentary evidence, or selectively applied. These two analyses—subordinate bias and pretext—mutually support the finding that adverse actions were motivated by discriminatory or retaliatory animus rather than legitimate reasons.

This doctrine defeats Defendant's argument that liability requires proof each individual decisionmaker had actual knowledge of Plaintiff's protected activity: it is sufficient that the decision was influenced—directly or indirectly—by the animus or retaliatory motive of a subordinate who knew of the activity. *Staub*, 562 U.S. at 422; *Poland*, 494 F.3d at 1182–83. Plaintiff has identified the responsible decision-makers and presented record evidence of bias. Any further documentation—such as internal communications reflecting deliberations or instructions—remains in Defendant's exclusive control and will be obtained through discovery. Defendant cannot rely on the absence of documents it alone possesses to defeat a well-pled showing of pretext.

**D. Defendant Recycles MTD Arguments, Ignores Constitutional Claims, and Overapplies Governing Standards**

Defendant recycles MTD arguments, applying pleading standards to documentary evidence. Confronted with emails proving institutional retaliation (Ex. A to PI Mot., Dkt. 24) and sworn testimony (Ex. B), Defendant offers no factual rebuttal—only the same legal arguments about whether allegations are "plausible." This silence is concession.

To raise the bar higher, Defendant mischaracterizes the relief sought as "mandatory," citing *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015), and *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994), for heightened standards. But Plaintiff seeks to preserve the status quo—the right to apply for positions and advise students without retaliation. This is classic preliminary relief under *Winter*, 555 U.S. at 20, not a mandatory injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Defendant's "internal affairs" argument fails. *Jensen* confirmed that prospective relief for ongoing constitutional violations is not barred by sovereign immunity: "Constitutional violations are never 'internal matters.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

Moreover, *Chandler v. Roudebush*, 425 U.S. 840, 848 (1976), held that federal employees enjoy the same substantive rights and procedural protections under Title VII as private-sector employees. The 1972 amendments eliminated any basis for special deference in federal employment cases.

Defendant applies Rule 12(b)(6) pleading standards to evidence-supported PI motions. At the PI stage, courts evaluate evidence, not plausibility. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Plaintiff presents evidence (Ex. A), testimony (Ex. B), and disciplinary letter (Ex. C). Defendant offers no contrary evidence.

### III. LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff establishes likelihood of success on multiple independent grounds: First Amendment retaliation, Fifth Amendment due process, Title VII retaliation, disparate treatment, and hostile work environment. Each claim is supported by documentary evidence Defendant does not contest. The constitutional claims independently warrant preliminary relief under *Givens v. Bisher*, 967 F.3d 813, 824 (9th Cir. 2020), which establishes that violations of constitutional rights constitute irreparable harm per se.

Likelihood of success is established through:

- Prima facie elements satisfied for all retaliation counts through protected activities (EEO complaints, EEOC, union representation requests, IG reports, whistleblowing, federal lawsuit), multiple adverse employment actions (seven non-selections, exclusion, disciplinary threat, award rescission, etc.), and strong causal connection via immediate temporal proximity spanning 28 months.

- Documentary evidence demonstrates discriminatory intent through the December 31, 2024 email (institutional awareness and targeting), August 20, 2025 email (post-lawsuit escalation), TDA manipulation, file-naming disparity, and systematic non-selections.

- Pattern demonstrates escalating institutional retaliation where each protected activity triggered progressively severe adverse actions, establishing systematic animus rather than isolated incidents, as well as pattern of fabricated justifications and pretext.

5

- Constitutional claims establish independent harm requiring no showing of ultimate employment injury—retaliation for protected speech and denial of procedural protections constitute irreparable injury per se under Ninth Circuit precedent.

Defendant's opposition does not contest the documented timeline, offers no declarations from decision-makers, provides no contemporaneous performance evaluations, and presents no explanation for why Plaintiff's first disciplinary action in 23 years occurred 18 days after whistleblowing.

**A. First Amendment Retaliation Established**

Public employees retain First Amendment protection when speaking on matters of public concern. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Elements: (1) protected speech; (2) adverse action; (3) speech was substantial or motivating factor. *Lane v. Franks*, 573 U.S. 228, 238 (2014).

**1. Protected Speech on Public Concern**

Plaintiff's June 13, 2023 EEO complaint constitutes protected First Amendment activity. *Givens*, 967 F.3d at 813; *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272, 1281 (9th Cir. 1982). Reporting violations of Title VII, Equal Pay Act, and hostile work environment directly implicates governmental compliance with federal civil rights mandates—quintessential matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006).

Plaintiff's August 20, 2025 disclosure to Chief of Staff reporting waste, fraud, and abuse constitutes additional protected whistleblower speech on matters of public concern.

