UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANG ZHANG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DANIEL DRISCOLL,<br><br>　　　　Defendant. | Case No. 25-cv-03381-AMO<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION; ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 24 |

Before the Court is Plaintiff Hang Zhang's motion for preliminary injunction. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for November 13, 2025, was VACATED. *See* Civil L.R. 7-6, Fed. R. Civ. Pro. 78(b); *see also* Dkt. No. 30. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **DENIES** the motion for the following reasons.

**I.     BACKGROUND**

　　**A.     Factual Background**

Zhang brings this employment discrimination action in relation to her employment with the Defense Language Institute ("DLI") as a Student Learning Specialist. *See* First Am. Compl. (Dkt. No. 23, "FAC"). Zhang alleges that during a structural reorganization on May 5, 2023, she was assigned to the DLI Chinese school. FAC ¶ 16. Zhang claims that her non-selection for a position and reassignment were the result of discrimination on the basis of race, sex, and national origin, and that her treatment at DLI constituted a hostile work environment. Zhang further alleges that as the result of her Equal Employment Opportunity ("EEO") activity, she faced retaliation at DLI.

### 1. Alleged EEO Misconduct

On May 11, 2023, Zhang formally requested an EEO appointment. FAC ¶ 26. Zhang filed a formal EEO complaint on June 13, 2023, which she alleges she timely amended to include claims of retaliation and procedural misconduct on February 23, 2024. FAC ¶¶ 10-11. Zhang asserts that agency counsel was improperly excluded from the resulting EEO investigation. Dkt. No. 24 at 8. Zhang further asserts that she was deprived of her right to a meaningful pre-deprivation hearing, although Zhang does not identify of what exactly she was deprived. Dkt. No. 24 at 9.

### 2. Adverse Employment Actions

Zhang alleges a handful of adverse employment actions that give rise to her claims:

- Following her reassignment, Zhang alleges that she was denied seven separate positions to which she applied within DLI: (1) Test Specialist on June 4, 2023; (2) "ODA" position at "ETD" on June 14, 2023; (3) Operations Research Analyst on June 16, 2023; (4) Assistant Director of Immersion on May 13, 2024; (5) Academic Specialist at "UML" on December 10, 2024; (6) Assessment Specialist on March 14, 2025; and (7) Institutional Evaluator on an unspecified date. FAC ¶¶ 29-31, 38, 45, 66, 79. With the exception of the Academic Specialist position, the FAC does not identify the decisionmakers for the positions for which Zhang was not selected. *Id.* Zhang alleges that Lt. Col. Jorge and the Associate Provost oversaw the selection process for the Academic Specialist position, but she does not allege that either individual knew of her protected activity at the time of the selection. FAC ¶ 45. Zhang alleges that on December 31, 2024, after the date of the selection for the Academic Specialist position, agency counsel circulated her EEO status to "senior leaders." FAC ¶ 96. Zhang does not provide any detail regarding the substance of the disclosure, who the "senior leaders" are, or any facts that would suggest that dissemination of the materials was improper.

- Zhang alleges that on January 30, 2025, Defendant rescinded a quarterly award after it was publicly listed, but she does not identify the award or identify who made the recission decision. FAC ¶ 56.

1  - In her motion for injunctive relief, Zhang further alleges retaliation through "public stigmatization" because the "Dean publicly labeled her 'unethical' via email to the Associate Provost." Dkt. No. 24 (Motion for Preliminary Injunction) at 4, 7. There is no information regarding the context of the correspondence or whether the Dean's comment was connected with Zhang's EEO status.

- Finally, Zhang alleges that the counseling letter she received on September 9, 2025, constituted retaliation for her protected activity. Dkt. No. 24 at 7. The letter was issued to Zhang by her supervisor, Yai Chen. Dkt. No. 24-1 at 6. Zhang does not allege that Dr. Chen was ever made aware of her protected activity.

### B.  Procedural History

On April 17, 2025, Zhang filed a complaint, alleging causes of action for discrimination, retaliation, hostile work environment, violation of the Equal Pay Act, and violation of due process based on interference with the EEO process. Dkt. No. 1. On August 27, 2025, Defendant filed a motion to dismiss based on lack of jurisdiction and failure to state a claim. Dkt. No. 16. On October 3, 2025, Zhang filed the First Amended Complaint. Dkt. No. 23 ("FAC").[1] In addition to the claims brought in her original complaint, Zhang adds causes of action for violation of the First Amendment and violation of the Privacy Act. Dkt. No. 23 at Counts VI and VII.

