# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Hang Zhang,** | **Case No.: 25-cv-03381-AMO** |
| *Plaintiff,* | **PLAINTIFF'S OPPOSITION TO** |
| | **DEFENDANT'S MOTION TO DISMISS** |
| VERSUS | **THE FIRST AMENDED COMPLAINT** |
| | **(MTD-II)** |
| **DANIEL DRISCOLL,** | |
| **Secretary, Department of the Army,** | |
| *Agency.* | Hon. Araceli Martínez-Oguín |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (MTD-II)

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND. ..............................................................................2
A. June–July 2025: Protected disclosure and "Fraud Tightening" ...........................3
B. Protected Speech and Institutional Awareness ....................................................3
C. Adverse Actions and Escalation ..........................................................................4
D. Government-Created Procedural Traps ("Double Jeopardy") ..............................4

III. LEGAL STANDARDS .......................................................................................5
A. Rule 12(b)(1): Subject-Matter Jurisdiction .........................................................5
B. Rule 12(b)(6): Failure to State a Claim ...............................................................5

IV. DEFENDANT'S JURISDICTIONAL ATTACK FAILS UNDER RULE 12(b)(1) ...............6
A. The Court Already Exercised Federal-Question Jurisdiction
Over Plaintiff's Constitutional Claims ....................................................................6
B. Defendant's Rule 12(b)(1) Arguments Are Merits Arguments Governed by Rule 12(b)(6) .....6
C. CSRA and Title VII Do Not Strip Jurisdiction Over Structural Constitutional Claims ........ ...7
D. Sovereign Immunity Does Not Bar Jurisdiction Over Prospective and Declaratory Relief .. ...7

V. RULE 12(b)(6) FRAMEWORK: HOW THE FAC MUST BE ANALYZED .......................7

VI. FIRST AMENDMENT RETALIATION — PLAUSIBLY PLED AND
INDEPENDENTLY SURVIVES RULE 12 ...............................................................7
A. Plaintiff Engaged in Protected Speech on Matters of Public Concern .......................7
B. Plaintiff Suffered Adverse Actions That Would Chill Protected Activity ..................7
C. Causation Is Plausibly Alleged Through Chronology, Awareness, and Coordination ...........9
1. Chronology + Awareness: The Retaliation Triangle
2. Direct Discriminatory Retaliatory Remarks Establish Causation

3. Fraud-Tightening Motive Strengthens Causation
4. Decision-Maker Knowledge Is Adequately Alleged
D. Defendant's "No Harm" Argument Fails and Ignores the FAC's Allegations ........................12
E. Discovery Foreclosure Is an Independent Basis to Deny Dismissal .............................13
F. The First Amendment Claim Independently Survives Rule 12 ...............................15

VII. FIFTH AMENDMENT DUE PROCESS — PLAUSIBLY ALLEGED AND
JURISDICTIONALLY SOUND ...............................................................16
A. This Court Has Jurisdiction Over Plaintiff's Fifth Amendment Claims ....................16
B. Plaintiff Plausibly Alleges a Protected Property Interest ...............................16
C. Government-Created Jeopardy and Procedural Traps State a Due Process Claim ................17
D. Stigma-Plus and Reputational Due Process ...............................................17
1. Governing Standard: Stigma-Plus Does Not Require Termination
2. Plaintiff Alleges Official Stigmatization
3. The Alleged Stigma Is Plausibly False or Unadjudicated
4. Plaintiff Alleges Concrete "Plus" Factors
5. Government-Created Jeopardy Reinforces Stigma-Plus
6. Structural Bias and Spoliation Strengthen the Claim
7. Defendant's Attempt to Collapse This Claim Into Title VII Fails
8. Dismissal at Rule 12 Would Improperly Resolve Fact Disputes

VIII. DISCOVERY FORECLOSURE, PROCEDURAL ASYMMETRY,
AND SANCTIONS CONTEXT ................................................................. 19
A. Rule 12 Cannot Be Used to Exploit Government-Created Information Asymmetry .............20
B. Sanctions Cannot Be Used as a Sword to Justify Dismissal Request ......................20
C. Defendant's Arguments Confirm the Need for Discovery ..................................20
D. Discovery Foreclosure Independently Defeats Qualified Immunity at MTD ..................20
E. Sanctions Risk Strengthens—Not Weakens—Plausibility ..................................20
F. Appellate Preservation: Procedural Fairness as a Standalone Error......................21

IX. TITLE VII CLAIMS...................................................................21
A. Disparate Treatment — Materially Adverse Employment Actions Are Plausibly Alleged .....21
B. Comparator Allegations Are Plausibly Pleaded — Exact Identity Is Not Required at MTD ...22
C. Retaliation — Protected Activity, Adverse Action, and Causation Are Plausibly Alleged......22
D. Hostile Work Environment — Severe or Pervasive Conduct Is Plausibly Alleged ...............23
E. Jurisdiction Over Title VII Claims Is Undisputed.......................................23

X. PRIVACY ACT CLAIM ...............................................................23
A. Legal Standard ....................................................................... 24
B. Unauthorized Disclosure — February 7 Transmission and August 20 Outing ................. 24
C. Willfulness Is Plausibly Alleged ..................................................... 24
D. Adverse Effect — Professional Harm and Litigation Jeopardy ............................ 24
E. Privacy Act Claim Is Jurisdictionally Proper ......................................... 25
XI. REQUESTED RELIEF ...............................................  ...................25

XII. ISSUE PRESERVATION/CONCLUSION................................................25

ii

# TABLE OF AUTHORITIES

**SUPREME COURT OF THE UNITED STATES**
Arbaugh v. Y & H Corp., 546 U.S. 500 (2006) ................................................................6
Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..................................................................3,22
Axon Enterprises, Inc. v. FTC, 598 U.S. 175 (2023) ........................................................4
Board of Regents v. Roth, 408 U.S. 564 (1972) ...................................................4,6,16
Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) ...............................................5
Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006) .............................13
Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985) ........................................4
Cohen v. Fred Meyer, Inc., 686 F.2d 793 (9th Cir. 1982) ................................................5
Crawford v. Metropolitan Government, 555 U.S. 271 (2009) ...............................................4
Crawford-El v. Britton, 523 U.S. 574 (1998) ..............................................................20
Doe v. Chao, 540 U.S. 614 (2004) ........................................................................20
Elrod v. Burns, 427 U.S. 347 (1976) ....................................................................4,6
Garcetti v. Ceballos, 547 U.S. 410 (2006) ................................................................4
Garrity v. New Jersey, 385 U.S. 493 (1967) .......................................................12,15,17
Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993) ......................................................23
Lane v. Franks, 573 U.S. 228 (2014) ....................................................................4,8
Mathews v. Eldridge, 424 U.S. 319 (1976) ...........................................3,4,6,15,16,17
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ...............................................21
Paul v. Davis, 424 U.S. 693 (1976) ....................................................................5,18
Perry v. Sindermann, 408 U.S. 593 (1972) ...........................................................4,17,18
Sampson v. Murray, 415 U.S. 61 (1974) ....................................................................4
Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998) ........................................6
Swierkiewicz v. Sorema N.A., 534 U.S. 506  (2002) .......................................................21
University of Texas Southwestern Medical Center v. Nassar 570 U.S. 338 (2013) ................4,12

**UNITED STATES COURT OF APPEALS — NINTH CIRCUIT**
AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631 (9th Cir. 2012)  .............................21
Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917 (9th Cir. 2004)  ..................................10
Cohen v. Fred Meyer, Inc., 686 F.2d 793 (9th Cir. 1982) ................................................5
Coszalter v. City of Salem, 320 F.3d 968 (9th Cir. 2003) ...............................................4,9
Dahlia v. Rodriguez, 735 F.3d 1060 (9th Cir. 2013) (en banc)  ...........................................8
Eng v. Cooley, 552 F.3d 1062 (9th Cir. 2009)  ............................................................8
Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840 (9th Cir. 2004) ........................21
Hawn v. Executive Jet Management, Inc., 615 F.3d 1151 (9th Cir. 2010)  ..........................5,22
Humphries v. County of Los Angeles, 554 F.3d 1170 (9th Cir. 2009)  .....................................5
Jensen v. Brown, 131 F.4th 677 (9th Cir. 2025) .......................................................8,14
Johnson v. Riverside Healthcare System, 534 F.3d 1116 (9th Cir. 2008) ...............................13
Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018) .....................................20
Lui v. DeJoy, 129 F.4th 770 (9th Cir. 2025) ...........................................................5,22
Maya v. Centex Corp., 658 F.3d 1060 (9th Cir. 2011)  ....................................................5
Porter v. California Department of Corrections, 419 F.3d 885 (9th Cir. 2005) .........................13
Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) ...................................................12,21
Safe Air for Everyone v. Meyer, 373 F.3d 1035 (9th Cir. 2004) ...........................................3

