UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANG ZHANG,<br>Plaintiff,<br>v.<br>DANIEL DRISCOLL,<br>Defendant. | Case No. 25-cv-03381-AMO<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 38 |

Before the Court is Defendant Daniel Driskoll's motion to dismiss. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for February 26, 2026, was vacated. *See* Dkt. No. 48. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court **GRANTS the motion in part and DENIES the motion in part** for the following reasons.

## I. BACKGROUND

Plaintiff Hang Zhang, Ph.D., brings this employment discrimination action in relation to her employment with the Defense Language Institute ("DLI") as a Student Learning Specialist. Defendant Daniel Driscoll, Secretary of the Department of the Army, is sued in his official capacity.[1] Zhang's claims against Defendant arise from her reassignment to the Chinese school at DLI, during which she was required to take on an additional workload. Zhang subsequently was not selected for multiple roles to which she applied within DLI. She alleges that her non-selection and reassignment were the result of discrimination on the basis of race, sex, and national origin,

[1] Because Driscoll is sued in his official capacity rather than for any specific action he took within the factual basis for this lawsuit, the Court refers to him as "Defendant" throughout.

and that her treatment at DLI constituted a hostile work environment. Zhang further alleges that, as the result of her Equal Employment Opportunity ("EEO") activity, she suffered retaliation.

**A. Factual Background**[2]

Zhang is a Chinese-American woman of Chinese national origin and is employed by DLI as a Student Learning Specialist. *See* First Am. Compl. (Dkt. No. 23, "FAC") ¶¶ 1, 12-13. She holds a Ph.D. in Linguistics. *Id.* ¶ 12. She began working at the Department of the Army in 2002. *Id.* Between 2006 and 2023, senior leadership at DLI referred to women faculty members as a "stable of teachers" and stated, "all leaders here are old white male." *Id.* ¶ 15. Some time prior to May 5, 2025, a dean within DLI, Dr. Rama Munajat, repeatedly told Zhang to "go back to Chinese school." *Id.* ¶ 16.

During a structural reorganization on May 5, 2023, Associate Provost Dr. Jonathan Gajdos assigned Zhang to the DLI Chinese Russian school against her requests. FAC ¶ 17. Zhang was reassigned to the Chinese Russian school based on her language expertise. *Id.* ¶ 21. Zhang's colleague, Michael Gelbman, a white man, received his first choice of assignment, and Dr. Timohty Berndt, another white man who had "comparable Chinese language capability," retained his preferred faculty development assignment. *Id.* ¶¶ 17-18.

Zhang first contacted the local Equal Employment Opportunity Commission ("EEO") office on May 5, 2023, and requested a formal appointment on May 11, 2023. FAC ¶¶ 24-26. She filed a formal complaint of discrimination on June 13, 2023. *Id.* ¶ 10. Zhang filed an amendment to the EEO complaint to incorporate retaliation and procedural misconduct. *Id.* ¶ 11.

Zhang subsequently faced seven separate rejections of positions for which she was qualified within DLI: (1) Test Specialist on June 4, 2023 (FAC ¶ 29); (2) "ODA" position at "ETD" on June 14, 2023 (*id.* ¶ 30); (3) Operations Research Analyst on June 16, 2023 (*id.* ¶ 31); (4) Assistant Director of Immersion on May 13, 2024 (*id.* ¶ 38); (5) Academic Specialist position at "UML" on December 10, 2024 (*id.* ¶ 45); (6) Assessment Specialist position at "LPAD" on

[2] For purposes of the motions under consideration, the Court accepts Plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in the Plaintiff's favor. *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1158 (9th Cir. 2024); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

March 14, 2025 (*id.* ¶ 66); and (7) Institutional Evaluator on an unknown date (*id.* ¶ 79). Lt. Col. Jorge, the Dean of Students, and Gajdos made the selection for the UML Academic Specialist position. *Id.* ¶ 45. Gelbman, a white male, was selected for the Test Specialist position and lacked a Ph.D. or direct experience with assessment and "ILR." *Id.* ¶ 29.