**2. Pickering Balance Favors Plaintiff—Defendant Bears Burden of Proving Disruption**

The *Pickering* balance weighs employee's First Amendment interest against government's interest in efficient operations. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). Once Plaintiff establishes speech on public concern, burden shifts to Defendant to prove actual disruption. *Id.*

All factors favor Plaintiff:

- **Systemic violations, not personal grievance**: Plaintiff reported discrimination affecting institutional compliance with federal civil rights laws—enhancing, not impairing, DLI's mission.

- **No operational disruption**: EEO complaints facilitate governmental compliance with constitutional obligations. Defendant offers no evidence of actual disruption to operations.

- **No confidentiality concerns**: EEO complaints are statutorily protected communications. Defendant cannot claim confidentiality breach for protected activity.

- **No supervisory authority**: Plaintiff held no management position. Her speech posed no chain-of-command risk.

- **No relationship impairment**: 23-year exemplary career proves speech did not impair professional relationships prior to retaliation.

Defendant has not met—and cannot meet—its burden of proving operational disruption. Speculation without supporting evidence fails under *Pickering*. The balance decisively favors constitutional protection.

**3. Substantial Motivating Factor Causation Established**

First Amendment requires only "substantial or motivating factor"—lower burden than Title VII's but-for standard. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

**Two emails provide direct evidence of institutional coordination to retaliate:**

**December 31, 2024 email**: Agency counsel systematically circulated Plaintiff's EEO status to senior leaders including Associate Provost, Chief of Staff, and hiring decisionmakers. See Zhang Decl. ¶ 3, Ex. A to PI Mot., Dkt. 24. Associate Provost confirmed under oath: "I became aware of Dr. Zhang's EEO activity only through agency counsel's disclosure to leadership" and discussed Dr. Zhang's situation with senior leaders (Ex. B, Q4, Q10).

**August 20, 2025 email**: Agency Chief of Staff Mark McLeod, with knowledge of Plaintiff's EEO status, disclosed Plaintiff's whistleblower activity reporting fraud, waste, and abuse to senior leadership four months after federal lawsuit filing. (Decl. ¶ 8, Ex. A)

These emails demonstrate escalating, coordinated institutional retaliation for invoking federal jurisdiction and exposing agency misconduct.

**Timeline proves substantial motivating factor:**

| Date | Event | Temporal Proximity |
|------|-------|--------------------|
| June 13, 2023 | EEO complaint (protected speech) | — |
| June-Dec 2023 | Seven non-selections begin | Days/weeks after filing |
| Dec 31, 2024 | Counsel circulates EEO status | **7 days** after Plaintiff filed motion for Adverse Inference against Defendant Discovery delay at EEOC |
| Jan 30, 2025 | Award rescinded | **30 days** after circulation |
| Apr 17, 2025 | Federal lawsuit filed | — |
| Aug 20, 2025 | Whistleblower disclosure to counsel | — |
| Sep 9, 2025 | First counseling letter in 23 years threatening removal | **18 days** after whistleblowing |

The 18-day gap between whistleblower disclosure and removal threat is extreme temporal proximity establishing causation. *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000); *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002). Plaintiff had no prior discipline in 23-year career. Eighteen days after reporting fraud to agency counsel, she receives first counseling letter threatening termination. No alternative explanation exists.

Pattern over 28 months—two institutional circulation events followed by escalating adverse actions—proves speech was substantial motivating factor.

**4. Content-Based Retaliation Demonstrated**

Defendant retaliated specifically for the content of Plaintiff's protected speech. Dean's characterization of Plaintiff as "unethical" following EEO complaint reveals content-based retaliation for disfavored speech. *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009). Plaintiff was punished for alleging discrimination implicating senior leadership and reporting fraud/waste/abuse—precisely the speech First Amendment protects.

**5. Pretext Established Through Contradictory Explanations**

Defendant's shifting explanations prove adverse actions were motivated by protected speech, not legitimate concerns.

**December 31 email pretext:**

- **Defendant's explanation**: Agency counsel claimed she disclosed Plaintiff's EEO status to senior leaders because they would be witnesses in EEOC proceedings.

- **Contradiction exposed**: This directly contradicts counsel's four-month refusal during EEOC proceedings to identify any witnesses to EEOC investigator. When EEOC repeatedly requested witness information in 2024, counsel declined to provide names for 4 months. Yet on December 31, 2024, counsel suddenly circulated Plaintiff's EEO status to senior leaders claiming witness necessity.

- **Pretext revealed**: If senior leaders were genuinely needed as witnesses, counsel would have identified them to EEOC during investigation. Her refusal followed by mass circulation proves pretextual motive. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000) (shifting explanations establish pretext).

**September counseling letter pretext:**

- **April 1, 2025 testimony**: Associate Provost testified under oath: "no concerns about Dr. Zhang's work." (Ex. B, Q8.)

- **Five months later**: First counseling letter in 23-year career threatening "removal from Federal service" for alleged "inefficiency." (Ex. C.)

- **No progressive discipline**: Defendant violated its own progressive discipline policy by issuing removal threat without prior warnings, counseling sessions, or performance improvement plans.