## II.  DISCUSSION

On October 7, 2025, Zhang filed the instant motion for preliminary injunction. Dkt. No. 24. The motion for preliminary injunction only advances her retaliation, First Amendment, due process, and Privacy Act claims. *Id.* Specifically, Zhang seeks immediate injunctive relief including but not limited to (1) enjoining removal proceedings or other adverse employment actions taken in retaliation for Plaintiff's EEO and whistleblowing activity; (2) removing the September 2025 counseling letter from her personnel file; (3) restoring Plaintiff to full duties; (4) ceasing unauthorized dissemination of Plaintiff's EEO status; (5) requiring future

---

[1] Given the scheduling confusion that has resulted from the government shut down as well as the filing of the FAC shortly before this motion for preliminary injunction, the Court sua sponte EXTENDS Defendant's deadline to file a response to the FAC to 28 days after the date of this order.

3

1  investigations be conducted by a neutral investigator; (6) preserving records; and (7) bond waiver.
2  *Id.* at 12-13.  Defendant filed an opposition to the motion on October 22, 2025.  Dkt. No. 28.
3  On November 3, 2025, Plaintiff filed a reply brief in support of the motion.  *See* Dkt. No.
4  31.  Though the Court earlier granted Zhang permission to file a brief of no more than 20 pages
5  after she requested leave to file an overlong brief of 25 pages, Zhang nonetheless filed a brief of
6  25 pages.  *See* Dkt. No. 30.  Moreover, Zhang's submission includes citations to cases that appear
7  to be "hallucinated" by generative artificial intelligence ("AI"), as the Court cannot find the
8  authority cited.  Because the reply brief exceeds the page limitations set by Court's order, as well
9  as employs authorities the Court cannot locate, the Court STRIKES the reply brief and declines to
10 consider it in assessing the motion for preliminary injunction.  The Court discusses the potential
11 for sanctions below.

12 **A.     Preliminary Injunction**

13 A "preliminary injunction is an extraordinary and drastic remedy" which should not be
14 granted unless the movant shows "substantial proof" and "*by a clear showing*, carries the burden
15 of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original; quotation
16 marks and citation omitted).  To obtain preliminary injunctive relief, the moving party must show:
17 (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the moving party
18 in the absence of preliminary relief, (3) the balance of equities tips in the favor of the moving
19 party, and (4) an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555
20 U.S. 7, 20 (2008).  Where the government is a party, courts merge the analysis of the final two
21 *Winter* factors, the balance of equities and the public interest.  *Drakes Bay Oyster Co. v. Jewell*,
22 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Courts
23 "explore the relative harms to applicant and respondent, as well as the interests of the public at
24 large."  *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991)
25 (internal quotation marks and citation omitted).  The *Winter* factors may be evaluated on a sliding
26 scale such that preliminary relief may be issued when the moving party demonstrates "that serious
27 questions going to the merits were raised and the balance of hardships tips sharply in the
28 plaintiff's favor."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)

1  (citation omitted). To grant preliminary injunctive relief, a court must find that "a certain
2  threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966
3  (9th Cir. 2011) (per curiam).

### 1. Likelihood of Success

On the record presently before the Court, it is not clear that Plaintiff is entitled to the relief she seeks. Plaintiff has thus not shown a likelihood of success on the merits.

#### a. Retaliation

To establish a prima facie case of retaliation, a plaintiff must prove that (1) she engaged in protected activity; (2) her employer subsequently took an adverse employment action against her; and (3) the events are causally linked. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Not every employment action that can be construed as "adverse" is actionable under either Title VII; rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). "This is an objective test – what matters is whether the challenged action might dissuade a reasonable employee from complaining about discrimination." *Ludovico v. Kaiser Permanente*, 57 F. Supp. 3d 1176, 1197 (N.D. Cal. 2014) (alterations, internal quotation marks, and citation omitted). "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks*, 229 F.3d at 928.

The Supreme Court has made clear that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (requiring a plaintiff to show that "the desire to retaliate was the but-for cause of the challenged employment action."). A causal connection may be inferred either from temporal proximity between the protected activity and the adverse action or

from "evidence of surrounding circumstances that show a retaliatory motive." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003), as amended (Jan. 2, 2004).

Here, Zhang has not set forth facts sufficient to demonstrate a likelihood of success on her claim for retaliation. With regard to all the alleged adverse actions, Zhang fails to establish a causal nexus between the protected activity and the retaliatory conduct. *See Nassar*, 570 U.S. at 362. Zhang relies on the temporal proximity between her protected EEO activity and the alleged adverse actions to establish the causal connection necessary. *See* Dkt. No. 24 at 7 (citing, e.g., *Passantino v. Johnson & Johnson*, 212 F.3d 493, 506 (9th Cir. 2000)). However, Zhang's EEO contact reportedly took place in June 2023, and she does not identify the date of a single incident of adverse employment action taking place until approximately ten months later, until March 4, 2024. *See* Dkt. No. 24 at 3 (describing events of an "ROI interview" not found in Zhang's supporting declaration). These events are not sufficiently close in time to raise the specter of, much less establish, a causal nexus via temporal proximity. Zhang fails to establish a causal connection between her protected activity and the alleged adverse employment actions she suffered, and she accordingly fails to establish a likelihood of success on her claim of retaliation.