Sheppard v. David Evans & Associates, 694 F.3d 1045 (9th Cir. 2012) ....................................22
Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011) ...........................................................12,20,23
Watison v. Carter, 668 F.3d 1108 (9th Cir. 2012) ...........................................................20
Wilborn v. HHS, 49 F.3d 597 (9th Cir. 1995) ...............................................................24
WMX Technologies, Inc. v. Miller, 80 F.3d 1315 (9th Cir. 1996) .............................18
WMX Technologies, Inc. v. Miller, 197 F.3d 367 (9th Cir. 1999) ...............................5
Yartzoff v. Thomas, 809 F.2d 1371 (9th Cir. 1987) .......................................................23

UNITED STATES COURT OF APPEALS — OTHER CIRCUITS

Doe v. Department of Public Safety, 271 F.3d 38 (2d Cir. 2001) ......... .....................19
Laningham v. United States Navy, 813 F.2d 1236 (D.C. Cir. 1987) ...........................22
Albright v. United States, 732 F.2d 181 (D.C. Cir. 1984) ........ ...............................23

UNITED STATES DISTRICT COURTS

*Baca v. Moreno*, 936 F. Supp. 719 (D.N.M. 1996) .........................................................12,20,22

CONSTITUTION
      Fifth Amendment – Procedural Due Process
      Fifth Amendment – Fundamental Fairness / Abuse of Process

STATUTES
      5 U.S.C. § 552a (Privacy Act)
      28 U.S.C. § 1331 (Federal Question Jurisdiction)
      42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964)

RULES
      Federal Rule of Civil Procedure 8 ........... __
      Federal Rule of Civil Procedure 12(b)(1) ........... __
      Federal Rule of Civil Procedure 12(b)(6) ........... __

# I. INTRODUCTION

This case arises from a pattern of retaliatory and constitutionally defective conduct by Defendant following Plaintiff Dr. Zhang's protected disclosure of serious compliance failures within the Defense Language Institute Foreign Language Center ("DLIFLC"). After Plaintiff engaged in protected activity—both internal and external—Defendant escalated scrutiny, restricted Plaintiff's professional role, disseminated stigmatizing accusations, and engineered procedural traps that deprived Plaintiff of due process while chilling further speech.

Defendant's Motion to Dismiss ("MTD-II") seeks dismissal not because the First Amended Complaint ("FAC") lacks factual content, but because Plaintiff's allegations—supported by dates, documents, and agency admissions—expose institutional misconduct that cannot be resolved at the pleading stage. Contrary to Defendant's framing, the FAC pleads a tightly sequenced chronology showing knowledge, coordination, motive, and adverse action, satisfying Rule 12(b)(6) plausibility and invoking this Court's jurisdiction under 28 U.S.C. § 1331. MTD-II also advances jurisdictional arguments that conflict with Defendant's own prior merits posture and the Court's exercise of federal-question jurisdiction in denying preliminary relief. Federal courts have an independent obligation to examine subject-matter jurisdiction, but Defendant's prior litigation of the merits undermines any claim that jurisdiction is now lacking.

# II. FACTUAL BACKGROUND

Plaintiff Dr. Zhang was employed as a Student Learning Specialist (tenured Full Professor) at DLIFLC. Her role required strict adherence to advising protocols, record integrity, and equitable student access. By late 2024, agency legal counsel expressed hostility toward Plaintiff following her EEOC activity, stating she was "losing patience." FAC ¶41. On December 31, 2024, counsel sent the institutional coordination email against Plaintiff. FAC ¶47-48. On February 7, 2025, counsel transmitted unauthorized privileged materials that was not requested. FAC ¶57.

In mid-2025, leadership forced Plaintiff into proximity to known misconduct by ordering cross-review of duplicated reports. Plaintiff reported this misdirective through chain of command, to IG, and to EEO. FAC ¶71-72. The agency responded by tightening scrutiny of Plaintiff's work, instead of the documented misconduct, and escalating adverse actions despite confirmed absence

of performance deficiencies. Following the December 31 coordination email and February 7 unauthorized transmission, on August 20, 2025, Plaintiff's protected disclosures were disseminated to unauthorized personnel. FAC ¶75.

**A. June–July 2025: Protected disclosure and "Fraud Tightening" (FAC ¶71-74)**

DLIFLC leadership tightened internal controls over Student Learning Specialist work, escalated to heightened scrutiny, surveillance, and centralized oversight, and subjected to disproportionate monitoring despite the absence of any performance concerns. The Fraud Tightening supplies motive: the agency faced compliance consequences and sought to contain reporting.

**B. Protected Speech and Institutional Awareness**

Plaintiff engaged in protected activity by reporting compliance failures through appropriate channels. Defendant's knowledge of this activity is not inferred—it is documented.

Three key communications form a causation triangle pleaded in the FAC:

1.December 31, 2024 Email – Dissemination of protected concerns, with agency counsel copied.

2.February 7, 2025 Transmission – Agency counsel transmitted unrequested privileged materials to Plaintiff, creating legal jeopardy through forced possession.

3.August 20, 2025 Email – a senior official disseminated Plaintiff's whistleblower status and protected EEO activity to unauthorized leadership personnel, refusing to investigate the fraud. This sequence establishes chronology, coordination, and awareness—the elements most often missing at the MTD stage and the elements Defendant cannot credibly dispute here.

**C. Adverse Actions and Escalation**

After Defendant became aware of Plaintiff's protected activity, Plaintiff experienced a series of adverse actions, including: (1)Removal or restriction of student contact (2)Sham investigatory processes (3) A formal counseling letter (4)Mandatory discriminatory meetings (5) Reputational harm through internal and external dissemination of accusations (6)Withholding of professional recognition and advancement opportunities. These actions occurred in close temporal proximity to Plaintiff's protected conduct amid heightened institutional sensitivity to exposure.

**D. Government-Created Procedural Traps ("Double Jeopardy")**

The FAC further alleges that Defendant placed Plaintiff in unconstitutional Catch-22 scenarios:

**1.Disclosure Trap (Feb. 7):** Complying with demands to disclose privileged or protected materials risked discipline or liability; refusal would be framed as non-cooperation. Harm is inherent, not speculative. **2.Impossibility Trap:** Plaintiff was tasked with compliance objectives while simultaneously denied access to necessary records—an agency-created impossibility under Mathews v. Eldridge. **3.Reputational Trap:** Senior officials accused Plaintiff of unethical conduct (FAC ¶72) while admitting the absence of evidence, supporting an inference of spoliation and stigma-plus injury. These allegations do not depend on ultimate proof. They plead structural constitutional violations, sufficient at Rule 12.

**III. LEGAL STANDARDS: A. Rule 12(b)(1): Subject-Matter Jurisdiction** A Rule 12(b)(1) motion may present a facial or factual challenge. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Federal law. 28 U.S.C. § 1331. Jurisdictional arguments are not a license to relitigate the merits. Where Congress has not clearly stated that a statutory limitation operates as a jurisdictional bar, courts treat the restriction as non-jurisdictional.

**B. Rule 12(b)(6): Failure to State a Claim**: Plaintiff must allege state a claim that is plausible on its face. Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009) at 678. Courts accept well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. Legal conclusions divorced from facts may be disregarded, but chronology, documents, and decision-maker conduct are factual allegations. Rule 12 does not permit evidentiary weighing, credibility determinations, or resolution of competing narratives.