In April of 2024, Defendant downgraded Zhang's "ratings after signature and denied her step increase." FAC ¶ 36.

On April 24, 2024, unknown "Defendants" "submitted confidential [EEO] mediation communications as evidence to the agency investigator." FAC ¶ 37. On December 31, 2024, Gajdos forwarded a work communication regarding strategic planning initiatives from Zhang to agency counsel. *Id.* ¶¶ 46-47. Counsel then "sent a coordination directive to senior leadership characterizing Zhang's inquiry as part of her EEO 'mechanisms' to be mitigated" and allegedly instructed officials to "disseminate [Plaintiff's] EEO activity." *Id.* ¶ 48. During the underlying EEO proceedings, discovery files were "doctored" and showed "manipulation." *Id.* ¶ 63.

On January 30, 2025, Defendant rescinded Zhang's "quarterly award" and removed her from "the ceremony," while no similarly situated white male employee experienced comparable treatment. FAC ¶ 56.

On February 7, 2025, agency counsel emailed Zhang an "unsolicited privileged disclosure," and the incident was not investigated. FAC ¶¶ 57-62. Zhang does not identify what those materials contained or to whom they were sent. *Id.*

**B. Procedural History**

Zhang filed the instant action on April 17, 2025. Dkt. No. 1. After Defendant moved to dismiss all claims, Zhang filed the FAC as of right under Rule 15 on October 3, 2025. Dkt. No. 23. On October 7, 2025, Zhang filed a motion for preliminary injunction to enjoin alleged retaliation. Dkt. No. 24. Following complete briefing, the Court denied the motion for preliminary injunction on December 3, 2025. Dkt. No. 32.[3] In the FAC, Plaintiff brings claims

[3] At the time of writing, Zhang's appeal of the denial of the motion for preliminary injunction remains pending before the Ninth Circuit Court of Appeals. *See Zhang v. Driscoll*, Ninth Circuit Case No. 26-630 (notice of appeal filed January 31, 2026).

for discrimination, retaliation, hostile work environment, violation of the Equal Pay Act ("EPA"), violations of the Fifth and First Amendments, and violation of the Privacy Act. Dkt. No. 23.

## II. LEGAL STANDARDS

Defendant moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Dkt. No. 38.

### A. Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction: "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. A challenge to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, as here, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case – in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). To have standing, Article III requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish an injury in fact, a plaintiff must show that [they] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.' " *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 339). "The party

invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "At the pleadings stage," this means the plaintiffs "must clearly . . . allege facts demonstrating each element." *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023). And because "standing is not dispensed in gross, . . . plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

**B. Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, it need not accept legally conclusory statements unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*,

250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

## III. DISCUSSION

Defendant attacks Zhang's seven claims challenging the Court's jurisdiction or the sufficiency of the allegation. Dkt. No. 38. The Court first considers Defendant's jurisdictional challenges to Zhang's Equal Pay Act and constitutional claims first. Thereafter, the Court examines the sufficiency of Zhang's pleading of the remainder of her claims.

### A. Equal Pay Act

The Equal Pay Act provides that employers may not discriminate between male and female employees by paying one sex "at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility[.]" 29 U.S.C. § 206(d)(1) (2003). "All EPA claims brought in district court must satisfy the jurisdictional requirements of 28 U.S.C. §§ 1491 (the 'Tucker Act') and 1346(a)(2) (the 'Little Tucker Act')." *Grounds v. United States by & through Dep't of Energy*, No. 3:17-CV-01190-HZ, 2019 WL 1270928, at *6 (D. Or. Mar. 18, 2019) (citing *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 95 (D.D.C. 2012); *Doe v. Dep't of Justice*, 753 F.2d 1092, 1101 (D.C. Cir. 1985)). The Little Tucker Act provides that the Court of Federal Claims retains jurisdiction over EPA claims seeking amounts exceeding $10,000. 28 U.S.C. § 1346(a)(2).