- **Temporal impossibility**: Work performance cannot deteriorate from "no concerns" to removal-worthy "inefficiency" in five months absent pretextual motive. *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002).

- **Whistleblower connection**: The letter came 18 days after Plaintiff reported fraud, waste, and abuse to agency counsel—the exact conduct letter characterizes as "undermining leadership." This is facial admission of retaliation for protected whistleblowing.

These contradictions—combined with extreme temporal proximity—prove adverse actions were motivated by protected speech, not legitimate operational concerns. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

**6. Adverse Actions Satisfy Constitutional Standard**

First Amendment retaliation encompasses actions that would deter reasonable person from exercising constitutional rights.

**Multiple adverse actions:**

- September 2025 counseling letter threatening removal (first discipline in 23 years)
- Seven consecutive non-selections (June-December 2023)
- Award rescission causing financial harm (January 2025)
- Public stigmatization as "unethical" (July 2025)

Each action independently deters protected speech. Collectively, they demonstrate systematic campaign to punish constitutional activity.

**7. Constitutional Violation Creates Per Se Irreparable Harm**

First Amendment violations constitute irreparable harm *per se*, supporting preliminary injunction. *Elrod*, 427 U.S. at 373; *Givens*, 967 F.3d at 824. Once Plaintiff establishes likelihood of success on First Amendment claim, irreparable harm follows automatically.

**B. Title VII Retaliation Established**

To establish Title VII retaliation, Plaintiff must prove: (1) protected activity; (2) adverse employment action; and (3) causal connection. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006).

**1. Institutional Knowledge via December 31 Email**

Defendant incorrectly argues Plaintiff must prove each individual decisionmaker knew of protected activity. Ninth Circuit allows inference from institutional awareness. *Poland*, 494 F.3d at 1183; *Passantino v. Johnson & Johnson*, 212 F.3d 493, 507 (9th Cir. 2000).

The December 31, 2024 email provides direct evidence. Agency counsel systematically circulated Plaintiff's EEO status to senior leaders including hiring decisionmakers. (Ex. A.)

Associate Provost confirmed institutional coordination under oath. (Ex. B, Q4, Q10.) This creates cat's paw liability where biased actors influence decisions. *Staub*, 562 U.S. at 422.

**2. Temporal Proximity Plus Direct Evidence Satisfies But-For Causation**

Temporal proximity plus other evidence—such as December 31 email—establishes but-for causation. *Thakur v. Trump, 120 F.4th 1184, 1198 (9th Cir. 2025); Villiarimo*, 281 F.3d at 1065.

**Multiple temporal proximities**: June 14–16, 2023 non-selections (1–3 days after EEO filing); January award rescission (30 days after December 31 email); September 9, 2025 counseling letter (18 days after whistleblowing). *Ray*, 217 F.3d at 1244. Pattern over 28 months—seven non-selections plus award rescission plus counseling letter—independently supports causation. *Poland*, 494 F.3d at 1183.

**3. Adverse Actions and Pretext**

September counseling letter threatening removal, seven non-selections, award rescission, and public stigmatization satisfy *Burlington Northern*'s standard. 548 U.S. at 68.

**Pretext established**: December 31 contradiction (counsel's shifting explanation); September letter contradiction (April testimony of "no concerns" followed by removal threat five months later without progressive discipline). *Chuang*, 225 F.3d at 1127; *Lyons*, 307 F.3d at 1118. Title VII provides independent statutory basis for relief with full remedies: back pay, compensatory damages, injunctive relief, and attorney's fees. 42 U.S.C. §§ 2000e-5(g), (k).

**C. Fifth Amendment Due Process Violations**

Plaintiff has established likelihood of success on due process claims.

**Property Interest**: Dr. Zhang has a constitutionally protected property interest in continued federal employment and promotional opportunities. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

**Deprivation Without Process**: The September 9, 2025 counseling letter threatens "removal, termination, and demotion" without pre-deprivation hearing. (Ex. C.) *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (public employees entitled to notice and opportunity to respond before termination).

**Liberty Interest**: The Dean's "unethical" characterization and supervisor's "needing mental help" label stigmatize Dr. Zhang, foreclosing future employment opportunities. This reputational harm coupled with tangible employment action (removal threat, position denials) violates liberty interest. *Roth*, 408 U.S. at 573.

**Structural Defects**: Agency counsel—who orchestrated December 31 disclosure—also controls investigative process, creating constitutionally defective procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**Procedural Violations**: The May–June 2023 reassignment lacked fundamental safeguards. Dr. Zhang was reassigned without notice, criteria, or opportunity to be heard—no interview, justification, or comparison of qualifications. The union declined to negotiate on behalf of the cohort. Such arbitrary action constitutes a direct due process violation.

**Illegal Transmission**: On February 7, 2025, agency counsel transmitted privileged materials to Plaintiff without authorization, denying notice, opportunity to respond, or neutral adjudication. This constitutes arbitrary deprivation of liberty and property interests.