### b. First Amendment

Zhang asserts a claim for First Amendment retaliation in response to her protected whistleblower activity. "It has been well accepted for more than fifty years that public employees have First Amendment rights to speak out on matters of public interest and concern, so long as the speech does not interfere with the legitimate and orderly administration of government operations." *Ohlson v. Brady*, 9 F.4th 1156, 1157-58 (9th Cir. 2021) (citing cases). Courts utilize what has become known as the *Pickering* test to balance a public employee's interest in commenting on matters of public concern and the state's interest as an employer in promoting efficient public service. *See id.* at 1162. Courts rely on a "sequential five-step series of questions":

> (1) whether the plaintiff spoke on a matter of public concern;
> (2) whether the plaintiff spoke as a private citizen or public employee;
> (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action;

6

> (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and
> (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568 (1968)).  The burden is on the plaintiff to show the first three steps; it then shifts to the government. *See id.* at 1070-72.

Here, Zhang falls short of the first three elements.  She does not identify in her motion for preliminary injunction what protected free speech activity underlies her claim, nor does she identify what adverse employment action interfered with her free speech.  In her operative complaint, she alleges that she made the following whistleblower reports: "(a) discrimination and institutional misconduct to the Inspector General in May 2023; (b) violations of federal confidentiality protections in February 2024; and (c) government waste and procedural irregularities affecting federal programs." FAC ¶ 133.  And she vaguely alleges, "Following each disclosure, Defendant retaliated through adverse employment actions, culminating in the December 31, 2024 coordination directive characterizing her protected speech as disruptive 'mechanisms' requiring institutional 'mitigation.' " FAC ¶ 137.  Zhang's failure to allege what she said, to whom, and when, compounded with the lack of clarity regarding any adverse employment actions she suffered as a result, leaves the Court unable to assess her claim for retaliation under the First Amendment.  Thus, Zhang fails to establish a likelihood of success on this claim.

### c. Due Process

Zhang asserts a claim for violation the Fifth Amendment's Due Process Clause, challenging the EEO process and contending that Defendant interfered with her procedural rights. The Due Process Clause of the Fifth Amendment protects individuals against deprivations of "life, liberty or property" without due process of law.  U.S. Const., Amend. V; *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1108-09 (9th Cir. 2001) ("The Fifth Amendment . . . protects [plaintiffs] from deprivation of life, liberty, or property without due process of law").  "As the Supreme Court held in *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972), and as this court has repeatedly emphasized, '[a] due process claim is cognizable only if there is a recognized liberty or property

interest at stake[.]' " *Erickson v. U.S. ex rel. Dept. of Health and Human Services*, 67 F.3d 858, 861 (9th Cir. 1995); *see also Johnson v. Rancho Santiago Comm. Coll. Dist.*, 623 F.3d 1011, 1029 (9th Cir. 2010) ("To succeed on a substantive or procedural due process claim, the plaintiffs must first establish that they were deprived of an interest protected by the Due Process Clause.").

Within her motion for preliminary injunction, Zhang focuses on the procedural unfairness associated with the September 2025 "disciplinary action." Dkt. No. 24 at 8 (citing Ex. C, Dkt. No. 24-1 at 6). The exhibit referenced by Zhang is a "letter of counseling" pertaining to Zhang's conduct. Dkt. No. 24-1 at 6. Though Zhang cites a handful of Supreme Court cases regarding the due process owed prior to a federal employee's termination, she cites no authority for the premise that any sort of procedural process is owed prior to a supervisor's issuance of a letter of counseling. *See* Dkt. No. 24 at 8 (citing, e.g., *Roth*, 408 U.S. at 577). Relatedly, though Zhang contends that she was deprived of certain procedural mechanisms, such as discovery, access to certain witnesses, or a pre-deprivation hearing, Zhang provides no authority for the premise that such procedural mechanisms were appropriate in this circumstance – she was issued a disciplinary letter, not terminated. *See* Dkt. No. 24 at 8. Zhang's complaints that she faced procedural unfairness ultimately fall short where she fails to identify a protected interest of which Defendant deprived her. Accordingly, Zhang fails to establish a likelihood of success on her claim of due process violation.

### d. Privacy Act

Zhang asserts that the disclosure of her EEO activity to unnamed persons violated federal confidentiality protections in violation of 29 C.F.R. § 1614.108(b). *See* Dkt. No. 24 at 9; see also Dkt. No. 24-1 (Zhang Decl. ¶ 3). Section 552a(b) of the Privacy Act, prohibits disclosure of personnel files unless certain exceptions apply. 5 U.S.C. § 552a(b). "An agency's improper disclosure gives rise to a cause of action if the Privacy Act violation caused an adverse effect and the violation was willful or intentional." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) (citations omitted). Absent an adverse effect arising from the disclosure, a plaintiff cannot establish a Privacy Act violation even if private information is a potentially improperly disclosed. *Id.* at 1140; *see also Rouse v. U.S. Dep't of State*, 567 F.3d 408, 417 (9th Cir. 2009) (same).