**Table 1: Claim-by-Claim Element → Paragraph Mapping**

| Claim | Legal Element | Governing Authority | FAC ¶¶ | Allegations Supporting Plausibility |
|---|---|---|---|---|
| First Amendment Retaliation | Protected Speech | Garcetti v. Ceballos, 547 U.S. 410 (2006); Lane v. Franks, 573 U.S. 228 (2014) | ¶¶71-72, 75, 133; 46, 82 | Plaintiff reported duplicated advising reports and compliance concerns outside routine job duties; communications involved institutional integrity and potential misconduct. |
| | Adverse Action | Elrod v. Burns, 427 U.S. 347 (1976); Sampson v. Murray, 415 U.S. 61 (1974) | ¶¶75-78, 81; ¶56 | Chief's outing to AP & dean, removal of student contact, sham investigation, counseling letter, mandatory |

| | | | | meetings, withholding of Commandant recognition. |
|---|---|---|---|---|
| | Causation | Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013); Coszalter v. City of Salem, 320 F.3d 968 (9th Cir. 2003) | ¶¶48, 57, 75, 137-138 | Chronology linking Dec. 31 protected disclosure → Feb. 7 unauthorized transmission → Aug. 20 outing establishes awareness, coordination, and temporal proximity. |
| Fifth Amendment – Procedural Due Process | Protected Property Interest | Bd. of Regents v. Roth, 408 U.S. 564 (1972); Perry v. Sindermann, 408 U.S. 593 (1972) | ¶¶14, 23-23, 71-72, 127 | Assigned workload standards, performance expectations, and competitive selection framework created a legitimate claim of entitlement to continued role conditions. |
| | Deprivation | Mathews v. Eldridge, 424 U.S. 319 (1976) | ¶¶70-72, 128 | Government-created impossibilities: cross-review without access, contradictory directives, and compliance traps imposed without notice or hearing. |
| | Lack of Due Process | Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) | ¶¶56, 71-72, 76-78, 128 | No pre-deprivation safeguards before reputational harm, workload escalation, or disciplinary actions. |
| Fifth Amendment – Stigma-Plus | Stigmatizing Statement | Paul v. Davis, 424 U.S. 693 (1976); Humphries v. Cty. of Los Angeles, 554 F.3d 1170 (9th Cir. 2009) | ¶¶72, 75, 78, 127 | September counseling letter accused Plaintiff of misconduct and duplicated reports. |
| | Plus Factor | WMX Techs., Inc. v. Miller, 197 F.3d 367 (9th Cir. 1999) | ¶¶55, 71, 76, 78 | Coupled with altered duties, exclusion, threats of termination, and formal counseling. |
| Title VII – Discrimination | Adverse Employment Action | Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) | ¶¶22-23, 29-31, 38, 45, 66, 79, 85 | Non-selection for roles, reassignment to heavier workload, denial of opportunities. |

4

|  |  | Similarly Situated Comparator | Hawn v. Exec. Jet Mgmt., 615 F.3d 1151 (9th Cir. 2010) | ¶¶17-20, 67, 87, | Male comparators (e.g., Lui) in same role not subjected to double workload or scrutiny. |
| Title VII – Retaliation | | Protected Activity | Crawford v. Metro. Gov't, 555 U.S. 271 (2009) | ¶¶26, 29, 48, 71-72, 75, 95 | EEO activity and protected disclosure of misconduct. |
|  |  | Knowledge | Cohen v. Fred Meyer, Inc., 686 F.2d 793 (9th Cir. 1982) | ¶¶47-48, 57, 75, 96 | Decision-makers copied on emails and involved in subsequent actions. |
|  |  | Causal Nexus | Coszalter, 320 F.3d at 977 | ¶¶29-31, 56, 75-78, 98-100 | Escalating actions following disclosures rebut "isolated event" narrative. |
| Privacy Act | | Record | 5 U.S.C. § 552a(a)(4) | ¶140, 48, 75 | Agency and official communication and personnel records transmitted without authorization. |
|  |  | Improper Disclosure / Maintenance | 5 U.S.C. § 552a(b), (e)(5) | ¶¶48, 57, 75, 141 | Dec 31, April 1 (PI Motion Ex. B Q10) and Aug 20 emails subsequent use in disciplinary context. |
|  |  | Adverse Effect | Doe v. Chao, 540 U.S. 614 (2004) | ¶144, 55–56, 75–81 | Reputational harm, discipline exposure, and litigation disadvantage. |

Although the FAC initially grouped the February 2025 transmission under privacy-related harms, the core injury alleged is procedural: Agency Counsel placed Plaintiff in government-created legal jeopardy by transmitting privileged materials she was not authorized to receive, thereby exposing her to discipline without notice or neutral process.

**IV. DEFENDANT'S JURIDICTIONAL ATTACK FAILS UNDER RULE 12(b)(1)**

Defendant's MTD-II devotes substantial space to reframing Plaintiff's constitutional claims as jurisdictionally barred rather than merits-deficient. That effort fails for three independent reasons: (1) this Court has already exercised § 1331 jurisdiction over the same claims; (2) Defendant's prior merits litigation precludes a late jurisdictional challenge; and (3) Plaintiff alleges structural constitutional violations that fall outside any statutory exclusivity scheme.

**A. The Court Already Exercised Federal-Question Jurisdiction Over Plaintiff's Constitutional Claims**

In denying Plaintiff's Motion for Preliminary Injunction, this Court analyzed Plaintiff's First and Fifth Amendment claims under federal constitutional standards. See Order Denying PI, Dkt. 32. The Court evaluated likelihood of success on the merits, applying Elrod, Sampson, Mathews, and Roth—standards that presuppose subject-matter jurisdiction under 28 U.S.C. § 1331. A court cannot reach the merits of constitutional claims without jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). Defendant's current assertion that the Court lacks jurisdiction over those same claims contradicts both the Court's prior ruling and Defendant's own litigation posture. This contradiction is fatal.

As the Supreme Court made clear in Arbaugh v. Y & H Corp., jurisdictional objections cannot be deployed after a defendant has litigated the merits of a claim where the statutory requirement is nonjurisdictional: Under Arbaugh's clear-statement rule, a statutory limitation is nonjurisdictional unless Congress clearly states otherwise. 546 U.S. 516 (2006).

**B. Defendant's Rule 12(b)(1) Arguments Are Merits Arguments Governed by Rule 12(b)(6)**

Defendant's jurisdictional attack hinges on assertions that: (1) Plaintiff lacks a cognizable constitutional injury; (2) the alleged conduct falls within employment statutes; or (3) alternative remedial schemes preclude relief. These are merits defenses, not jurisdictional defects. The Ninth Circuit has repeatedly rejected efforts to collapse merits analysis into Rule 12(b)(1). See Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). Plaintiff invokes jurisdiction under § 1331 by alleging violations of the First and Fifth Amendments. That is sufficient. Whether Plaintiff ultimately prevails is a Rule 12(b)(6) or Rule 56 question—not a jurisdictional one.

**C. CSRA and Title VII Do Not Strip Jurisdiction Over Structural Constitutional Claims**

Defendant argues that statutory schemes such as Title VII or the CSRA foreclose jurisdiction over Plaintiff's constitutional claims, misstates the law and ignores allegations. Plaintiff does not merely challenge an adverse personnel action. She alleges:(1) government-created procedural traps; (2 )retaliatory coordination involving counsel; (3)unauthorized transmission of protected communications; and (4) reputational harm through official dissemination. These are structural

constitutional violations, not claims for statutory benefits. The Supreme Court recently reaffirmed that constitutional challenges to agency structure and process are not barred by administrative schemes. Axon Enter., Inc. v. FTC, 598 U.S. 175 (2023). Likewise, Ninth Circuit precedent recognizes jurisdiction over constitutional claims allege government misconduct. Defendant's attempt to recharacterize these claims as mere "process complaints" ignores the FAC's factual allegations and must be rejected.