Here, Zhang does not specifically allege the amount of damages she attributes to her EPA claim. Defendant points out that the civil cover sheet filed with Zhang's initial complaint represents that Zhang seeks $650,000 in total monetary damages, exceeding the $10,000 threshold for Court of Federal Claims jurisdiction. Dkt. No. 38 at 11 (citing Dkt. No. 1-1). Zhang does not oppose Defendant's jurisdictional challenge to her EPA claim. *See* Dkt. No. 43 at 10-11. By failing to address Defendant's jurisdictional argument, Zhang concedes the issue. *See Ramirez v.*

*Ghilotti Bros Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (recognizing that the failure to respond to an argument concedes or waives it). Therefore, Zhang's EPA claim must be dismissed for lack of subject-matter jurisdiction. While the claim cannot be re-pleaded in this case, Zhang's EPA claim is dismissed without prejudice to refiling in the Court of Federal Claims.

**B. Constitutional Claims**

Zhang brings claims for violations of the Fifth Amendment's Due Process Clause and her First Amendment right to free speech. FAC ¶¶ 125-38. Defendant argues these claims should be dismissed because the federal government has not waived sovereign immunity for monetary damages for constitutional violations in this case. Dkt. No. 38 at 12. The Court agrees. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (action for monetary damages for constitutional violations cannot be maintained against a federal agency); *Iliya v. United States Marshals Serv.*, No. 24-cv-03720-TSH, 2024 WL 5190361, at *5 (N.D. Cal. Dec. 20, 2024); *Hulstedt v. California*, 2023 WL 9189316, at *2 (N.D. Cal. May 19, 2023), aff'd, No. 23-15966, 2023 WL 9193060 (9th Cir. Oct. 24, 2023) (there is no "statute generally waiving sovereign immunity as to money damages arising from a fifth amendment due process violation") (quoting *Karahalios v. Def. Language Inst. Foreign Language Ctr. Presidio of Monterey*, 534 F. Supp. 1202, 1212 (N.D. Cal. 1982)). Accordingly, Zhang cannot pursue claims for monetary damages against Defendant under the First and Fifth Amendments.

Zhang argues this Court has jurisdiction over her constitutional claims because it denied her motion for preliminary injunction on the merits. Dkt. No. 43 at 10. Zhang cites to *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), to assert "jurisdictional objections cannot be deployed after a defendant has litigated the merits of a claim where the statutory requirement is nonjurisdictional." Dkt. No. 43 at 10. The *Arbaugh* opinion, however, does not stand for the premise that subject matter jurisdiction cannot be challenged after a court reaches a merits determination – under Rule 12(h)(3) of the Federal Rules of Civil Procedure, at any time, a court must dismiss an action if it determines it lacks subject-matter jurisdiction. Further, Zhang misapplies *Arbaugh*. In *Arbaugh*, the Supreme Court clarified the distinction between the statutory elements of a plaintiff's claim for relief and the standards of subject matter jurisdiction, reiterating that subject matter jurisdiction

can be raised at any stage, even after trial and entry of judgment. *Arbaugh*, 546 U.S. at 506-07; *see also id.* at 511 (describing a "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy"). Here, Defendant's subject matter jurisdiction challenge to the First and Fifth Amendment claims centers on the key standing element of redressability, rather than an ingredient or element of the claims for relief. *See Spokeo*, 578 U.S. at 330. The prohibition on plaintiffs bringing monetary damages claims against the government for alleged constitutional violations is a jurisdictional issue because it relates to the relief available at law. Because the government has not waived sovereign immunity for these claims, Zhang cannot recover – nor can the Court order – monetary relief for the purported constitutional violations, and the Court lacks subject matter jurisdiction.