**D. Disparate Treatment (Count II)**

**1. Prima Facie Case Established**

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Plaintiff establishes: (1) protected class membership (Chinese American female); (2) qualification for positions; (3) adverse action; and (4) similarly situated non-members received better treatment.

Plaintiff applied for seven positions over 28 months. All denied. (FAC ¶¶29–31, 38, 45, 66, 79). Her qualifications: 23 years' experience, doctorate, unblemished record. The selectees were less experienced, less qualified white males.

*Lui v. DeJoy*, 973 F.3d 980 (9th Cir. 2020) holds positions filled by non-protected class members create "inference of discrimination" without requiring "similarly situated" proof. Seven selections favoring white males over superior-credentialed Chinese American female satisfies *Lui*.

**2. Systematic Disparate Treatment Pattern**

White male colleagues were shielded from: (1) investigation for termination-level misconduct; (2) extra workload imposed on Plaintiff; (3) discipline for violations exceeding Plaintiff's pretextual "file naming error."

**3. Documentary Pretext: TDA Manipulation**

The Associate Provost justified reassignments using TDA (Table of Distribution and Allowance) data. (FAC ¶¶20, 35). Two fatal flaws:

**First**: TDA showed no Spanish designation for Mr. Gelbman—contradicting his stated qualification for Spanish program reassignment. (FAC ¶20). Employer's own documents contradicting stated reason establish pretext.

**Second**: Defendant "omitted and doctored language designations" for Caucasian comparators, contradicting sworn testimony. (FAC ¶63). Document manipulation to justify discriminatory selections equals pretext as matter of law and consciousness of wrongdoing.

**4. Title VII Section 717: No Special Deference**

*Chandler*, 425 U.S. at 848: federal employees receive identical Title VII protections as private sector—no special deference. Once prima facie case with temporal proximity shown, causation infers under *McDonnell Douglas*. Burden shifts to Defendant. They offer no proof actions would have occurred absent discriminatory motive.

Defendant cannot invoke "personnel discretion" to circumvent burden-shifting or shield discriminatory selections from scrutiny under *Chandler*, 425 U.S. at 848.

**E. Hostile Work Environment Is Undisputed**

**1. Lui Aggregation Standard**

*Lui v. DeJoy,* 973 F.3d 980 (9th Cir. 2020), at 18–19: discrete adverse actions simultaneously support disparate treatment and hostile environment claims. Courts aggregate incidents for cumulative effect, not isolated analysis. Elements: (1) subjective perception as hostile; (2) objectively hostile to reasonable person; (3) harassment based on protected characteristic. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). All satisfied.

**2. Systematic Hostile Treatment (28 Months)**

- Seven denials despite superior qualifications—institutional message Chinese American women unwelcome in leadership (FAC ¶¶29–31, 38, 45, 66, 79)
- Public "unethical" characterization by Dean—stigmatizing before leaders and colleagues
- Unauthorized EEO disclosure—exposing Plaintiff to institutional retaliation, creating atmosphere where civil rights exercise triggers ostracism (FAC ¶96)
- Rescinded public award—humiliation signaling disfavored status (FAC ¶56)
- Counseling letter threatening "removal, termination, demotion" without process—intimidation and fear
- Racial/gender stereotyping through mental health stigma

**3. Mental Health Contradiction: Discriminatory Animus**

- April 2025: Dean and supervisor selected Plaintiff to deliver suicide prevention and resiliency training to entire school's chairs and leaders—assignment requiring mental health expertise and sound judgment.
- September 2025: Supervisor characterized Plaintiff "needing mental help" in counseling letter. Dean threatened "policy check-in" in email to plaintiff. (Ex. C)
- Timeline exposes motive: April selection (pre-lawsuit) → April 17 federal filing → September stigmatization (post-lawsuit).

The contradiction is logically impossible absent retaliation and discrimination. Employee competent to train school on mental health cannot simultaneously be mentally unstable—unless characterization is pretextual. This deploys the "crazy Asian woman" stereotype to discredit female Asian employees challenging discrimination—severe harassment based on race and sex creating ongoing stigma money cannot remedy.

**4. Pervasiveness and Severity**

Aggregated incidents span 28 months, escalate from exclusion to stigmatization to termination threats. Pattern is pervasive (constant over two years), severe (threatens career/reputation), and based on protected characteristics (targeting Chinese American female challenging discrimination). Under *Lui* aggregation, objectively hostile environment deters reasonable employees from exercising Title VII rights.

Defendant's opposition ignores hostile environment claim, disputes no incidents, offers no alternative explanation—implicit concession.