Here, Zhang has not alleged that Defendant improperly disclosed her private information in a way that resulted in an adverse determination. Zhang fails to identify to whom the e-mail was sent or what it contained, but more importantly, she does not even allege that any specific adverse events resulted from its dissemination. Zhang accordingly fails to provide enough facts to allege the necessary elements of a Privacy Act claim, and she fails to establish a likelihood of success on the merits.

### 2. Irreparable Harm

Beyond establishing a likelihood of success of the merits, plaintiffs seeking a preliminary injunction must also show that they are likely to suffer irreparable harm without preliminary relief. *Winter*, 555 U.S. at 20. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citation omitted). A "showing of a mere possibility of irreparable harm is not sufficient under *Winter*." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010). To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough. *See Herb Reed Enters., LLC v. Florida Entertainment Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) (holding that pronouncements "grounded in platitudes rather than evidence" are insufficient). In the employment context, loss of earnings and damage to reputation are insufficient to support a finding of irreparable harm except in extreme cases. *See Sampson v. Murray*, 415 U.S. 61, 91 (1974).

Here, Zhang lists three forms of purportedly irreparable harm: (1) career destruction and economic loss; (2) reputational and physical harms; and (3) constitutional and cumulative harms. *See* Dkt. No. 24 at 9-10. However, Zhang fails to describe any of these potential harms in detail, provide developed factual allegations, or include any supporting evidence of harm beyond a brief, self-serving declaration. *See* Dkt. No. 24-1. None of the several cases Zhang cites in support of a finding of irreparable harm stand for the premise that her claimed harms are irreparable or support preliminary injunctive relief, especially where she fails to establish a nexus between alleged adverse employment actions and her purported harms. *See* Dkt. No. 24 at 9-10 (collecting cases). Further, Zhang fails to explain why any alleged harm cannot be compensated by monetary

damages at the end of this case. *See Brewer*, 855 F.3d at 978. Thus, Zhang fails to establish that she will suffer irreparable harm in the absence of preliminary relief.

Having failed to establish either a likelihood of success or irreparable harm, both foundational considerations necessary to merit a preliminary injunction, the Court need not reach the remaining *Winter* factors, and concludes that no preliminary injunction should issue.

### B.     Order to Show Cause

Federal Rule of Civil Procedure 11(b) provides in part that, in presenting to a court a written and signed pleading, motion, or other paper, the filing party "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Under Rule 11(b), a person who signs a legal document certifies that they have "read the document, [] conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542, (1991); *see also Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) ("At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." (citation omitted)). Rule 11(b) thus imposes on litigants an affirmative duty to investigate the caselaw they cite before submitting a court filing. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987). Significantly, Rule 11 applies to pro se litigants. *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994).

Here, Zhang's reply brief, Docket No. 31, contains several citations to cases that appear to be fictitious, not merely erroneous, suggesting that the cases have been "hallucinated" by AI. For example, Zhang cites a purported Fifth Circuit case for the premise that Courts "credit unopposed constitutional arguments," *id.* at 8, but the case that actually appears at the provided pincite is a Seventh Circuit case that does not stand for the proposition cited. *See United States v. Santiago*,

905 F.3d 1013, 1018 (7th Cir. 2018).[2]  A few lines later on the same page, Zhang cites a purported Ninth Circuit case for the premise that "constitutional claims 'almost always demonstrate' irreparable harm alongside likelihood of success," but the case that instead appears at that pincite is a District of Columbia Circuit case that does not stand for the premise cited.  *See Thompson v. D.C.*, 967 F.3d 804, 813 (D.C. Cir. 2020).

The Court hereby ORDERS Zhang to SHOW CAUSE why sanctions, including case termination, or other appropriate disciplinary action should not issue due to the inclusion of non-existent and erroneous citations in the reply brief at Docket No. 31.  Zhang may file a response of no more than five (5) pages by no later than noon on December 10, 2025.  The Court will set a hearing only if it deems one necessary.

## III.      CONCLUSION

For the foregoing reasons, the Court **DENIES** Zhang's motion for preliminary injunction. The Court **ORDERS** Zhang to **SHOW CAUSE** why sanctions or other appropriate disciplinary action should not issue for the reasons discussed above.

**IT IS SO ORDERED.**

Dated: December 3, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

[2] In an effort to avoid repeating fictitious case cites, the Court does not reproduce the case name cited by Zhang.

11