**D. Sovereign Immunity Does Not Bar Jurisdiction Over Prospective and Declaratory Relief**

To the extent Defendant invokes sovereign immunity, that doctrine does not defeat jurisdiction where Plaintiff seeks declaratory and prospective relief for ongoing constitutional violations. Ex parte Young, 209 U.S. 123 (1908). Moreover, Plaintiff's damages allegations are pleaded in the alternative. Even if certain remedies were limited, jurisdiction would remain intact. Jurisdiction turns on the nature of the claim—not the ultimate scope of relief.

**V. RULE 12(b)(6) FRAMEWORK: HOW THE FAC MUST BE ANALYZED**

1. **Chronology matters:** temporal sequencing, decision-maker awareness, and escalation plausibly establish causation at the pleading stage.

2. **Government-created harm is not harmless:** where Defendant's own conduct creates constitutional injury, dismissal is improper even absent final adverse outcomes.

Plaintiff has pleaded detailed timelines, identified communications, and alleged institutional coordination. These allegations must be taken as true.

**VI. FIRST AMENDMENT RETALIATION — PLAUSIBLY PLED AND INDEPENDENTLY SURVIVES RULE 12**

Defendant's attempts to dismiss Plaintiff's First Amendment retaliation claim with an artificially fragmented reading of the FAC, a selective timeline, and an improper demand for proof rather than plausibility. As Rule 12 requires the FAC comfortably states a claim.

First Amendment retaliation standards: (1) protected speech; (2) adverse action that would chill a person of ordinary firmness; and (3) a causation. Dahlia v. Rodriguez, 735 F.3d 1060, 1076 (9th Cir. 2013) (en banc). Plaintiff satisfies each element.

**A. Plaintiff Engaged in Protected Speech on Matters of Public Concern**

Plaintiff's speech exposed systemic misconduct at a military institute—duplicated advising reports, record manipulation, and concealment—implicating federal educational and military integrity rather than a private grievance. The FAC alleges protected disclosures, objections to unauthorized transmission of privileged materials, and resistance to compelled disclosures that would expose Plaintiff to liability. See FAC ¶¶ 46, 58, 59, 71–72, 75, 82, 133. Such speech is protected under the First Amendment. Lane v. Franks, 573 U.S. 228, 241 (2014). Plaintiff's December 31 email elevated fairness and accountability concerns to the Commandant and senior leadership, was routed to agency counsel, and treated as protected EEO activity, confirming its constitutional character rather than routine HR processing. Eng v. Cooley, 552 F.3d 1062, 1070–71 (9th Cir. 2009); FAC ¶¶ 47–48. Because that email also addressed student learning and implementation of Command policy, and Plaintiff serves in DLIFLC's Faculty Pay System, her speech on instructional methodology, curriculum standards, and academic governance is independently protected academic speech. Demers v. Austin, 746 F.3d 402, 412–15 (9th Cir. 2014); Jensen v. Brown, 131 F.4th 677, 688–89 (9th Cir. 2025). The FAC further alleges objections to instructional practices that undermined student advising standards and educational outcomes. FAC ¶¶ 46, 71–72, 74, 75.

**B. Plaintiff Suffered Adverse Actions That Would Chill Protected Activity**

Defendant argues that Plaintiff suffered "no adverse action." That assertion is contradicted by the FAC and Ninth Circuit law. The FAC alleges, inter alia: August 20 outing email by the Chief, publicly associating Plaintiff with exposing alleged misconduct; August 21 denial of student contact; August 22 sham investigation; September 9 counseling letter; mandatory discriminatory meetings; threats of reassignment and removal; withholding of earned recognition (Commandant Coin / Certificate) for seven (7) months. These actions need not amount to termination. The

Ninth Circuit applies a chilling standard, not an ultimate employment decision standard.

Coszalter v. City of Salem, 320 F.3d 968, 976 (9th Cir. 2003). "An act that is reasonably likely to

deter protected speech is sufficient." Public outing, reputational damage, forced isolation from

duties, and formal counseling plainly qualify. Plaintiff alleges pattern-based retaliation—

coordinated institutional responses following protected activity—not isolated discrete acts.

Coszalter, 320 F.3d at 978. Agency counsel's same-hour routing of Plaintiff's December 31 email

as 'protected EEO activity' (¶48) plausibly shows the retaliation triangle: protected speech →

institutional awareness → adverse actions (Feb 7, Aug 20, duty removal). See Tables 2-3.

### Table 2 — Decision-Maker Knowledge of Protected Activity

| Actor / Decision-Maker | Role | Date(s) Knowledge Acquired | Protected Activity Known | Source Allegation / Evidence/FAC | Adverse Action Linked |
|---|---|---|---|---|---|
| Agency Counsel | Legal counsel for DLIFLC | Dec. 31, 2024 | Plaintiff's protected disclosures and EEO status | ¶48; Dec. 31 coordination email (Plaintiff copied) | Institutional coordination of response; later Feb. 7 transmission |
| Senior DLIFLC Leadership ("Senior Leaders") | Decision-makers / supervisors | Dec. 31, 2024 | Dissemination of Plaintiff's protected disclosures | ¶48 (email circulated to senior leadership) | Award rescission; exclusion from meetings; later discipline |
| Agency Counsel | Legal counsel | Feb. 7, 2025 | Substance of Plaintiff's disclosures | ¶57 (unauthorized transmission) | Creation of unconstitutional disclosure dilemma; chilling effect |
| Associate Provost | Performance Authority | April 1, 2025 | Admission: no performance concerns disclosed EEO status to Chief | PI Mot. Ex. B Q8, Q10 | Demonstrates falsity of future discipline; establishes pretext baseline ¶57 |
| Chief of Staff | Senior official | Aug. 20, 2025 | Plaintiff's protected activity and | ¶75 (outing email) | Denial of student contact; escalation to discipline |

9

| | | | disclosure history | | |
|---|---|---|---|---|---|
| Dean & Supervisor | Direct supervisors | Aug 20, 2025 | Plaintiff's EEO/ Whistleblower | ¶¶75 | Removal-level counseling letter ¶78 |
| Institutional Decision-Makers (collectively) | Coordinated leadership | Aug.–Sept. 2025 | Full protected-activity history | ¶¶48, 75; 96–137 | Counseling letter; mandatory meetings; continued retaliation |

**C. Causation Is Plausibly Alleged Through Chronology, Awareness, and Coordination**

Defendant's primary argument is that Plaintiff fails to plead causation. This is incorrect.

At the pleading stage, causation may be inferred from: temporal proximity; decision-maker knowledge; and retaliatory motive. Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 929 (9th Cir. 2004). Plaintiff pleads all three.

**1. Chronology + Awareness: The Retaliation Triangle**

The FAC alleges a tightly linked sequence of communications:

1. December 31, 2024: dissemination of protected speech (counsel copied Plaintiff);

2. February 7, 2025: unauthorized transmission involving counsel;

3. August 20, 2025: outing and coordination email by the Chief.

This sequence establishes awareness and institutional coordination.

**Table 3: Chronological Awareness Matrix**

| Decision-Maker | Role | Knowledge Source | Date | Connection to Adverse Action |
|---|---|---|---|---|
| Counsel | Agency Counsel | Feb 6 unauthorized transmission of confidential material | Feb 6, 2025 | Privileged disclosure |
| AP | Performance Authority | Admitted knowledge of EEOC case from counsel, confirmed no performance concerns, and disclosed EEO status to Chief (PI Mot. Ex. B Q 4, 8, 10) | April 1, 2025 | Shows falsity/pretext |
| Dean | Senior Supervisor | Cross-review directive; stigmatizing emails | June-July 2025 | Created impossible task |
| Chief | Senior Leadership | Aug 20 outing email to leadership. | Aug 20, 2025 | Disseminated whistleblower status |

| | | | | while refusing investigation |
|---|---|---|---|---|

**Table 4: Temporal Proximity Between Protected Activity and Adverse Actions**

| Date | Event | Protected Activity or Adverse Action | Inference Supported |
|---|---|---|---|
| Dec. 31, 2024 | Retaliation coordination email circulated (Plaintiff copied) | Protected disclosure / dissemination | Institutional awareness of protected speech |
| Feb. 7, 2025 | Unauthorized transmission involving counsel | Retaliatory escalation / chilling conduct | Early retaliation + legal exposure trap |
| Apr.1, 2025 | AP admitted EEO knowledge from counsel; confirmed no performance concerns; disclosed EEO status to Chief (PI Ex. B) | Knowledge Dissemination | Dissemination Institutional awareness + falsity of subsequent discipline |
| June–July 2025 | cross-review uncovers duplicated advising reports | Whistleblowing context / motive crystallizes | Defendant's motive to silence reporting |
| Aug. 20, 2025 | Chief's outing email referencing duplicated reports | Adverse public disclosure | Retaliation + reputational harm |
| Aug. 21, 2025 | Denial of student contact | Adverse employment action | Immediate punitive response |
| Aug. 22, 2025 | Sham investigation initiated | Adverse action | Pretextual enforcement |
| Sept. 9, 2025 | Counseling letter issued | Adverse action | Formal discipline following speech |
| Fall 2025 | Mandatory discriminatory meetings / removal threats | Adverse conditions | Escalating retaliation |
| May 30 - Dec.2025 | Withholding of Commandant Coin/Certificate | Adverse action | Ongoing retaliatory deprivation |