To the extent Zhang argues monetary damages are pleaded in the alternative to declaratory and prospective relief, Defendant maintains her claims are subject to dismissal because she does not allege facts showing a real and immediate threat of repeated injury. *See* Dkt. No. 46 at 3-4. Zhang indeed must establish standing for injunctive relief, and she "cannot rely solely on past injury and instead must demonstrate 'a sufficient likelihood that [he] will again be wronged in a similar way' and a 'real and immediate threat of repeated injury.' " *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 723 (9th Cir. 2023) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). Thus, "past wrongs do not in themselves amount to [the] real and immediate threat of injury" necessary for such standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Rather, a party must show "continuing, present adverse effects" of the defendant's actions. *Id.* at 102. A threated injury " 'must be *certainly impending* to constitute injury in fact,' and 'allegations of *possible* future injury are not sufficient.' " *Fellowship of Christian Athletes*, 82 F.4th at 723 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)) (emphasis in original). Zhang, however, does not allege facts suggesting there is an immediate threat of repeated injury because she fails to allege that Defendant maintains a pattern or practice related to the harm she suffered. Zhang advances that the constitutional violations remain "ongoing," but she fails to cite to any factual allegations in the operative pleading that support that premise. Dkt. No. 43 at 11. This is insufficient to plausibly

allege continuing adverse harm to support standing for injunctive relief. *See Fellowship of Christian Athletes*, 82 F.4th at 723. Accordingly, the Court GRANTS Defendant's motion to dismiss the First Amendment and Fifth Amendment causes of action for lack of subject matter jurisdiction. Should Zhang reassert either of these claims, she must allege facts of immediate threat of repeated harm to support injunctive relief.

**C. Disparate Treatment Discrimination**

Zhang alleges that Defendant violated Title VII by (1) failing to select her for seven different roles; (2) imposing an additional workload on her; (3) excluding her from institutional roles; and (4) public and private disparagement. FAC ¶ 85. Title VII makes it an unlawful employment practice to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may demonstrate discrimination under a theory of disparate treatment. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012). Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Id.* at 1081. To state a prima facie claim for discrimination under Title VII, a plaintiff must allege that (1) they are a member of a protected class, (2) they were qualified for their position; (3) they experienced an adverse employment action; and (4) similarly situated individuals outside the plaintiff's protected class were treated more favorably, "or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). "To establish the fourth element, [the plaintiff] must allege either direct evidence of discrimination, such as derogatory comments about [their] gender or race, or circumstantial evidence, which may include allegations that similarly situated individuals outside [their] protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination." *Austin v. City of Oakland*, No. 17-CV-03284 YGR, 2018 WL 2427679, at *4 (N.D. Cal. May 30, 2018) (internal quotation marks, citation omitted). Disparate treatment via "[f]ailure to promote" is often established through

circumstantial evidence, including comparison to similarly-situated individuals outside the plaintiff's protected class. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121-22 (9th Cir. 2004).

Here, Zhang advances a single cause of action for disparate treatment, which she supports with allegations of derogatory comments as well as failure to promote. FAC ¶¶ 83-93. Defendant argues that Zhang simply fails on both fronts – that the comments of which she complains were not truly derogatory and that Zhang fails to allege that similarly situated individuals were treated more favorably. *See* Dkt. No. 38 at 13-16. Two statements quoted in the FAC plausibly represent derogatory statements that support Zhang's claim of disparate treatment: (1) statements from senior leadership referring to women faculty as a "stable of teachers" and that "all leaders here are old white male," FAC ¶ 15, and (2) a repeated statement from Munajat instructing Zhang to "go back to Chinese school," *id.* ¶ 16. The Court need not reach Defendant's remaining arguments regarding the insufficiency of Zhang's allegations relating to similarly-situated comparators or other indirect evidence of disparate treatment because Zhang's allegations of derogatory remarks carry the cause of action. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 931 (N.D. Cal. 2024) ("The Court declines to parse and strike individual statements at the motion-to-dismiss stage."). The Court DENIES Defendant's motion to dismiss the claim for disparate treatment discrimination.

**D. Retaliation**

To state a claim for retaliation under Title VII where, as here, there is no direct evidence of retaliation, a plaintiff must allege (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) that the protected activity and the adverse employment action were causally linked. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 (9th Cir. 2008); *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012), as amended, 698 F.3d 715 (9th Cir. 2012). An employee engages in Title VII protected activity where the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII, or where the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Importantly, "Title VII

retaliation claims must be proved according to traditional principles of but-for causation," which asks whether "a protected characteristic was a motivating factor for any employment practice, even though other factors also motivated the practice." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see* 42 U.S.C. § 2000e-2(m). In other words, to establish causation for Title VII retaliation, a plaintiff must allege "that engaging in [a] protected activity was one of the reasons for" their suffering an adverse employment action "and that but for such activity [they] would not have" suffered the adverse action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002).