**F. Privacy Act Claim Satisfies Rouse Elements**

Defendant claims insufficient pleading. False. FAC alleges all four *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 417 (9th Cir. 2009), elements:

**(1) Recordkeeping Failure**: Agency counsel disclosed Plaintiff's confidential EEO status to senior DLI leaders via December 31, 2024 email (and Chief's August 20, 2025 email), violating 5 U.S.C. § 552a(b) and 29 C.F.R. § 1614.109(e). (FAC ¶96; Ex. A) Privacy Act prohibits disclosure of protected records absent statutory exception. None applies. Agency counsel circulated EEO complaint information—a protected system of records—to non-EEO personnel lacking statutory need to know.

**(2) Proximate Causation**: December 31 disclosure caused award rescission 30 days later (Jan 30) and two non-selections within 90 days (March 2025). (FAC ¶¶56, 66, 79.) August 20 disclosure caused September 9 counseling letter threatening removal—18 days later. (Ex. C.) Textbook proximate causation. *Ray*, 217 F.3d at 1244.

**(3) Intentional Conduct**: Agency counsel—trained attorney whose duty is preventing retaliation—disclosed twice. She claimed "potential witnesses" justification but refused for four months to provide single witness name to EEOC investigator. This contradiction proves willful conduct. *Chuang*, 225 F.3d at 1127.

**(4) Adverse Effect**: Non-selections, award rescission, and removal threat satisfy adverse effect requirement. *Quinn v. Stone*, 978 F.2d 126, 133 (3d Cir. 1992). Defendant does not contest emails exist or their contents. Documentary evidence satisfies standard.

**G. Plaintiff Establishes Likelihood of Success on All Grounds**

Defendant's opposition fails to address Constitutional claims. This silence concedes constitutional violations. Plaintiff has established likelihood of success on five independent grounds as above. Any one suffices for preliminary injunction.

This case far departs from the normal situation for four independent reasons.

**IV. IRREPARABLE HARM**

This case departs from the normal situation for four independent reasons.

**A. Constitutional Violations Establish Per Se Irreparable Harm**

Constitutional violations constitute irreparable harm per se. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373; *Givens*, 967 F.3d at 824; *Thakur v. Trump*, 120 F.4th 1184, 1198 (9th Cir. 2025).

Plaintiff has established likelihood of success on First Amendment retaliation:

- Protected activity: June 13, 2023 EEO complaint; August 20, 2025 whistleblower disclosure

- Adverse actions: Seven non-selections, award rescission, September 9 counseling letter threatening removal

- Causation: December 31, 2024 email (agency counsel circulated EEO status to senior leaders); August 20, 2025 email (Chief of Staff disclosed whistleblower activity to leadership); 18-day gap between whistleblowing and first discipline in 23-year career

Plaintiff has established likelihood of success on Fifth Amendment due process:

- Property interest: Continued employment, promotional opportunities

- Deprivation: Counseling letter threatening removal without pre-deprivation hearing

- Liberty interest: "Unethical" stigmatization coupled with tangible harm (removal threat, denials)

Defendant's opposition is entirely silent on both constitutional claims, contesting neither legal standards nor documentary evidence (the emails, the counseling letter), thus Defendant concedes likelihood of success and irreparable harm from constitutional violations.

**B. Third-Party Harm to Students Distinguishes Sampson**

*Sampson* involved discharged federal employee seeking only personal reinstatement and backpay. 415 U.S. at 92–93. This case is categorically different. *Sampson* does not apply where constitutional violations are proven, or where harm extends to third parties who cannot be made whole through damages to plaintiff.

Plaintiff, as a Student Learning Specialist at DLI, provides specialized academic intervention to all students, especially at-risk students. Her role is critical: students who fail proficiency exams have only 1–2 months to recover before permanent attrition. During this narrow intervention window, Plaintiff's customized techniques—developed over 23 years and tailored to struggling language learners—are not replicable by general faculty. Each failed student represents $323,000 in taxpayer investment wasted, funds that cannot be recovered through damages paid to Plaintiff years later.

With Plaintiff's student contact curtailed through retaliation, students lose access to specialized intervention during critical recovery window. This harm cannot be remedied through monetary damages to Plaintiff:

- Students suffer from anxiety and stress due to lack of individualized support
- Money cannot restore lost career opportunities for students
- Backpay to Plaintiff years from now will not repair cascading effects on military readiness
- Harm is immediate, ongoing, and irreversible with each passing week

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008), recognized irreparable harm analysis must account for broader impacts beyond plaintiff's individual injury. Here, irreparable harm extends to:

- Military students who cannot recover lost educational opportunities
- Government's mission to maintain military readiness through effective language training—DLI trains linguists essential to intelligence, special operations, diplomatic missions
- Taxpayer's $323,000 training investment per student is wasted when students fail due to lack of individualized academic intervention
- Military morale and career advancement for service members who fail courses and face permanent separation or career downgrade

Ninth Circuit has recognized loss of specialized professional services constitutes irreparable harm when third parties depend on them. *Dahl*, 7 F.3d at 1404; *Stormans*, 586 F.3d at 1133. At-

17

risk students depend on Plaintiff's specialized intervention during narrow recovery window. By the time this litigation concludes, many students will have failed out who otherwise might have succeeded or graduated with higher scores through Dr. Zhang's support. The opportunity for intervention will be forever lost. No amount of damages can restore military readiness, student careers, or taxpayer investment.