**2. Direct discriminatory retaliatory remarks establish causation**

The FAC alleges classic direct motive evidence. Pre-2023, an agency official directed Plaintiff to "go back to Chinese school repeatedly"—national origin-coded language from a decisionmaker. FAC ¶¶ 16, 34 (ROI admission). This anchors animus, temporal/knowledge and causation. Further, when Plaintiff raised discrimination concerns during the live interview of EEO investigation, the Associate Provost responded: "it doesn't mean that I do not see this as discrimination" (March 2024 ROI). FAC ¶ 33. This senior decisionmaker acknowledgment—post-protected activity, pre-adverse action—shows awareness of discriminatory character yet refusal to remediate, plausibly evidencing retaliatory intent under *Nassar* and *Coszalter*.

11

**2. Fraud-Tightening Motive Strengthens Causation (June/July)**

The fraud-tightening response alleged in Section II.A (FAC ¶¶71-74) supplies motive. Once institutional exposure was apparent following the cross-review, silencing became rational and foreseeable. Motive need only be plausible.

**3. Decision-Maker Knowledge Is Adequately Alleged**

Defendant argues Plaintiff failed to identify decision-makers or their awareness. That is incorrect. The FAC alleges: (1) direct communications from supervisory officials; (2) Chief-level dissemination; (3) counsel involvement; (4) coordinated actions following protected speech. At the pleading stage, Plaintiff is not required to map internal hierarchies with precision. Starr v. Baca, 652 F.3d 1202, 1217 (9th Cir. 2011).

**D. Defendant's "No Harm" Argument Fails Ignores the FAC's allegations**

Defendant argues Plaintiff failed to allege harm from the December 31 dissemination or the February Transmission. MTD-II at 23. That characterization ignores the FAC's express allegations: Agency Counsel's institutional routing of EEO-protected status to decision-makers (FAC ¶¶ 47-48) provided direct evidence of motive and coordination, violated Privacy Act confidentiality (FAC ¶ 141), and occurred days before adverse actions escalated (FAC ¶¶ 49-82). Ray v. Henderson, 217 F.3d 1234, 1242–43 (9th Cir. 2000) (institutional coordination constitutes adverse action independently). Defendant's failure to address these allegations—or to argue that such coordination would be harmless even if proven—independently defeats dismissal.

The February 7 unauthorized transmission created a constitutional Catch-22: disclose materials → risk liability or discipline; refuse → face adverse consequences.

Government-created dilemmas are inherently harmful. Garrity v. New Jersey, 385 U.S. 493 (1967). This alone defeats dismissal. Additionally, in July 2025, leadership circulated emails containing stigmatizing assertions regarding Plaintiff's professional judgment and mental fitness (FAC ¶¶ 72, 76, 78). These supply the stigma component necessary for Fifth Amendment stigma-plus analysis and independently constitute adverse actions under *Burlington Northern*.

**E. Discovery Foreclosure Is an Independent Basis to Deny Dismissal**

Defendant's MTD seeks to dismiss claims that depend on agency and official communication, metadata, and decision-making records—all exclusively within Defendant's control.

Defendant's position is internally contradictory: the record is simultaneously too undeveloped to infer retaliation yet sufficient to warrant merits dismissal. This inconsistency rewards Defendant for exploiting exclusive control over evidence while faulting Plaintiff for lacking access to facts within Defendant's possession. Dismissal under these circumstances inverts Rule 12 and forecloses the discovery necessary to test Defendant's explanations.

Dismissal at this stage would improperly foreclose discovery into internal emails, routing logs, metadata, deletion history, decisionmaker communications.

The Ninth Circuit cautions against Rule 12 dismissals that preempt discovery on plausibly alleged facts—like motive, coordination, and decision-maker knowledge within Defendant's exclusive control. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1126 (9th Cir. 2008).

**F. First Amendment Claim Independently Survives Rule 12**

When read holistically, the FAC alleges: protected speech; adverse actions; institutional motive; coordinated retaliation; government-created harm.

That is more than sufficient at Rule 12(b)(6). Defendant's motion should be denied.

**Table 5: Claim Elements → FAC Allegations → Legal Sufficiency**

| Claim | Required Elements | FAC Allegations (by ¶) | Plausibility Showing | DOJ Error at MTD |
|---|---|---|---|---|
| First Amendment Retaliation | (1) Protected speech on public concern(2) Citizen speech (3) pedagogical speech (4) Adverse action (5) Causation | ¶¶24-26,28, 58,59;72, 75, 133–136; 48, 56, 57, 68-81, 79, 81, 96; 137-138 | External reporting to IG/EEO; institutional dissemination; tight temporal sequence | DOJ improperly demands evidentiary proof and Pickering balancing at Rule 12 |
| Title VII Retaliation | (1) Protected activity(2) Adverse action(3) Causal link | ¶¶26; 29–31, 38, 45, 56, 66, 78, 79; 95-101 | Multiple non-selections; award rescission; removal-level counseling; temporal proximity | DOJ ignores June 2023 adverse actions and Sept. 2025 counseling |

| Title VII Discrimination | (1) Protected class(2) Adverse action(3) Inference of discrimination | ¶¶84; 15-16, 34, 86 17-19, 67, 87; 22-23; 29-31, 38, 45, 66, 79 | Differential workload; non-selections; comparator plausibility | DOJ improperly requires comparator proof at pleading stage |
|---|---|---|---|---|
| Hostile Work Environment | (1) Unwelcome conduct(2) Based on protected status(3) Severe or pervasive | **¶¶15-16; 22-23, 55-56, 72; 104-112** | Pattern of retaliatory acts; institutional coordination | DOJ fragments allegations instead of assessing totality |
| Fifth Amendment Due Process | (1) Protected interest(2) Deprivation without due process | ¶¶127,71-72,76,78; 17; 128,137 | Removal-level counseling; reassignment threats; structural bias | DOJ mischaracterizes claim as "no termination" |
| Fifth Amendment Stigma-Plus | (1) Stigmatizing statements(2) Plus tangible harm | ¶¶48,72,75,78, 96, 104, 55, 56, 127, 137; 17, 22 | Outing email; reputational harm; altered duties | DOJ ignores stigma-plus doctrine |
| Privacy Act | (1) Improper disclosure(2) Adverse effect(3) Willful/intentional | ¶¶47-48, 55-56, 75-81, 141, PI Ex B Q10, 56, 96, 140–141, 144, Summary of Harm | Dec. 31 dissemination → later adverse actions | DOJ demands proof of causation instead of plausibility |
| Equal Pay Act | (1) Equal work(2) Wage disparity(3) Sex-based | ¶¶114–124, 22-23, 71, 27 | Differential workload without commensurate pay | DOJ misstates jurisdiction and factual posture |