The crux of Zhang's claim of retaliation is that she engaged in protected activity "by filing formal EEO complaints (June 13, 2023; February 23, 2024)." FAC ¶ 95.[4] Defendant argues that Zhang fails to draw a causal nexus between those EEO complaints and any adverse employment action. Dkt. No. 38 at 17-18. Zhang's opposition does not meaningfully address the paucity of facts alleging causal connection, instead producing a chart purporting to demonstrate the connections. Dkt. No. 43 at 7-9 (stating in relevant part, "[d]ecision-makers copied on emails and involved in subsequent actions."). The chart proves unhelpful. The FAC fails to support causation because it does not show that the persons committing adverse actions were aware that Zhang had engaged in protected activity. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("[e]ssential to the causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); *Perez v. McDonough*, No. 23-cv-06713-JST, 2024 WL 4844383, *7 (N.D. Cal. Nov. 20, 2024) (same). Zhang does not identify (a) the persons responsible for the adverse actions; (b) whether they had knowledge of her June 13, 2023 or February 23, 2024 EEO complaints; or (c) whether they learned of the EEO complaints prior to any adverse action. Further, to the extent Zhang relies on temporal proximity between her EEO complaints and any adverse action to evidence retaliation, that falls short of supporting the needed but-for causation. *See Nassar*, 570 U.S. at 360 ("Title VII retaliation claims . . . require[ ] proof

[4] Zhang additionally lists as protected activity "opposing discriminatory practices, and reporting fraud affecting federal programs," but the FAC remains unclear as to what activity she engaged in to oppose discriminatory practices, and the reporting of fraud affecting federal programs does not constitute Title VII-protected activity.

United States District Court
Northern District of California

that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). Accordingly, "it takes more than allegations of temporal proximity to demonstrate but-for causation in a Title VII retaliation claim post-*Nassar*." *Green v. City of Phoenix*, No. CV-15-02570-PHX-DJH, 2019 WL 4016484, at *13 (D. Ariz. Aug. 26, 2019); *see also Strickland v. Seattle Cent. Coll.*, No. C18-1073JLR, 2019 WL 7370338, at *10 n.12 (W.D. Wash. Dec. 31, 2019). Zhang relying only on temporal proximity, and failing to allege facts that support the decision makers' awareness of her protected activity prior to the adverse actions, fails to plausibly allege a claim for retaliation under Title VII. The Court GRANTS Defendant's motion to dismiss the claim for retaliation.

**E. Hostile Work Environment**

Separate from her claims of disparate treatment and retaliation under Title VII, Zhang asserts a claim for hostile work environment under Title VII. FAC ¶¶ 102-13. "To prevail on a hostile workplace claim premised on either race or [gender], a plaintiff must show: (1) that [they were] subjected to verbal or physical conduct of a racial or [gender-based] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004). "In order to prevail on her hostile work environment claim, [a plaintiff] must show that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her employment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (brackets, ellipses, and quotation marks omitted). The Ninth Circuit has recognized that even "[a] single incident of harassment can support a claim of hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis, but for a single incident to suffice, it must be extremely severe[.]" *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (internal citations and quotation marks omitted). "When severity is questionable, it is more appropriate to leave the assessment to the fact-finder than for the court[.]" *Id.* at 648 (citation and quotation marks omitted).

Here, Zhang identifies five incidents in support of her hostile environment claim: (1) being told to "go back to Chinese school"; (2) female faculty being referred to as a "stable of teachers"; (3) being labeled "unethical"; (4) being given a dual teaching assignment; and (5) having her award rescinded. FAC ¶¶ 104-05. The severity of these instances and the effect they had on the conditions of Zhang's employment remains questionable. Accordingly, the Court cannot determine that Zhang fails to state a claim – the issue is properly left for the fact-finder at a different stage of the case. *See Fried*, 18 F.4th at 648. The Court thus DENIES the motion to dismiss the hostile work environment claim.