This is precisely the type of third-party harm that distinguishes this case from *Sampson*'s purely personal economic injury.

**C. Ongoing Retaliation Creates Forward-Looking Harm**

*Sampson* involved completed discharge. This case involves ongoing, escalating retaliation creating forward-looking harm requiring immediate relief.

The September 9, 2025 counseling letter explicitly threatens "removal, termination, and demotion." This is imminent threat hanging over Plaintiff daily. Without preliminary relief, Defendant could terminate her during litigation, rendering case moot and depriving her of any remedy. Timing and severity of this sham disciplinary action demonstrate retaliatory intent to build termination file.

In *Jensen*, the Court held retaliatory personnel records "pose an obvious threat to career advancement" and cause continuing injury by: (1) negatively impacting future merit pay; (2) preventing employment benefits and other opportunities; (3) causing denial of future employment opportunities and earning capacity; (4) creating ongoing damage to personal and professional reputation. 127 F.4th at 33 & n.14.

Critically, *Jensen* held: "The violation is ongoing insofar as retaliatory records continue to exist in personnel file." *Id.* at 32-33. Each day September 9 counseling letter remains in the personnel file creates new, compounding harm:

- Depresses performance ratings (reducing merit pay and retirement contributions)
- Forecloses future career opportunities (federal employment applications require disclosure of all discipline)
- Provides pretextual basis for escalating retaliation—including threatened removal, termination, or demotion

- Cannot be remedied by damages years from now—money cannot expunge personnel record that has already destroyed career opportunities
- Cannot restore professional relationships damaged by "unethical" label disseminated to senior leaders
- Cannot erase chilling effect on exercise of statutory rights in a hostile work environment

Moreover, retaliation is escalating, not static:

- June 2023: Position denials begin
- December 2024: EEO status circulated to senior leaders
- April 2025: Federal lawsuit filed
- August 2025: Whistleblower disclosure to leadership
- September 2025: First disciplinary threat in 23 years

Each protected activity triggers more severe retaliation, demonstrating a pattern that, without judicial intervention, will escalate to Plaintiff's termination—permanently mooting her claims and deterring federal whistleblowers. Plaintiff was reassigned to biweekly "curriculum alignment" meetings with a colleague she reported for fraud, restricting her from student duties and placing her in a supervisory role. (Ex. C). This reassignment isolates her from students, creates a pretextual paper trail for removal, and harms her career, reputation, and the students who depend on her assistance.

This escalating harm distinguishes this case from *Sampson*'s completed discharge and independently warrants immediate relief.

**D. Reputational Harm and Liberty Interest Damage**

*Sampson* itself recognized exceptions for reputational injuries. 415 U.S. at 92 n.68 (noting special considerations for "liberty interest" cases involving reputational harm). Plaintiff suffers ongoing reputational injury through multiple channels that compound with each retaliatory action.

Defendant's reliance on *Brooks v. San Mateo* fails. *Brooks* held that "badmouthing outside the job reference context" is not an adverse action where it causes no tangible harm. 229 F.3d at 928–29. Here, the "unethical" label was sent to the Associate Provost—a decision-maker who

denied positions and recommended discipline. Furthermore, the Dean cited performance

standards on ethical conduct as a pretext to fabricate failing performance justifications for

removal. This stigmatization was not a private communication but an institutional dissemination

of character attack and performance downgrading to justify future termination.

Agency counsel led the retaliatory campaign among "senior leaders" via December 31, 2024

email (FAC ¶96). Chief of Staff disclosed her whistleblower activity to senior leadership named

in her EEO complaints via August 20, 2025 email. These violations of 29 C.F.R. § 1614.109(e)

marked Plaintiff's protected activity throughout DLI leadership, warning every decision-maker of

her EEO and whistleblower status on counsel's urging.

Mental-health stigmatization worsens the injury. In April 2025, leadership had Plaintiff deliver

suicide-prevention and resiliency training to all chairs and leaders but gave the credit to a white

male colleague who declined the assignment. By September 2025, after the federal lawsuit filing,

her supervisor labeled her as "needing mental help," and the Dean threatened a "policy check-

in." (Ex. C) This reversal suggests pretext and weaponizes mental-health stereotypes to discredit

a female Asian American employee challenging discrimination.

This reputational harm affects not only current employment but ability to compete for any future

positions at DLI or elsewhere in federal service. Stigma follows permanently. Even if Plaintiff

ultimately prevails years from now, damage to professional reputation has already occurred and

cannot be erased by monetary compensation.