**Table 6: Jensen-Style Retaliation Inference Comparison**

| Element | Jensen v. Brown | Plaintiff Zhang | Jensen Holding / Rule *Jensen*, 131 F.4th |
|---|---|---|---|
| **Protected Speech** | Math curriculum critique; co-requisite policy lowering academic standards | Fraud/waste reporting; student harm concerns; pedagogical misconduct | "Curriculum standards and educational quality = public concern" at 687-88 |
| **Retaliation** | Reprimand (1 week post-speech); forced committee resignation; two "unsatisfactory" reviews; termination hearing | Award rescission; removal-threat counseling; job denials; prohibited student contact | "Even minor retaliatory acts sufficient to chill protected speech" at 689-90 |
| **Pickering Balance** | Not performed at MTD; state asserted "insubordination" | Pickering balancing requires factual | "Employer must show actual, material disruption; disobedience |

14

| | without showing actual disruption | development and cannot be resolved at Rule 12 | alone insufficient" at 691-93 |
|---|---|---|---|
| **Outcome** | Reversed dismissal; qualified and sovereign immunity denied | Identical posture | "Evidentiary record required before Pickering balancing; case proceeds past pleading stage" at 702 |

**Table 7: Government-Created Catch-22s Defeating Harmlessness at Rule 12**

| Government Action | Plaintiff's Only Available Response | Constitutional Injury | Legal Significance at MTD |
|---|---|---|---|
| Feb. 7 unauthorized transmission of privileged/retaliation material involving counsel | Disclose contents → risk discipline or liability under 18 U.S.C. § 641; Withhold → accused of non-cooperation | Forced choice between self-incrimination and rights preservation | Harm is inherent; cannot be "harmless" as a matter of law (Garrity-type coercion) |
| Demand that Plaintiff substantiate retaliation using records she was denied access to | Attempt compliance without access → failure; Report impossibility → labeled unethical | Government-created impossibility | Independent due process violation (Mathews trap) |
| Supervisor-ordered cross-review while admitting folders were locked / inaccessible | Perform impossible task or be disciplined | Structural unfairness + pretext | Plausibly alleged sham process; defeats Rule 12(b)(6) |
| Dean's accusation of "unethical conduct" while asserting "no evidence exists" | Either accusation without evidence or reliance on deleted evidence | Stigma-plus + spoliation inference | Fed. R. Evid. 37(e) inference available at pleading stage |
| PI Order reliance on merits analysis followed by DOJ's jurisdictional denial in MTD-II | Plaintiff deprived of consistent adjudicatory framework | Due process instability | jurisdiction-by-merits litigation |
| Sanction asymmetry (pro se sanctioned; DOJ repeatedly extended) | Accelerated compliance under threat of punishment | Procedural inequality | Supports hostile-forum framing; preservation for appeal |

These allegations establish more than discrete adverse actions—they plead government-created constitutional traps that defeat any claim of harmlessness as a matter of law. Where a plaintiff is forced to choose between self-incrimination and the preservation of constitutional rights, harm is inherent and non-speculative. Discovery foreclosure, unauthorized transmission of privileged material, and impossible compliance demands independently preclude dismissal at Rule 12 and

require factual development. No Ninth Circuit authority permits dismissal where the government itself engineered the evidentiary vacuum it now exploits.

**VII-FIFTH AMENDMENT DUE PROCESS — PLAUSIBLY ALLEGED AND JURISDICTIONALLY SOUND**

**A. This Court Has Jurisdiction Over Plaintiff's Fifth Amendment Claims**

Defendant again attempts to recharacterize Plaintiff's Fifth Amendment claims as non-justiciable challenges to internal EEO processes. That framing misstates the allegations in in the FAC. Plaintiff does not challenge the adequacy of an EEO investigation or seek relief for administrative delay. Instead, Plaintiff alleges independent constitutional violations arising from government action that deprived her of protected interests through government-created traps, reputational injury, and coercive procedural mechanisms. Such claims fall squarely within federal-question jurisdiction under 28 U.S.C. § 1331.

The Ninth Circuit and Supreme Court have held that constitutional due process challenges are not barred merely because they arise in an employment or administrative context, particularly where the plaintiff alleges structural unfairness, coercion, or government-created impossibility. See Mathews v. Eldridge, 424 U.S. 319 (1976). Defendant's Rule 12(b)(1) challenge fails.

**B. Plaintiff Plausibly Alleges a Protected Property Interest** At the pleading stage, a plaintiff need only allege facts supporting a legitimate claim of entitlement, not prove entitlement conclusively. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Here, the FAC plausibly alleges a protected property interest grounded in:

- o Plaintiff's appointment and defined duties as a Student Learning Specialist;
- o Agency-controlled performance standards and workload expectations;
- o Management's acknowledgment that Plaintiff had no performance deficiencies;

The agency's post-June/July tightening of controls following discovery of duplicated reports, which materially altered Plaintiff's work conditions and exposure. These allegations collectively support a reasonable inference that Plaintiff had a continued interest in fair treatment, accurate evaluation, and non-arbitrary discipline, sufficient to survive Rule 12(b)(6).

At minimum, whether these interests rise to the level of protected property is a fact-intensive inquiry inappropriate for resolution at the motion-to-dismiss stage.

Plaintiff's tenured status/full professor rank at Agency since 2006,  documented reliance on her cross-language diagnostic expertise in mission-critical assignments, constitutes a protected property interest under *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). The FAC plausibly alleges deprivation of duties, student contact, and professional standing without pre-deprivation process. *Loudermill*, 470 U.S. at 542.

**C. Government-Created Jeopardy and Procedural Traps State a Due Process Claim**

The FAC alleges multiple instances in which Defendant placed Plaintiff in constitutionally impermissible catch-22 situations created by the government itself. Notably, Plaintiff alleges that Defendant demanded disclosure of materials while simultaneously exposing her to potential discipline or liability based on that disclosure, and then attempted to characterize the resulting harm as "harmless." Courts have long recognized that procedural due process is violated where the government creates impossible choices that punish compliance or silence alike. See Garrity v. New Jersey, 385 U.S. 493 (1967); Mathews, 424 U.S. at 335.

The agency repeatedly declined procedural inquiries necessary for participation, refused to accept timely amendments, and then issued a Final Agency Decision without the complainant's involvement—foreclosing any meaningful opportunity to be heard. This exclusion was not incidental; it followed months of agency-created jeopardy and procedural traps, converting an already coercive posture into a deprivation imposed without constitutionally sufficient process. Plaintiff needs not to prove punishment—only that the risk of deprivation and coercive structure existed. The FAC satisfies that standard.

**D. Stigma-plus And Reputational Due Process**

Defendant argues that Plaintiff fails to allege a protected interest or cognizable harm because she was not terminated. That argument misunderstands stigma-plus doctrine and misreads the FAC. Plaintiff does not allege "mere reputational injury." She alleges official stigmatization plus tangible alterations in legal status, duties, and institutional standing, imposed through coordinated government action.

17

**1. Governing Standard: Stigma-Plus Does Not Require Termination**

A stigma-plus claim requires: Public or official stigmatizing statements by the government; Falsity or lack of fair process; Plus a tangible alteration of status, rights, or conditions of employment. Paul v. Davis, 424 U.S. 693 (1976); WMX Techs., Inc. v. Miller, 80 F.3d 1315, 1320 (9th Cir. 1996). Termination is not required. Reassignment, duty removal, exclusion, threats of removal, or formal disciplinary escalation suffice.

Defendant's attempt to collapse Fifth Amendment harm into a termination-only framework contradicts settled doctrine. *Loudermill*, *Perry*, and this Circuit's recent holdings confirm that due process attaches to protected interests in continued employment and reputation—not merely to ultimate termination. The counseling letter threatening removal, combined with mental-health stigmatization and denial of opportunities, plausibly alleges tangible alteration of status sufficient to trigger procedural protections.

**2. Plaintiff Alleges Official Stigmatization**

The FAC alleges multiple official acts branding Plaintiff as unethical, untrustworthy, or professionally suspect, including: the August 20 outing email disseminating accusations tied to duplicated reports; supervisory communications asserting misconduct despite admitted lack of access to evidence; leadership certainty that Plaintiff "had no evidence," despite locked or deleted folders. These were not private opinions. They were official institutional communications, including dissemination to oversight bodies.

**3. The Alleged Stigma Is Plausibly False or Unadjudicated**

Plaintiff alleges: supervisors admitted files were locked or deleted; Dean asserted Plaintiff acted "unethically" without access to evidence (FAC ¶72); AP acknowledged no prior performance issues. At Rule 12, Plaintiff need not prove falsity, only allege lack of fair adjudication. She has. Where the government brands an employee unethical without process, stigma-plus is triggered.