**F. Privacy Act**

Zhang asserts a Privacy Act claim. FAC ¶¶ 139-45. The Privacy Act prohibits a federal agency from disclosing "any record which is contained in a system of records by any means of communication to any person, or to another agency, except . . . with the prior written consent of . . . the individual to whom the record pertains" and provides a cause of action for a party aggrieved by an unauthorized disclosure of information. 5 U.S.C. §§ 552a(b) & (g)(1)(D). "A successful claim under the Privacy Act requires a showing 1) the agency disclosed information contained within a system of records; 2) the disclosure was improper; 3) the disclosure was intentional or willful, and 4) the plaintiff was adversely affected by the disclosure." *Tungjunyatham v. Johanns*, 500 F. App'x 686, 689 (9th Cir. 2012) (citing *Swenson v. U.S. Postal Service*, 890 F.2d 1075, 1077 (9th Cir. 1989)).

Here, Zhang alleges that Defendant violated the Privacy Act and her right to confidentiality through (1) a February 2024 e-mail of EEO materials to Zhang; (2) a December 31, 2024 e-mail containing her EEO information; and (3) dissemination of confidential report of investigation ("ROI") information. FAC ¶ 141. With regard to the February 2024 e-mail, Zhang fails to establish how being sent her own EEO materials was improper or a violation of confidentiality – she does not assert that anyone else was included on the e-mail or that it resulted in any harm to her. FAC ¶ 57. Similarly, related to the December 2024 e-mail, Zhang fails to identify to whom the December 2024 e-mail was sent, what it contained, or why it was improper to have sent such

United States District Court
Northern District of California

information in the first place.[5] Finally, Zhang alleges no facts regarding the alleged dissemination of confidential ROI information, such as to whom it was disseminated, what information it contained, or how it adversely affected Plaintiff. Without such information, Zhang fails to provide enough facts to allege the necessary elements of a Privacy Act claim. The Court therefore GRANTS the motion to dismiss the Privacy Act claim.

**G. Leave to Amend**

Zhang requests leave to amend. Dkt. No. 43 at 29. "Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations and citations omitted). Courts may deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (modification in original).

At this stage, the Court cannot conclude that amendment would prove futile for most of Zhang's claims, though it has found that it lacks jurisdiction over some claims or remedies. Because Zhang may still be able to proffer factual allegations that support several of her causes of action, and in light of the extreme liberality with which the Court must apply Rule 15, the Court will grant Zhang leave to file a further amended complaint. As discussed above, the Court rules as follows:

- (A) it GRANTS the motion to dismiss the Equal Pay Act claim with leave to file in the Court of Federal Claims, but without leave to amend here;

[5] Zhang "filed a formal complaint of discrimination on June 13, 2023 and filed with EEOC on February 23, 2024." FAC ¶ 10. Any assertion that Zhang's status as an EEOC complainant should have remained confidential from senior leadership in December 2024 after her earlier charges remains insufficiently pleaded. *See* 42 U.S.C. § 2000e-8 (discussing EEOC confidentiality).

United States District Court
Northern District of California

- (B) it GRANTS the motion to dismiss the First Amendment and Fifth Amendment claims with leave to amend to the extent Zhang can allege prospective injury in support of injunctive relief, but she may not amend to seek monetary relief for these claims;
- (C) it DENIES the motion to dismiss the disparate treatment claim;
- (D) it GRANTS the motion to dismiss the retaliation claim with leave to amend;
- (E) it DENIES the motion to dismiss the hostile work environment claim; and
- (F) it GRANTS the motion to dismiss the Privacy Act claim with leave to amend.

Given multiple causes of action are viable as pleaded, Zhang may elect to stand on the FAC as the operative complaint rather than amending further. If Zhang chooses not to amend, she must file a statement to that effect by the same deadline set below.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss. Zhang shall file a further amended complaint or a statement of her election to stand on the FAC by no later than October 20, 2026.

**IT IS SO ORDERED.**

Dated: September 22, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**