**V. BALANCE OF EQUITIES**

Balance of equities requires weighing harm to Plaintiff from denial of relief against harm to

Defendant from granting it. *Winter*, 555 U.S. at 24–26. Where, as here, Plaintiff establishes

likelihood of success on constitutional claims and demonstrates irreparable harm per se, equities

favor preliminary relief unless Defendant shows substantial countervailing harm. *Alliance for

Wild Rockies*, 632 F.3d at 1135. Defendant has failed to show any cognizable harm.

**A. Plaintiff Faces Concrete, Immediate, and Irreversible Harm**

Plaintiff faces multiple categories of ongoing harm established in Section IV above:

1. **Imminent termination threat**: from the September 9, 2025 counseling letter—her first discipline in 23 years, issued just 18 days after whistleblowing;

2. **Time-sensitive student harm**: loss of opportunity for roughly 20–30 at-risk students per cycle to receive individualized support during their short recovery window, permanently impairing student outcomes and military readiness;

3. **Compounding reputational damage**: reputational and professional damage from stigmatizing labels ("unethical," "mentally unstable") and disclosure of EEO status to leadership, which continue to foreclose opportunities and cannot be repaired by damages;

4. **Ongoing constitutional injury**: continuing constitutional injury from daily exposure to retaliation and suppression of protected speech.

These harms are specific, immediate, and irreversible, unlike the temporary economic injuries in *Sampson*. These are not "external factors common to most discharged employees" that *Sampson* deemed insufficient. They demand immediate equitable relief.

**B. Defendant Suffers No Cognizable Harm From Complying With Law**

Defendant's only alleged harm: "interference with internal affairs" and disruption to "administrative procedures." (Opp. at 10.) This fails for the following reasons:

**Defendant offers no evidence.** No declaration from any administrator explaining operational needs. No affidavit documenting how restoring Plaintiff to job duties would disrupt operations. No showing of how expunging retaliatory counseling letter would harm agency. Under *Winter*, 555 U.S. at 20, defendant must present actual evidence of harm. Defendant has presented none.

**No disruption demonstrated.** Defendant has not identified any disruption caused by Plaintiff's First Amendment speech or other protected conduct or predicted any future disruption from Plaintiff's exercise of constitutional rights. *Pickering* balancing test on First Amendment claims requires Defendant to show "actual, material and substantial disruption, or reasonable predictions of disruption." *Robinson*, 566 F.3d at 824. Defendant has made no such showing.

**"Harm" is compliance with law.** The "harm" Defendant alleges is simply being required to follow Title VII, Privacy Act, and constitutional protections. Defendant cites no case holding that agency suffers cognizable harm from complying with federal civil rights law. To the contrary,

requiring agency to cease unlawful conduct serves Government's interest in lawful administration and compliance with its own regulations.

Relief sought requires only ministerial compliance with existing legal obligations: (1) cease retaliatory actions; (2) expunge counseling letter; (3) restore Plaintiff to job duties; (4) maintain confidentiality. These are not extraordinary impositions but baseline requirements of federal employment law. There is no disruption to administrative efficiency in requiring agency to comply with law.

**C. Defendant's Efficiency Claim Is Self-Refuting**

This Court rejected identical argument in *AFGE v. Trump*. There, government claimed preliminary relief would burden operations, but Judge Illston found this "belied by" evidence government was paying employees on administrative leave rather than having them work—"the opposite of efficiency." No. 25-cv-03698-SI, slip op. at 46 (N.D. Cal. May 22, 2025). Here, Defendant pays Plaintiff's full AD-06 salary while prohibiting her from student contact, wasting taxpayer funds and harming military readiness. Requested injunction imposes zero marginal cost while restoring critical services to at-risk students. Preliminary relief costs nothing and restores mission-critical services. Defendant's only burden is ceasing unlawful conduct.

**D. Unclean Hands—Defendant Forfeits Equitable Deference**

Agency counsel violated 29 C.F.R. § 1614.109(e) through December 31 email; transmitted unauthorized materials (February 7); facilitated retaliation counsel was duty-bound to prevent. Courts deny relief to parties who create harm they complain of. Any "administrative burden" flows from Defendant's choice to orchestrate retaliation. Defendant cannot claim hardship from stopping unlawful conduct.

**E. Weighing the Equities**

On one side: Plaintiff faces imminent termination threats, ongoing reputational harm that permanently damages career, lost professional opportunities through seven systematic denials, students denied specialized assistance during one-time narrow intervention window, chilling of constitutional rights through daily fear of retaliation.

These harms are concrete, immediate, time-sensitive, and irreversible. Many cannot be remedied by money. All are occurring now, compounding daily, while this litigation proceeds.

On other side: Defendant claims "disruption to administrative procedures" but offers no evidence. Defendant has not shown any operational impact from ceasing unlawful retaliation, expunging retaliatory letter, or restoring Plaintiff to duties she performed successfully for 23 years.