**4. Plaintiff Alleges Concrete "Plus" Factors**

The FAC alleges multiple tangible consequences flowing directly from the stigmatization, including: removal or denial of student contact; mandatory discriminatory meetings; denial or delay of recognition and awards; threats of reassignment or removal-level counseling;

escalation into disciplinary posture without neutral review.

These are changes in legal status and employment conditions, not mere hurt feelings.

**5. Government-Created Jeopardy Reinforces Stigma-Plus**

The same communications that stigmatized Plaintiff also created procedural traps, forcing her to choose between: disclosure risking discipline or prosecution; or silence treated as non-cooperation or misconduct. This compounds reputational harm with coercive process violations. Courts treat such dilemmas as inherently injurious, regardless of final employment outcome.

**6. Structural Bias and Spoliation Strengthen the Claim**

The FAC plausibly alleges that: agency counsel participated in managing accusations against the agency itself; leadership certainty implies deletion or suppression of evidence; Plaintiff was accused of unethical conduct while denied access to proof. These allegations support an inference of structural unfairness and record manipulation, heightening the stigma-plus violation. Fed. R. Evid. 37(e).

**7. Defendant's Attempt to Collapse This Claim Into Title VII Fails**

Defendant argues that stigma-plus is barred because Title VII governs employment disputes. That is incorrect. Stigma-plus addresses constitutional reputational injury and process, not discrimination alone. It survives independently of Title VII. Doe v. Dep't of Pub. Safety, 271 F.3d 38 (2d Cir. 2001). Even if all statutory claims failed, stigma-plus would remain.

**8. Dismissal at Rule 12 Would Improperly Resolve Fact Disputes**

Whether statements were false, whether dissemination occurred, and whether consequences altered Plaintiff's status are fact-intensive questions. They cannot be resolved on a motion to dismiss—especially where the government controls the evidence.

**VIII. DISCOVERY FORECLOSURE, PROCEDURAL ASYMMETRY, AND SANCTIONS CONTEXT**

This case cannot be dismissed at the pleading stage because Defendant's Rule 12 motion relies on information asymmetry that Defendant itself created, while simultaneously invoking sanctions to block Plaintiff's ability to develop the record. Courts routinely reject dismissal under such circumstances.

**A. Rule 12 Cannot Be Used to Exploit Government-Created Information Asymmetry**

The Ninth Circuit has warned that Rule 12(b)(6) is not a vehicle for insulating defendants from discovery when critical facts lie exclusively within their control. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002–03 (9th Cir. 2018). Here, Defendant argues: Plaintiff lacks proof of intent; of coordination; of knowledge; proof of adverse motivation. But Defendant simultaneously: controls all agency and official communication; metadata and audit logs; investigatory records; supervisory directives. This asymmetry is government-created, not plaintiff-created. Dismissal under these conditions would invert Rule 12 and reward obstruction.

**B. Sanctions cannot be used as a Sword to Justify Dismissal Request**

Defendant's motion is filed against a backdrop of sanctions proceedings and threatened adverse procedural consequences. That context matters. Courts are particularly cautious where dismissal would: ratify procedural imbalance; punish a plaintiff for lacking access to evidence; amplify sanction pressure into merits adjudication. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (courts consider context, not isolate allegations).

**C. Defendant's Arguments Confirm the Need for Discovery**

Defendant's own motion repeatedly references: internal motivations; supervisory intent; credibility determinations. Each is discovery-dependent and inappropriate at MTD.

A motion that "asks the Court to choose between competing inferences" must be denied. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**D. Discovery Foreclosure Independently Defeats Qualified Immunity at MTD**

To the extent Defendant invokes immunity doctrines, dismissal is improper where: facts necessary to resolve immunity are contested; or the immunity analysis depends on motive or intent. Crawford-El v. Britton, 523 U.S. 574, 593 n.14 (1998). Immunity cannot be resolved without discovery into: retaliatory intent; decision-maker awareness; official coordination.

**E. Sanctions Risk Strengthens—Not Weakens—Plausibility**

Plaintiff does not rely on speculation. She relies on: specific emails; identified dates; named officials; documented adverse actions.

The sanctions posture underscores that Plaintiff has alleged too much, not too little. Where a plaintiff pleads detailed facts and faces sanctions pressure, courts are especially reluctant to dismiss. AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637-38 (9th Cir. 2012).

**F. Appellate Preservation: Procedural Fairness as a Standalone Error**

Even if claims were narrowed, dismissal on a closed factual record would create reversible procedural error: denial of meaningful discovery; reliance on defendant-controlled facts; conflation of Rule 12 with Rule 56. This section preserves that issue for appeal.

**IX. TITLE VII CLAIMS** (Disparate Treatment, Retaliation, and Hostile Work Environment) Defendant's MTD-II seeks dismissal of Plaintiff's Title VII claims by fragmenting adverse actions, misapplying comparator standards, and importing evidentiary burdens inappropriate at the Rule 12 stage. These arguments fail under settled Ninth Circuit law. The FAC plausibly alleges materially adverse actions, and retaliatory motive, and a hostile work environment sufficient to survive Rule 12(b)(6), and nothing in Defendant's jurisdictional arguments deprives this Court of authority to adjudicate these claims.

**A. Disparate Treatment — Materially Adverse Employment Actions Are Plausibly Alleged**

Legal Standard: an adverse employment action; discrimination inference. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004). At Rule 12, a plaintiff need not prove her prima facie case; she must only allege facts rendering discrimination plausible. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–12 (2002). The FAC satisfies this standard.

Plaintiff alleges that after 2023 reassignment, she was subjected to a materially increased workload without commensurate compensation or relief, denied student contact, excluded from professional opportunities, required to attend coercive and discriminatory meetings, and repeatedly passed over for positions for which she was qualified. These are classic adverse employment actions under Ninth Circuit law. Ray v. Henderson, 217 F.3d 1234, 1241–43 (9th Cir. 2000) (loss of duties, exclusion, and professional harm constitute adverse actions). Defendant's attempt to recharacterize these actions as "minor workplace inconveniences" is

contradicted by the FAC's allegations that the actions altered Plaintiff's job responsibilities, professional standing, and career trajectory. *Iqbal*, 556 U.S. at 678.

**B. Comparator Allegations Are Pleaded — Exact Identity Is Not Required at MTD**

Defendant argues that Plaintiff fails to identify "similarly situated" comparators treated more favorably. This argument misstates the pleading burden.

The Ninth Circuit has repeatedly held that comparator allegations need not establish perfect identity at the pleading stage. *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 (9th Cir. 2012). Plaintiffs may allege comparators "similarly situated in material respects," not carbon copies. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010).

Here, Plaintiff alleges that male colleagues and colleagues outside her protected classes—specifically including Specialists with comparable roles and capabilities—were not assigned duplicated advising workloads, were not subjected to heightened scrutiny, and were not written into performance standards requiring uncompensated additional duties.

Plaintiff plausibly alleges discriminatory inference through direct evidence ("go back to Chinese school," ¶16) and official admission "not that I don't see it as dissemination" and comparators (Gelbman/Berndt shielded from dual workload, ¶¶17-20)—satisfying Title VII without exhaustive SJ-level detail. Unlike Defendant's "micro-comparator disputes," the FAC shows pattern-based plausibility where less-qualified white males received preferential treatment. *Lui v. DeJoy*, No. 23-35378 (9th Cir. Feb. 26, 2025) (comparator gaps discoverable at pleading; inference from institutional pattern suffices). At MTD, these allegations suffice. Whether these comparators are "similarly situated" in every respect is a merits question reserved for summary judgment. *Swierkiewicz*, 534 U.S. at 511.

**C. Retaliation — Protected Activity, Adverse Action, and Causation Are Plausibly Alleged**

To plead retaliation under Title VII, a plaintiff must allege: protected activity; a materially adverse action; and a causal link between the two. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The FAC alleges all three.