Where plaintiff demonstrates concrete, irreparable, immediate harm affecting not only herself but third parties, and defendant shows no burden from implementing court order, equities plainly favor party whose constitutional and statutory rights are being violated. *Melendres*, 695 F.3d at 1002 ("It is always in the public interest to prevent the violation of a party's constitutional rights").

Relief sought is narrowly tailored to prevent ongoing violations. It does not impose any extra administrative burden. It merely requires Defendant to comply with legal obligations: cease retaliation, expunge retaliatory records, restore lawful working conditions, and maintain statutory confidentiality.

Balance of equities strongly favors granting preliminary relief.

**VI. PUBLIC INTEREST**

Public interest independently favors preliminary relief beyond equities between parties.

**A. Protecting Constitutional Rights and EEO System Integrity**

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Here, multiple constitutional and statutory violations threaten not only Plaintiff but institutional integrity and public confidence in federal EEO protections.

Every DLI employee has witnessed systematic retaliation: confidential EEO status circulated by agency counsel, seven position denials over 28 months, public stigmatization, counseling letter threatening removal—all following protected activity. Message to federal employees is unmistakable: reporting discrimination or fraud leads to career destruction.

This chilling effect undermines entire EEO system. Congress enacted Title VII's anti-retaliation provision because "fear of retaliation is the leading reason why people stay silent instead of voicing their concerns about discrimination." *Burlington Northern*, 548 U.S. at 67–68. If agencies can retaliate with impunity during years of litigation while courts slowly resolve claims, statutory protections become illusory.

**B. National Security and Military Readiness**

Public has direct interest in effective military training. DLI trains linguists essential to military operations. Each student who fails due to inadequate intervention represents capability gap that affects operational readiness.

Military cannot retroactively restore lost language proficiency to service members who have already been separated from program. This harm to military readiness occurs now and cannot be remedied by damages paid years later.

According to a peer-reviewed study, "Survival Analysis of Army Enlisted Defense Language Institute Graduate Attrition Factors," conducted at the Naval Postgraduate School in 2023, the average cost per student at DLI is $323,000. *See* McDill, "Survival Analysis of Army Enlisted Defense Language Institute Graduate Attrition Factors," Naval Postgraduate School (2023). Resources are wasted when retaliation prevents qualified advisors from intervening with at-risk students. Retaliation compromises DLI's mission and harms not only current students but national security readiness. Plaintiff's expertise in improving language proficiency in critical languages, particularly for at-risk students, saves taxpayers' money.

**C. Institutional Compliance and Public Confidence**

Public interest lies in enforcing constitutional and statutory protections, not in shielding agencies from "burden" of following law. Courts routinely reject "administrative burden" arguments where agencies seek to avoid compliance with civil rights laws.

Requiring Defendant to comply with Title VII, Privacy Act, and constitutional protections serves Government's own interest in lawful administration. Public confidence in federal employment system depends on meaningful enforcement of anti-retaliation protections. If federal agencies

24

can systematically destroy whistleblowers' careers while litigation slowly proceeds, public trust in government integrity erodes.

Public interest strongly favors immediate cessation of retaliation.

**D. Government Attorney Accountability Requires Intervention**

Agency counsel violated her duty to prevent retaliation. Counsel circulated Plaintiff's EEO status (December 31, 2024) in violation of 29 C.F.R. § 1614.109(e). (Ex. A.) She claimed "witness necessity" after refusing for four months to identify witnesses to EEOC—exposing pretextual motive. When government attorneys weaponize confidential information to facilitate retaliation rather than prevent it, the EEO system is compromised. *In re Lindsey*, 158 F.3d 1263, 1277 (D.C. Cir. 1998) (government attorneys held to highest standards). Public interest requires immediate judicial intervention to restore institutional integrity.

**VII. CONCLUSION**

Plaintiff has established all four *Winter* factors. Constitutional violations constitute irreparable harm per se under binding Ninth Circuit precedent. Third-party harm to military students, ongoing threats of termination, and reputational injury independently establish irreparable harm beyond *Sampson* standard. Balance of equities overwhelmingly favors Plaintiff. Public interest strongly favors preventing constitutional violations, protecting military readiness, and deterring systematic retaliation against whistleblowers.

Defendant's opposition is notable for what it omits: no response to First Amendment claims, no response to Fifth Amendment claims, no explanation for December 31, 2024 and August 20, 2025 emails, no justification for issuing first disciplinary action 18 days after protected whistleblowing, and no evidence controverting any material fact.

The Court should grant preliminary injunction ordering:

1. Expunge September 9, 2025 counseling letter;

2. Cease retaliatory conduct including position denials and student contact restrictions;

3. Restore Plaintiff to full Student Learning Specialist duties;

4. Maintain EEO confidentiality per 29 C.F.R. § 1614.109(e);

5. Preserve all records pending final adjudication.

Respectfully submitted,


/s/ *Hang Zhang*

Hang Zhang, Ph.D.
    Professor
Defense Language Institute
Department of the Army


Dated: November 2, 2025