Plaintiff engaged in protected activity by reporting duplicated advising reports, participating in EEO activity, and opposing discriminatory practices. Following this activity, Plaintiff alleges

denial of student contact, sham investigations, counseling letters, coercive meetings, reputational harm, and threats of reassignment. *Id.* Temporal proximity alone can establish causation at the pleading stage. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). Here, Plaintiff alleges not merely proximity but coordinated institutional responses—emails, unauthorized transmissions, and leadership involvement—creating a plausible inference of retaliatory motive. Defendant's insistence that Plaintiff must identify the specific decisionmaker for each act is inconsistent with Rule 8. The Ninth Circuit has rejected heightened pleading standards for retaliation claims. Starr v. Baca, 652 F.3d at 1216.

### D. Hostile Work Environment — Severe or Pervasive Conduct Is Plausibly Alleged

A hostile work environment claim requires allegations that the workplace was "permeated with discriminatory intimidation, ridicule, and insult" sufficiently severe or pervasive to alter employment conditions. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

The FAC alleges a sustained pattern of conduct: repeated discriminatory meetings, reputational smearing through official communications, denial of access to work functions, threats tied to protected activity, and institutional escalation following protected disclosure. Defendant's argument that these allegations "duplicate" discrimination and retaliation claims misstates the law. The Ninth Circuit permits overlapping factual predicates where the conduct collectively alters workplace conditions. Porter v. Cal. Dep't of Corr., 419 F.3d 885, 893 (9th Cir. 2005). Plaintiff must plausibly severity and pervasiveness. She has done so.

### E. Jurisdiction Over Title VII Claims Is Undisputed

Unlike Defendant's constitutional claims, Title VII expressly waives sovereign immunity and grants jurisdiction to federal district courts. 42 U.S.C. § 2000e-5(f)(3). Defendant's Rule 12(b)(1) arguments have no application here.

### X. PRIVACY ACT CLAIM

(5 U.S.C. § 552a — Unauthorized Disclosure, Accuracy, and Adverse Effect)

Defendant's Motion to Dismiss minimizes Plaintiff's Privacy Act allegations by isolating individual disclosures and ignoring the statutory structure and Ninth Circuit pleading standards.

The FAC plausibly alleges (1) unauthorized disclosure of protected records, (2) maintenance and use of inaccurate records, and (3) adverse effects causally linked to those violations.

**A. Legal Standards:** plausibly allege: a "record" contained in a "system of records"; use unauthorized; willful or intentional; adverse effect. See 5 U.S.C. § 552a(b), (g); Wilborn v. HHS, 49 F.3d 597, 600 (9th Cir. 1995). At pleading, a plaintiff need not prove intent or damages—only plausibly allege them. Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984).

**B. Unauthorized Disclosure — December 31 emails and August 20 Outing**

The FAC alleges two core Privacy Act violations:

-Dec 31 Unauthorized Dissemination Plaintiff alleges that agency counsel and agency officials disseminated protected personnel and investigatory information without authorization, outside any routine use, and in a manner that created legal exposure and coercive pressure.

-August 20 "Outing" Email. Plaintiff further alleges that the Chief publicly disseminated allegations regarding duplicated reports and Plaintiff's professional conduct, transmitting protected information beyond those with a need to know. These disclosures involved information drawn from personnel and investigatory records maintained in agency systems. Defendant does not—and cannot—contest that such records fall within the Privacy Act's scope.

**C. Willfulness Is Plausibly Alleged** Willfulness requires conduct "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Here, Plaintiff alleges: transmission involving counsel rather than internal processing; dissemination of reputationally damaging allegations; escalation during active EEO and litigation contexts; and coordination among senior officials. These allegations plausibly support willfulness at Rule 12.

**D. Adverse Effect — Professional Harm and Litigation Jeopardy**

Defendant's assertion that Plaintiff failed to plead adverse effect is incorrect. The Ninth Circuit recognizes reputational harm, career impairment, and litigation disadvantage as adverse effects under the Privacy Act. See Doe v. Chao, 540 U.S. 614, 624–25 (2004); Wilborn, 49 F.3d at 600.Plaintiff alleges: reputational injury following the August 20 outing; exclusion from duties

and meetings; coercive counseling and threats; and litigation harm created by a forced disclosure

dilemma. These allegations easily satisfy Rule 12(b)(6).

**E. Privacy Act Claim Is Jurisdictionally Proper**

The Privacy Act expressly waives sovereign immunity and provides jurisdiction in federal

district court. 5 U.S.C. § 552a(g)(1). Defendant's Rule 12(b)(1) arguments fail.

**XI. REQUESTED RELIEF**

1.  Deny MTD in entirety under Rules 12(b)(1)/(6);

2.  Preserve all claims (1A retaliation; 5A due process/stigma+; Title VII/HWE; Privacy
    Act) + jurisdictional issues for appeal;

3.  Order limited discovery on decision-maker knowledge/coordination + Dec31/Aug20
    communications;

4.  Such other relief as just/proper.

**XII. ISSUE PRESERVATION / CONCLUSION**

Plaintiff submits this Opposition without waiving any argument or objection. Plaintiff contests

Defendant's Rule 12(b)(1) and Rule 12(b)(6) grounds, including First and Fifth amendments,

Privacy Act theories, and maintains that the First Amended Complaint plausibly alleges the

required elements under governing standards. If dismissal is granted, Plaintiff respectfully

requests dismissal without prejudice and leave to amend unless amendment would be futile.

Plaintiff further maintains that dismissal is inappropriate: material institutional facts and decision

maker knowledge remain reasonably disputed, relevant evidence within Defendant's control.

At the pleading stage, Plaintiff need not prove her case—only plausibly allege it. The FAC does

far more. Plaintiff alleges: protected speech and activity; adverse actions closely tied to that

activity; coordinated institutional responses; reputational injury and procedural traps;

unauthorized disclosures of protected records; and systemic barriers to neutral process.

MTD-II improperly fragments these allegations, ignores governing Ninth Circuit standards, and

seeks premature termination before discovery. It should be DENIED.

Respectfully submitted,

 /s/ *Hang Zhang*  Hang, Zhang, February 9, 2026

**EXHIBIT A**
**Table 1: TEMPORAL PROXIMITY & CAUSATION TIMELINE**

| Date | Protected Activity / Disclosure | Knowledge Dissemination | Adverse Action | Temporal Gap | Legal Significance |
|---|---|---|---|---|---|
| May 5, 2023; June 13, 2023 | Initial EEO contact; Formal complaint | Agency EEO channel | Non-selection for Test Specialist (June 4), ODA position (June 14), Operations Research Analyst (June 16) | Days–3 weeks | Days/weeks are sufficient to infer causation (Yartzoff; Passantino) |
| Dec. 31, 2024 | Dissemination of protected disclosures | Coordination email circulated to senior leadership | Award rescission (Jan. 30, 2025); exclusion from meetings | 30 days | Close proximity defeats "no causation" at Rule 12 |
| Feb. 7, 2025 | Unauthorized transmission of protected materials | Agency counsel involvement | Government-created jeopardy; chilling effect | Immediate | Harm inherent; no "harmlessness" doctrine applies |
| Apr. 1, 2025 | Dissemination of protected disclosures | AP admitted receiving EEO status from counsel; confirmed no performance concerns; disclosed status to Chief | Jun/Jul cross-advising order; forced meeting with reported fraud; Chief's outing; Sept counseling | 2-5 months | institutional knowledge at provost level; falsity of later; Chief's knowledge preceded outing/discipline |
| Aug. 20, 2025 | Chief of Staff outing Plaintiff's disclosures | Institutional awareness confirmed | Denial of student contact (Aug. 21); sham investigation (Aug. 22) | Within 20 minutes | Extremely tight temporal proximity |
| Aug. 20 2025 | Report to Chief of Staff | Senior leadership | Removal-level counseling letter (Sept. 9, 2025) | 20 days | Well within Ninth Circuit causal inference window |
| Ongoing | Continued protected activity | Institutional coordination | Mandatory meetings; reassignment | Continuous | Pattern-based causation, not isolated acts |

| | | | threats; delayed Commandant recognition | | |
|---|---|---|---|---|---|